Arlo García Uriarte, SBN 231764
Ernesto Sánchez, SBN 278006
Un Kei WU, SBN 270058
Daniel P. Iannitelli, SBN 203388
Elizabeth Lyons, SBN 327742
LIBERATION LAW GROUP, P.C.
2760 Mission Street
San Francisco, CA 94110
Telephone: (415) 695-1000
Facsimile: (415) 695-1006

Attorneys for PLAINTIFF
RENALDO NAVARRO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFNORNIA**

Renaldo Navarro

Plaintiff,

vs.

Menzies Aviation Inc., DOING BUSINESS AS MENZIES; DOES 1 through 10

Defendants.

Case No.: 3:19-cv-08157 VC

**PLAINTIFF'S OPPOSITION TO DEFENDANT MENZIES AVIATION INC.'S MOTION FOR SUMMARY JUDGEMENT**

Date: November 19, 2020
Time: 10:00 a.m.
Place: video conference link

Hon. Vince Chhabria
San Francisco Courthouse
Courtroom 4 – 17th Floor

Action Removed: December 16, 2019
Action Filed: October 23, 2019

# TABLE OF CONTENTS


I. INTRODUCTON ..... - 1 -

II. STATEMENT OF FACTS ..... - 1 -

A. PLAINTIFF WAS A SKILLED AND EXPERIENCED SUPERVISOR RECOGNIZED FOR MAINTAINING A HARMONIOUS WORK ENVIRONMENT AMONG FUELERS IN FURTHERANCE OF MENZIES' BUSINESS OBJECTIVES. ..... - 1 -

B. MENZIES DID NOT DISTRIBUTE EMPLOYMENT HANDBOOKS NOR THE CODE OF CONDUCT TO THE FUELERS NOR TO THE FUELING SUPERVISORS. ..... - 2 -

C. MENZIES' DECISION TO PROMOTE ANDREW DODGE TO FUELING SUPERVISOR DEMONSTRATES MENZIES'S PREFERENTIAL TREATMENT FOR A WHITE SUPERVISOR. ..... - 3 -

D. BETWEEN 2017 AND 2018 DODGE REPEATEDLY VIOLATED MENZIES'S POLICIES AND CALIFORNIA LAW RESULTING IN NUMEROUS COMPLAINTS TO PLAINTIFF, THE UNION, AND MENZIES'S MANAGEMENT. ..... - 4 -

1. Dodge Repeatedly Slept on the Job and Caused Break Violations ..... - 4 -

2. Menzies Received Complaints of Harassment and Abuse By Dodge. ..... - 5 -

3. Navarro Escalated Complaints About Dodge, Including Harassment, t to Management. ..... - 6 -

E. MENZIES IGNORED COMPLAINTS OF DODGE'S ABUSE OF POWER, HARASSMENT, AND DENYING MEAL BREAKS. AS A RESULT, FUELERS AUTHORED A PETITION TO ADD DODGE'S UNCHECKED MISCONDUCT AND UNPROFESSIONAL BEHAVIOR. ..... - 7 -

F. DODGE PRECIPITATES THE INVESTIGATION AND IS TOLD TO SUBMIT A STATEMENT ABOUT PLAINTIFF. ..... - 7 -

G. MENZIES SUSPENDS PLAINTIFF IMMEDIATELY AFTER SUBMITTING THE PETITION FOR SUPPORTING THE FUELERS IN THEIR COMPLAINTS AGAINST DODGE. ..... - 7 -

H. MENZIES IMMEDIATE FOCUS ON NAVARRO DEMONSTRATES A LACK OF INTENT TO DISCOVER THE UNDERLYING INTENT OF THE PETITION LEADS TO A DISHONEST INVESTIGATION. ..... - 8 -

I. MENZIES TERMINATED PLAINTIFF FOR PURPORTED HARASSMENT OF FUELERS. RAUL VARGAS' KNEE JERK REACTION TO TERMINATE PLAINTIFF WAS WHOLLY RETALIATORY TO PROTECT DODGE, PUSH THE FUELERS BACK AND TEACH THE FILIPINO FUELERS A LESSON. AN EXAMINATION OF HIS ACTIONS ILLICIT THIS CONCLUSION. ............ - 9 -

J. AS A RESULT OF MENZIES' ONGOING FAILURE TO HOLD DODGE ACCOUNTABLE, FUELERS SUBMITTED A SECOND PETITION CONCERNING THE SAME ISSUES. AT THE TIME, PLAINTIFF WAS UNINVOLVED AND TERMINATED FROM THE WORKPLACE. ............ - 10 -

K. TERMINATION OF PLAINTIFF IS A TRAGEDY - A LIFELONG EMPLOYEE WHO HAD MENZIES BEST INTEREST - KICKED OUT FOR FURTHERING A HARMONIOUS WORKPLACE THAT SHOULD NOT INCLUDE INTIMIDATION NOR HARASSMENT. PLAINTIFF HAS NOT RECOVERED FROM THE INJUSTICE ............ - 10 -

III. LEGAL STANDARD ............ - 11 -

IV. ARGUMENT ............ - 11 -

A. PLAINTIFF ESTABLISHES A *PRIMA FACIE* CASE OF DISCRIMINATION BECAUSE MENZIES INVESTIGATION WAS NOT GOOD FAITH AND SUBSTANTIAL EVIDENCE EXISTS THAT A WHITE SUPERVISOR WAS TREATED PREFERENTIALLY. ............ - 11 -

1. Menzies' Inadequate Investigation Was A Deficient Basis To Form A Good-Faith Belief that Plaintiff Engaged in Harassment ............ - 12 -

2. Menzies After-Acquired Evidence Is Immaterial to Show The Decision-Makers Held A Good-Faith, Legitimate Belief That Plaintiff Pressured Employees To Sign The Petition. ............ - 15 -

3. Plaintiff Can Establish Substantial Evidence of Pretext. ............ - 16 -

B. PLAINTIFF ESTABLISHES A *PRIMA FACIE* CASE OF RETALIATION BECAUSE HE ENGAGED IN PROTECTED ACTIVITY BY LENDING SUPPORT AND REPEATEDLY NOTIFYING MANAGEMENT OF FILIPINO FUELERS COMPLAINTS OF DODGE'S HARASSMENT LEADING MENZIES TO SILENCE HIM BY TERMINATING HIS EMPLOYMENT. ............ - 18 -

1. Plaintiff's Involvement With the Petition Is The Culmination of A Several Reports Made By Plaintiff And Other Filipino Fuelers Regarding Dodge's Unlawful Harassment And Constitutes Protected Activity ............ - 18 -

2. Plaintiff Is Protected Under FEHA Retaliation Because He Was a Prospective Witness to Dodge's Unlawful Harassment And Menzies' Failure to Take Corrective Action ............ - 20 -

3. Menzies Exaggerates, and Misreads the Law, In Concluding That The Act of Signing The Petition Is a Violation of Federal Law Under 29 USC § 159. ........ - 20 -

C. PLAINTIFF ESTABLISHED A CLAIM OF WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY BECAUSE MENZIES DISCHARGED PLAINTIFF FOR CHALLENGING UNLAWFUL WORKING CONDITIONS........ - 22 -

D. PLAINTIFF'S IIED CLAIM IS AN EXCEPTION TO EXCLUSIVE REMEDY RULE BECAUSE MENZIES ENGAGED IN CONDUCT OUTSIDE COMPENSATION BARGAIN – A SCHEME TO PROTECT DODGE, TERMINATE AND MAKE AN EXAMPLE OUT OF PLAINTIFF FOR PURSUING FUELER'S CLAIMS OF HARASSMENT, INTIMIDATION, ABUSE OF POWER AND DISCRIMINATION. ........ - 24 -

1. Intentional Infliction of Emotional Distress Is Not Barred Because Menzies Engaged In A Campaign to Terminate Plaintiff and Retaliate – Misconduct That Exceeded The Normal Risks Of The Employment Relationship. ........ - 24 -

# TABLE OF AUTHORITIES

**CASES**

*Adickes*, 398 U.S., at 158–159. .......... 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) .......... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) .......... 17

*Castelli v. Douglas Aircraft Co., 752 F.2d 1480* (9th Cir. 1985) .......... 28

*Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1047 (2016) .......... 26

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986 .......... 16

*Charles J. Vacanti, M.D., Inc. v. SCIF* (2001) 65 CCC 1402 .......... 31

*City of Moorpark v. Superior Court of Ventura County (Dillon)* (1998) 63 CCC 944, 952 .......... 31

*De Peralta v. Fox Restaurant Concepts* (2018) 83 CCC 478 .......... 32

*Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476–477 (1992) .......... 25

*Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995) .......... 24

*Gupta v. Trustees of California State Univ*., 40 Cal. App. 5th 510, 519 (2019) .......... 23

*Guz v. Bechtel National, Inc.* 24 Cal.4th 317, 355, 100 (2000) .......... 17

*Harris v. City of Santa Monica*, 56 Cal.4th 203, 229 (2013) .......... 22

*Kennedy v. Silas Mason Co*., 334 U.S. 249 (1948); .......... 17

*Kodwavi v. Intercontinental Hotels Grp. Res., Inc*., 966 F. Supp. 2d 971, 984 (N.D. Cal. 2013) .......... 21

*Lake City Foundry Co. v. N. L. R. B., C.A.7 (Ill.)* 1970, 432 F.2d 1162 .......... 28

*Light v. Department of Parks and Recreation* (2017) 82 CCC 987 .......... 32

*McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973) .......... 18

*Miller v. Department of Corrections* 36 Cal.4th 446, 470. (2005 .......... 18

*Mixon v. Fair Employment and Housing Com*., 92 Cal.App.3d, 1306, 1319 (1987). .......... 22

*N.L.R.B. v. Raytheon Co*., 398 U.S. 25, on remand 445 F.2d 272 .......... 27

*N.L.R.B. v. WKRG-TV, Inc.*, 470 F.2d 1302, 1316 (5th Cir. 1973) .......... 29

*Nadaf–Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 991–

992 ..... 18

*Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 283 (2009). ..... 18

*Paleg v. Kmart Corp*. United States District Court, C.D. California (July 11, 2017) 2017 WL 2974923, 82 Cal. Comp. Cases 747 ..... 32

*Reeves v. Safeway Stores*, 121 Cal. App.4th 95, 120–121 ..... 24

*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297 ..... 18

*Serri v. Santa Clara University*, 226 Cal.App.4th 830, 861 (2014) ..... 17

*Shoemaker v. Myers* (1990) 55 CCC 494, 508 ..... 31

*Spitzer v. Good Guys, Inc.* 80 Cal.App.4th 1376 (2000) ..... 18

*Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1255 (2008) ..... 26

Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157] ..... 30

*Stewart v. Leland Stanford Junior Univ*., No. C 05-04131 JW, 2006 WL 889437 (N.D. Cal. Apr. 5, 2006) ..... 28

*Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330]* ..... 29

*Vanderhule v. Amerisource Bergen Drug Corp.* United States District Court, C.D. California (January 17, 2017) 2017 WL 168911, 82 Cal. Comp. Cases 128 ..... 32

*Wirtz v. Kansas Farm Bureau Services, Inc*. (D.Kan.2003) 274 F.Supp.2d 1198, 1212, fn. ..... 25

*Yanowitz v. L'Oreal USA, Inc.* 36Cal.4th 1028, 1042 (2005) ..... 24

Yau v. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824] ..... 29

*Young v. Libbey-Owens Ford Co.* (1985) 168 Cal. App. 3d 1037, 1044 ..... 31

**STATUTES**

29 USC § 159 ..... 27

Fed. R. Civ. P. 56(a) ..... 16

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff Navarro has established a prima facie case of race and national origin discrimination showing preferential treatment towards a white fueling supervisor against Filipino fuelers and Plaintiff, a Filipino fueling supervisor?

2. Whether Menzies' inadequate investigation can be considered good faith when it relies on faulty assumptions, was done in bad faith and designed only to terminate Navarro?

3. Whether Plaintiff has established by substantial evidence a question of fact regarding pretext offered by Menzies?

4. Whether Plaintiff has established a prima facie case of FEHA retaliation because he supported fuelers in their attempt for Menzies to address unprofessional behavior by Dodge that included harassment and discrimination?

5. Whether the cause of action for wrongful termination against public policy can be supported by evidence that Plaintiff and fuelers were reporting violations of meal breaks and harassment by Dodge?

6. Whether the claim for Intentional Infliction of Emotional Distress falls within Workers' Compensation exclusive remedy when Plaintiff suffered from the illegal scheming of Menzies to terminate him in retaliation for reporting harassment and statutory violations to management?

## I. INTRODUCTON

Renaldo Navarro was a loyal and effective Fueling Supervisor for over thirteen years. Initially Navarro lent a helping hand to an inexperienced White Supervisor, Andrew Dodge. Beginning in 2017, Mr. Navarro began to receive reports from Filipino Fuelers that Mr. Dodge was creating an unsafe work environment and denying meal periods. The complaints worsened to discrimination, intimidation and harassment. Mr. Navarro and other Fuelers reported Dodge's abuse to management. As fuelers became more verbal in their concern for Dodge's performance failures, he became more intent on wheeling power over a majority Filipino workforce through threats and intimidation—shining bright lights from his truck at Fuelers working on the tarmac and even turning to physical confrontation. Faithful to his Fuelers and concerned for the impact that Dodge's attitude and mismanagement had on Menzies' business objective, Mr. Navarro spoke to Dodge and upper management about the complaints. Sadly, Menzies management minimized the complaints and turned a blind eye—effectively condoning Dodge's discriminatory behaviors. Problems escalated. Mr. Navarro's involvement as a Supervisor became more critical for Fuelers as Menzies ignored their complaints.

The Fuelers initiated a petition to implore Menzies management. Fuelers asked Plaintiff to sign and submit the petition to management – which he did. In response, Menzies terminated Plaintiff based on a pre-determined investigation. Menzies had no legitimate reason to terminate Plaintiff. Rather the decision reflects discriminatory and retaliatory animus designed to push back on the need to properly investigate the petition by the Filipino fuelers. Menzies used Plaintiff Navarro's termination an example and intimidate the fuelers further for escalating their concerns.

## II. STATEMENT OF FACTS

### A. Plaintiff Was a Skilled and Experienced Supervisor Recognized for Maintaining a Harmonious Work Environment Among Fuelers In Furtherance of Menzies' Business Objectives.

Plaintiff started working as Fueler for ASIG Aviation in 2005. Plaintiff's Appendix of Supporting Evidence ("PASE"), Exhibit 37, Deposition of Renaldo Navarro ("Navarro Depo."), 23:20-25. While Plaintiff was employed by ASIG, he was promoted to a Supervisor role and assigned additional job responsibilities. Navarro Depo., 25: 20-25. As a supervisor, Plaintiff is

responsible for effectively managing the Fueler's workload by providing oversight of fueling operation, assigning Fuelers to service flights and when to take their breaks. Menzies Appendix of Evidence ("AOE"), Exh. 18, Fueling Supervisor Job Description; Navarro Depo., 26:1-10. PASE, Exh. 42, Deposition of John Qually ("Qually Depo), 12:9-14. The Fueling Supervisor is also responsible for communicating with airline representatives and overseeing the safety of the operation. Qually Depo., 17:6-11.

Critically, Fueling Supervisors are responsible for ensuring that fuelers are working safely and resolve any safety concerns raised by fuelers, ensure fuelers are following procedures, and address any equipment problems or any other issues raised. Qually Depo., 18:5-22. The Fueling Supervisor is also responsible for giving fuelers breaks and meal periods in accordance with the labor laws and the CBA. Qually Depo., 19:9-13. Central to the Fueling Supervisor's job responsibilities is managing fuelers' daily shift airline fueling assignments together with figuring out the necessary equipment they need to ensure timely fueling of airplanes to avoid flight delays. Qually Depo., 20:20-25-22:5; Exh. 18.

Plaintiff was a reputable, well-respected and even-handed supervisor and Union member Fuelers often turned to Plaintiff to address workplace issues and act as a liaison between Union members and management. PASE Exh. 32, Declaration of Rafael Vasquez ("Vasquez Decl.") ¶ 2; PASE Exh. 34, Declaration of July Macapagal ("Macapagal Decl."), ¶ 2. Plaintiff was well known for keeping flight schedules and maintaining harmonious work environment for Fuelers. PASE Exh. 33, Canlas Decl. ¶ 17. PASE Exh. 35, Declaration of Modesto Compas ("Compas Decl.") ¶ 4. Even Andrew Dodge considered Mr. Navarro to be "a great supervisor. There's no questions asked. He was there for a long time, and, you know, he's – he did his job." AOE Exh. 17, Deposition of Andrew Dodge ("Dodge Depo."), 28:19-23.

Mr. Navarro's self-perception is that of a professional that provides vital services for the good of the airline industry and this country he loves. He treated his job with respect and pride. Navarro Depo. ¶ 4.

**B. Menzies Did Not Distribute Employment Handbooks nor the Code of Conduct to the Fuelers nor to the Fueling Supervisors.**

Menzies alleged that the Code of Conduct and the Employment Handbook should have alerted Plaintiff of prohibited intimidation, abuse and harassment justifying termination. AOE Exhs. 19 and 20.

At the time Menzies took over ASIG operations at San Francisco International Airport ("SFO") in February 2017, they were revising their employment handbook and did not provide Fuelers and Fueling Supervisors with copies or training. PASE, Exh. 40, Deposition of Tracy Aguilera ("Aguilera Depo."), 13:24-14:3. Vasquez Decl. ¶ 22, PASE Exh. 33, ¶ 18, Declaration of Jezen Canlas ("Canlas Decl."), PASE Exh. 34 ¶ 7, Macapagal Decl., ¶ 7. Declaration of Renald Navarro ("Navarro Decl."), ¶11. Human Resources Manager Tracy Aguilera confirmed that standard practice was to review the newly implemented Employment Handbook, including the Code of Conduct section, with employees in the HR office and have them sign an acknowledgement form. Aguilera Depo., 14:25-16:19. However, Aguilera could not confirm whether Plaintiff was informed of the newly implemented code of conduct, nor whether he signed an acknowledgement form confirming his receipt of the employee handbook and code of conduct. Aguilera Depo16:20-24. Menzies production of documents to Plaintiff did not contain Plaintiff's signature acknowledging receipt. In fact, all of the acknowledgement forms produced by Defendant Menzies in Plaintiff's personnel file have a blank signature line. PASE Exh. 30, Declaration of Arlo Uriarte ("Uriarte Decl."), ¶ 7. PASE Exh. 44.

**C. Menzies' Decision to Promote Andrew Dodge to Fueling Supervisor Demonstrates Menzies's Preferential Treatment for A White Supervisor.**

Dodge was hired in February 2016 and Menzies' General Manager Renil Lal surprisingly promoted him to Fueling Supervisor within one year. Dodge Depo. 12:19-13:15. Dodge had less seniority than many of the Filipino fuelers who were regarded as more qualified. Canlas Decl. ¶¶ 4, 7. According to Mr. Canlas and Mr. Navarro, at least three other Fuelers were better equipped to be supervisors than Andrew Dodge. *Id.*, Navarro Decl. ¶ 12. During Dodge's first months as Fueling Supervisor, Mr. Navarro as well as other Fuelers willingly assisted Mr. Dodge to succeed as a Fueling Supervisor. Navarro Decl. ¶5.

**D. Between 2017 and 2018 Dodge Repeatedly Violated Menzies's Policies and California Law Resulting in Numerous Complaints to Plaintiff, the Union, and Menzies's Management.**

Plaintiff, the Union Steward, and the Fuelers repeatedly communicated complaints to management about Dodge. Navarro Decl. ¶ 7. Plaintiff testified that around a year prior to the petition, he reported the Fuelers' complaints regarding Dodge to Menzies management, including Renil Lal, John Qually, Nicco Bernadino, and Tracy Aguilera. Navarro Depo., 49: 15-24, 50:2-5.

**1. Dodge Repeatedly Slept on the Job and Caused Break Violations**

Manager Qually testified that Plaintiff reported Dodge sleeping on the job and "it was brought to the higher ups" including Renil Lal. Qually Depo. 26:1-9. Mr. Dodge caused flight delays that affected the operation and mismanaged shift schedules resulting in Fuelers missing their meal breaks. Exh. 33, Decl. of Canlas, ¶ 7, 15; Exh. 34, Decl. of Macapagal, ¶ 4, 5. Exh. 35, Decl. of Compas, ¶ 7, Exh. 36, Decl. of Mark Ilagan, ¶ 5.[1]

---

[1] In response to claims that Dodge was sleeping on the job, Menzies argues that Dodge disclosed his sleep apnea condition to management and that they determined Plaintiff's reports of Dodge sleeping only occurred after his shift. MSJ MPA 3:20-21, footnote 2. Menzies claims Dodge often slept at work after his shift and before driving home and that, if anything, they had a duty to reasonably accommodate Dodge. However, Dodge denied that any formal accommodation was in place and several Fuelers testified and produced photos showing Dodge sleeping during shift hours, in his truck on the tarmac, creating safety concerns and resulting in fuelers missing breaks.[Exh 43 Photo of Dodge sleeping]. Dodge testified that his work responsibilities included "monitor[ing] the fuelers, if they need help with something, or also monitor their safety." Dodge Deposition, 18:4-5. Dodge further testified that Fuelers were dependent on him coverage and coordinating meal breaks. Id. 18:4-8. Menzies has an obligation to ensure that Dodge was capable of performing his essential job functions safely even within its duty to accommodate. See Ceja-Corona v. CVS Pharmacy, Inc., 664 F. App'x 649, 650 (9th Cir. 2016); Green v. State, 42 Cal.4th 254, 257 (2007). However, evidence indicates that management did not implement an accommodation to ensure that Dodge was performing his essential functions effectively with his sleep apnea. Id. 22:23-25, 23:1-15, 26:1-17, 44:25, 45:1-3. Also, given the safety concerns it is questionable that he can perform his functions safely.

Dodge was aware that his job duties as a supervisor obligated him to provide his employees with meal and rest breaks in accordance with California and federal law. Dodge Depo., 18:15-19:8. Multiple witnesses, including Fuelers and airline operators, observed Dodge sleeping during his shift. Plaintiff received complaints from Fuelers that Dodge was seen sleeping in his truck on the tarmac, creating a serious safety concern. This was captured in photos submitted to Menzies. Exh. 43. The Union also raised complaints to management regarding Dodge's frequent sleeping during shifts. Vasquez Decl. ¶¶ 6, 8; Multiple fuelers also reported Dodge sleeping on shift to Plaintiff and provide Plaintiff with photos of this conduct. Abusive and threatening conduct from Dodge toward fuelers.

**2. Menzies Received Complaints of Harassment and Abuse By Dodge.**

While Menzies denies that they received any complaints regarding Dodge's harassing or abusive conduct as a supervisor, MSJ MPA 3:25-26, 6:1-2, this assertion is contradicted by the evidentiary record. Employees and Plaintiff testified to that Dodge engaged in abusive, hostile and threatening conduct toward Fuelers. In addition to Plaintiff's complaints, the Fuelers made multiple complaints to the Union regarding Andrew Dodge. Vasquez Decl., ¶3. Shop Steward Rafael Vasquez declared that,

> Before August 2018, between 2017 and 2018, the Fuelers made multiple complaints to the Union regarding an abusive supervisor by the name of Andrew Dodge. The complaints included verbal abuse, threats, and even physical confrontations with some of the fuelers. These complaints were communicated to management for over a year. We would have meetings with management every week to two weeks. The complaints were communicated during these meetings. The shop stewards would communicate these to management attendees: Renil Lal, John Qually, Nicco, Raul Vargas would often attend. They knew that especially the Filipino fuelers were being harassed and discriminated by Mr. Dodge.

*Id.* ¶ 3.

Mr. Dodge was promoted to a position of power around the time that Trump was elected to President 2016/2017. Mr. Dodge engaged in "really strange behaviour towards the Filipino Fuelers." Vasquez Decl., ¶ 4. As Mr. Vasquez explained, Fuelers complained that Dodge flashed the lights from the company truck on Filipino Fuelers acting as if he was an ICE Agent. Vasquez Decl., ¶ 4. Fuelers complained that they believed that Dodge was subjecting them to discrimination. Canlas Decl., ¶5. An example provided by Mr. Canlas was that Dodge would use

his flashlight to watch over Filipino Fuelers. Exh. 33, Canlas Decl., ¶ 6, Navarro Decl. ¶ 8. Mark Ilagan reported a specific incident toward Mr. Dodge where he believed that he was harassed by Dodge for use of a company truck. He goes on to say that this abuse of authority by Dodge was often targeted toward Filipino Fuelers. Exh. 36, Ilagan Decl., ¶ 7 Navarro Decl. ¶¶ 6, 8-10. Mr. Ilagan reported this to Navarro, who in turn was able to diffuse the situation and reported it to management. Navarro Decl. ¶ 13,

Further, Shop Steward Rafael Vasquez confirmed in a written latter dated November 18, 2018, that "I have spoken to the Menzies Aviation Fueling Director Raul Vargas on three separate occasions regarding Mr. Andrew Dodge, who continuous abuse his authority and at times harass Fuelers under his charge." AOE Exh. 28.

**3. Navarro Escalated Complaints About Dodge, Including Harassment, t to Management.**

Mr. Navarro, as required by his duties as a supervisor, escalated complaints that Fuelers brought to him regarding Dodge's harassment and informed Renil Lal, John Qually, Nicco Bernardino, Tracy Aguilera. Navarro Depo., 49:15-24, 50:2-5, 51:9-17. Navarro Decl. ¶ 13, AOE Exh. 18, MENZIES 000202.

Despite initial support from Fuelers and Mr. Navarro, Dodge's ineptitude lead to a fast deterioration of working conditions for Fuelers. Qually testified that he knew about the break violations. He acknowledged that fuelers were shorthanded and overworked with too many flights. He acknowledged that fuelers complained to him. Qually Depo., 51:2-52:1.

Menzies denial that it received complaints of harassment from Navarro is not supported by available evidence. Menzies concedes that the reports warranted counseling Dodge, however conveniently ignored and took no corrective action to address Dodge's abuse of power and harassment. Dodge testified that Plaintiff raised complaints to him directly more than ten times that he was not doing his job properly. Exh. 39, Dodge Deposition 30:8-19. Dodge further testified that he spoke to John Qually, Renil Lal and Nico Bernadino regarding Plaintiff's complaints. *Id.* 30:20-25, 31:1-2.

**E. Menzies Ignored Complaints of Dodge's Abuse of Power, Harassment, and Denying Meal Breaks. As A Result, Fuelers Authored A Petition To Add Dodge's Unchecked Misconduct and Unprofessional Behavior.**

In response to the escalating problems and ongoing violations of Menzies' policies under Dodge's supervision, Fuelers initiated a petition and gathered signatures from Fuelers and two Fueling Supervisors, including Plaintiff, in further effort to convince Menzies' management to hold Dodge equally accountable to workplace policies and California labor laws. AOE, Exh. 22.

Fueler Jezen Canlas initiated the petition and gathered signatures. Canlas Decl., ¶¶ 8-10; Navarro Depo., 44: 16-46:7; Vasquez Decl., ¶¶ 9, 10. Counter Menzies representation of the facts, Plaintiff did not initiate or author the petition. *Id.*; Navarro Depo., 44:16-46:5 . Plaintiff signed the petition in response to a request from a Fueler, Jezen Canlas. Navarro Depo., 48: 5-13 and 45:1-22. Plaintiff did not ask anybody to sign the petition. Canlas Decl., ¶¶ 10, 12, 13; Navarro Depo. 49: 15-24. Another Fueling Supervisor July Macapagal signed the petition. AOE Exh. 22; Macapagal Decl., ¶ 6. He was never investigated. *Id.*

**F. Dodge Precipitates the Investigation and Is Told To Submit A Statement About Plaintiff.**

Counter to Menzies' assertion, Dodge did not testify that he received reports from Fuelers ***that Plaintiff*** was pressuring them to sign a petition, merely that Dodge heard a petition was going around against him. Dodge Depo., 41:14:20. MSJ MPA 4:23-24. Exh. 21. Mr. Dodge testified that he never saw the petition. Dodge Depo., 42:5-8. On August 16, 2018, Dodge, at the request of management, wrote a statement complaining Mr. Navarro and mentions that Mr. Navarro is about to turn in the petition against him. AOE Exh. 2. Dodge Depo., 43:10-18.

Along with the statement he submitted the text messages from Mr. Navarro. In their rush to pin the whole matter on Navarro – context was lost. Meanings were placed into Mr. Navarro's words that were not true nor intended. Navarro Decl., ¶18.

**G. Menzies Suspends Plaintiff Immediately After Submitting The Petition For Supporting the Fuelers In Their Complaints Against Dodge.**

Following the requests of his Fuelers, August 22, 2018. Plaintiff submitted the petition in

a meeting with Menzies management including Director Raul Vargas. Navarro Depo., 57:1-58:14 . Canlas Decl., ¶ 11, Navarro Decl., ¶15.

Plaintiff signed the petition but did not force others to sign. Navarro Decl., ¶ 14. He delivered the petition to management: Raul Vargas. Navarro Decl., ¶15. After giving the petition to Raul Vargas at about 4 to 5 p.m. on August 23, 2018 he was suspended the next morning. *Id.* It is clear from the evidence that at this point Menzies had already decided that it would focus its attention on Mr. Navarro ignore the underlying complaints found in the petition. Raul Vargas testified that after he received the petition and reviewed the contents, he talked to Aguilera "to have the investigation"… into "how the petition was put together." Exh. 41, Vargas Deposition, 14:9-24. Navarro Decl., ¶ 15. Although Vargas had in hand a signed petition by twenty-six Fuelers complaining that Dodge engaged in unprofessional conduct and denied Fuelers meal and rest periods, he testified that he did not instruct Aguilera to investigate anything further than "how the petition was created." *Id.* 14: 25, 15:1-14.

### H. Menzies Immediate Focus On Navarro Demonstrates a Lack of Intent To Discover the Underlying Intent Of The Petition Leads to A Dishonest Investigation.

Aguilera testified that Safety and Security Manager Kevin Blumberg was directed to begin an investigation to find out "what was going on." Aguilera Depo. 25: 8-13. Menzies decides to deflect focus from Mr. Dodge to Mr. Navarro. Indeed, Menzies suspended Mr. Navarro based on Dodge's statement. However, Menzies took no action to discipline or suspend Dodge in response to the many reports against him.

Plaintiff was not provided an opportunity to give his side of the events. He met with Vargas and Blumberg: "The whole meeting lasted about 3-5 minutes. Aside from this interaction, there were no other meetings, phones calls or interviews about the petition or the working conditions created by Mr. Dodge." Id. at ¶16. In this meeting, the "investigator" Kevin Blumberg explained that signing the petition and siding with the fuelers was not appropriate. Blumberg told him to make a statement that he will not do this again. Navarro Decl. ¶¶14-15.

Aguilera admits that, on August 29, 2018, Kevin Blumberg provided the results of his

investigation. Aguilera further testified that no written findings of the investigation exist other than Blumberg's August 29, 2018 email that only concerned Plaintiff. Aguilera Depo., 32:19-33:12. Mr. Blumberg's email summarizing his findings reflect that his investigation only focused on Mr. Navarro and his alleged participation and solicitation of signatures from employees against Dodge. AOE Exh. 26, MENZIES 000198.

Director of Operations Raul Vargas further testified that, aside from Blumberg's email, there were no other written documents reflecting the outcome of their investigation. Exh. 41, Vargas Deposition, 17:21-25, 18:1-6. Vargas admits that portion of the petition that complained about breaks and delays were not investigated. *Id.* 29:14-19. Vargas testified that, from Blumberg's investigation, Menzies concluded that Plaintiff wrote the petition. Exh. 41, 16:10-22, Vargas Deposition, 17:1-15. Vargas further testified that this conclusion was drawn from Plaintiff's text messages to Dodge, however, Plaintiff texts simply state, "I'm holding on to the petition, I haven't submitted it." AOE, Exh. 21, Exh. 41,Vargas Depo., 17:1-15. When further pressed, Vargas stated that they came to this conclusion based on the statements submitted by employees, but then backs off and acknowledged that the statements "—it doesn't say about Mr. Navarro writing the petition. It says about Mr. Navarro forcing the employees to sign the petition." *Id.* 18:7-19. When questioned how the second petition is relevant to this conclusion, his excuse is that he spoke to HR about Dodge already and that he had only been as the Director of SFO for three months at that point. He admits that he did not have much context with regards to what went on during the last year. *Id.* 27:13-25, 28:1-10.

### I. Menzies Terminated Plaintiff For Purported Harassment of Fuelers. Raul Vargas' Knee Jerk Reaction to Terminate Plaintiff Was Wholly Retaliatory to Protect Dodge, Push the Fuelers Back and Teach the Filipino Fuelers a Lesson. An Examination of His Actions Illicit This Conclusion.

According to Ms. Aguilera, Mr. Navarro was terminated for **unprofessional behavior** by a supervisor. Aguilera Depo. 33:17-22. When asked to clarify what harassing conduct Plaintiff engaged in that served as a basis for his termination, Vargas testified that forcing employees to sign the petition constituted harassment because "when you have—you take advantage of your rank, that is harassment because of how the other people feel." *Id.* However, the statements on

which Vargas admits relying upon to find harassment, only report that Navarro's involvement in the petition to sign made them feel uncomfortable. AOE, Exh. 24. Vargas also was unable to confirm the number of employees who were questioned and reported feeling intimidated. *Id.* 22:23-25, 23:1-11. He could only identify that the investigation only relied on three statements out of the twenty-six people who signed the petition. Vargas seemed to argue that because of these statements he questions the validity of the whole petition due to them maybe being forced to sign. *Id.* 25:8-25, 26:1.

Raul Vargas, Director of Operations recommended termination based on the self-serving investigation findings that Mr. Navarro solicited signatures and harassed employees. AOE Exh. 26, MENZIES 000197.

**J. As a Result of Menzies' Ongoing Failure to Hold Dodge Accountable, Fuelers Submitted A Second Petition Concerning the Same Issues. At the Time, Plaintiff Was Uninvolved And Terminated From The Workplace.**

Following Plaintiff's termination, Rafael Vasquez took it upon himself to submit a second petition against Mr. Dodge. Vasquez Decl. ¶15. Mr. Vasquez explains that the reason he wrote the second petition was because the Filipino Fuelers were getting harassed and subjected to abusive by Mr. Dodge; "It had been going on for over a year already." *Id* .at ¶16. The second petition was signed by two individuals, Jayson Manalang and Wesley Faatalale, who claimed in declarations submitted with Menzies MSJ that Plaintiff pressured them to sign the first petition. AOE Exh. 27. However, Plaintiff was already removed from the workplace at the time the second petition occurred and was in no position to pressure Manalang and Faatalale. If they felt pressured, why sign the second petition? Mr. Dodge testified that he never saw the petition. Dodge Depo., 42:5-8. Moreover, Menzies management never discussed the petition with Mr. Dodge. Dodge Depo., 41:14-20.

**K. Termination of Plaintiff is a Tragedy - A lifelong employee Who Had Menzies Best Interest - Kicked Out for Furthering a Harmonious Workplace That Should not include Intimidation nor Harassment. Plaintiff has not recovered from the Injustice.**

Mr. Navarro has struggled since his termination. He says that it is painful what happened to him. What did he really do wrong? He keeps getting in his head trying to find an explanation.

He had Menzies' interest in mind all along. He signed the petition in furtherance of Menzies' interest and yet, by aiding the fuelers to get their message across, his life has been damaged. His sleep and appetite continues to be affected to this day. He has sought medical assistance. He continues to worry about financial abilities, to pay for his home, help his family, here and in the Philippines. He has jumped from one lesser job to another just to make ends meet. His mind continues to be bothered by such injustice. He keeps shaking his head, 2005 to 2018, all those years serving SFO, travelers, the airline industry, Menzies….and what, they turned over his life, to protect someone who was a bad employee – with 2 years of service? Navarro Decl., ¶¶ 19-23.

## III. LEGAL STANDARD

The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 242–43 (1986).

The clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. SH Kress & Co.*, 398 U.S., at 158–159. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

## IV. ARGUMENT

### A. Plaintiff Establishes a *Prima Facie* Case of Discrimination Because Menzies Investigation Was Not Good Faith And Substantial Evidence Exists That A White Supervisor Was Treated Preferentially.

California has adopted the three-stage burden-shifting test for discrimination claims set forth in *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973). "This so-called McDonnell

Douglas test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297.

Proof of discriminatory intent often depends on inferences rather than direct evidence. *Spitzer v. Good Guys, Inc.* 80 Cal.App.4th 1376 (2000). And because it does, "very little evidence of such intent is necessary to defeat summary judgment." *Nadaf–Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 991–992. Put conversely, summary judgment should not be granted unless the evidence cannot support any reasonable inference for plaintiff. *Spitzer v. Good Guys, Inc*., supra, 80 Cal.App.4th at p. 1386; see generally, *Miller v. Department of Corrections* 36 Cal.4th 446, 470. (2005); *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 283 (2009).

**1. Menzies' Inadequate Investigation Was A Deficient Basis To Form A Good-Faith Belief that Plaintiff Engaged in Harassment**

Menzies argues that all is required of an employer is a good-faith belief that Plaintiff engaged in the terminable conduct and Plaintiff's denials that he did so are insufficient to show overcome an employer's honest belief that served as a non-discriminatory reason for termination. MSJ MPA 11:1-21. To this end, Menzies contests that decision-makers Vargas and Aguilera, honestly believed that (1) Plaintiff pressured employees to sign the petition and (2) this conduct amounted to harassment and intimidation in a violation of its Code of Conduct. MSJ MPA 7:4-16. However, Plaintiff advances specific evidence—beyond his own denials—demonstrating that Vargas and Aguilera's basis for believing Plaintiff harassed Fuelers was based on a pre-determined investigation and not in good-faith.

Counter to Menzies' claim that it conducted an investigation into "the entire scenario surrounding the petition, including what Dodge had reported about Fuelers being pressured by Plaintiff to sign it" its assertion is not supported by the record. MSJ MPA, 5:6-7. In reality, Menzies only investigated Dodge's statement concerning Plaintiff and never investigated the

petition's underlying reports that Dodge was acting unprofessionally and denying meal breaks to Fuelers. Further, Menzies claims that its investigation was also prompted by a Union complaint is unsubstantiated and subject to genuine dispute. Vasquez Decl., ¶ 10.

In an attempt to dilute Dodge's role in sparking an investigation, Menzies claims that it first learned of the petition after Aguilera received a call from Union representative, Charles Owinche, reporting that members were being pressured to sign a petition. However, Aguilera testified that she never received a return call from Owinche in response to her request for a copy of the petition and who was being forced to sign. Exh. 40, Aguilera Deposition, 24:7-20. Effectively, this lead went unsubstantiated, and was never tied to Plaintiff. Further, Union Steward Vasquez testified that he knows Owinche and spoke to him about the petition. Vasquez testified that Menzies' claim that it received such a complaint from Owinche "does not make sense" because the Union office, including Owinche, was actively seeking signatures on the petition, including support from supervisors, like Plaintiff. Exh. 32, Vasquez Decl., ¶ 9, 10, 11.

Despite Menzies attempt to obfuscate the timeline, the record clearly shows that once Dodge verbally reported concerns regarding Plaintiff, Menzies acted promptly to initiate an investigation by first asking Dodge to write a statement summarizing his concerns. MSJ MPA 4:23-26. AOE, Exh. 21, Safety and Security Manager Kevin Bloomberg was tasked with investigating. Exh. 32, Decl. Vasquez ¶ 5, Exh. 40, Aguilera Deposition, 24:15-25, 25:1-17. Blumberg did not attempt to talk with the Union regarding the petition. AOE Exh 26. His email summarizing the evidence collected and findings of his investigation confirms that he only relied on the statements Fuelers Isaiah Banks and Charles Lawrence stating Plaintiff made them ***uncomfortable*** by signing the petition, his conversation with Plaintiff, the Dodges statements and texts.[2] AOE Exh. 26. AOE 26, Aguilera Depo. 25:18-25, 28:7-18, 33:4-12. His email findings

[2] Further, the Fueler statements submitted by Menzies and gathered in their investigation constitute inadmissible hearsay and do not qualify as an exception under Federal Rules of Evidence 803, including RFE 803(6)(B), Business Records Exception to prove they underlying content actually occurred because they were not made as part of a regularly conducted business activity of Menzies. AOE Exhibit 23; *Annett v. Univ. of Kansas*, 93 F. Supp. 2d 1135 (D. Kan. 2000) (holding that a letter containing statements made by Native American state university

make no mention of findings with respect to the petition's underlying complaints concerning Dodge. *Id.* Aguilera and Vargas testified that no other written conclusions regarding the investigation exist concerning the underlying reports about Dodge. Aguilera Depo. 32:19-25, 33:1-12.

Menzies chose not to interview numerous individuals who deny Plaintiff's asked or pressured fuelers to sign. The petition was signed by twenty-four Fuelers, seventeen of whom are Filipino, and two Filipino supervisors, and yet, Menzies interviewed no signatories. Navarro Decl. ¶14; AOE Exh. 26. Testimony by Union representative Rafael Vasquez and member Jezen Canlas confirm that they started the petition and asked other Fuelers to sign, not Plaintiff. Exhibits 5, Exhibit 11, Exhibit 1, 45:1-22. Such interviews would be critical to determining whether Plaintiff's conduct amounted to terminable harassment in violation of Menzies' Code of Conduct, particularly because the written statements collected make no mention of harassment or abuse by Plaintiff, merely that their signature on the petition made them uncomfortable.

For Menzies to establish that its decision makers held a good faith belief that Plaintiff engaged in terminable conduct, the basis for that conclusion must be honest and impartial. The case cited by Menzies affirms as much. *Kodwavi v. Intercontinental Hotels Grp. Res., Inc*., 966 F. Supp. 2d 971, 984 (N.D. Cal. 2013) held that the employer demonstrated a good-faith, honest basis for terminating plaintiff based on "a thorough investigation, speaking to ***scores of witnesses***, and reviewing Plaintiff's entire personnel file." Here, Menzies' investigation ignored key witnesses, presumably because they would support Plaintiff, and came to the conclusory finding that Plaintiff's conduct amounted to harassment. Menzies' investigation does not satisfy the good-faith standard articulated by the court in *Kodwavi,* and therefore Menzies fails to establish that it held a legitimate, non-discriminatory reason to terminate Plaintiff.

---

professor to the university was not made as part of professor's duties to produce records for the university and was not admissible to prove that the adverse action occurred to support professor's discrimination claims under Title VII). Menzies submitted a third statement by Mario Caballero Salazar authenticated by Aguilera. Menzies AOE Exh. 1. However, her email dated August 27, 2018 only makes reference to two statements. Menzies AOE Exh. 26.

Further, Menzies cites *Collier v. Windsor Fire Prot. Dist. Bd. of Directors*, No. C 08-2582 PJH, 2011 WL 4635036, at 4 (N.D. Cal. Oct. 6, 2011) for the position that the court need not determine whether plaintiff actually committed the misconduct that led to the dismissal, only whether a factual basis for the employer's decision was reached honestly. The *Collier* ruling is entirely inapplicable here. There, the court analyzed the employer's burden applicable to a procedural and substantive due process challenge brought by a public employee firefighter. *Id.* at 4. The decision does not address an employer's burden under FEHA to establish a legitimate, non-discriminatory basis for termination under the *McDonnell-Douglas* burden shifting framework applicable here.

**2. Menzies After-Acquired Evidence Is Immaterial to Show The Decision-Makers Held A Good-Faith, Legitimate Belief That Plaintiff Pressured Employees To Sign The Petition.**

In its Appendix of Evidence submitted in support of its MSJ, Menzies includes eight declarations by Fuelers claiming pressure by Plaintiff or that they were presented with only a signature page. Notably, these declarations were collected in September 2020 and years after Menzies conducted the investigation that served as the basis for Plaintiff's termination. None of the Declarants submitted statements, nor were they interviewed by Menzies, prior to Plaintiff's termination. Further, while two of the declarants claim to have felt pressured by Plaintiff to sign, their signatures also appear on the second petition submitted to Menzies after Plaintiff was terminated and absent from the workplace, rendering him incapable of being in any position to force anyone to sign the petition. Two additional declarants specifically testify that Jezen Canlas, not Plaintiff, asked them to sign the petition. AOE Exhs. 8 & 9. Most critically, however, after-acquired evidence is immaterial to proving that an employer held a legitimate, non-discriminatory basis for termination. The statements made in these declarations concerning Plaintiff's conduct were unknown to Menzies' decisionmakers when they fired Plaintiff, and therefore have no bearing in supporting that Menzies held a legitimate reason for termination. *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407, 431 (2014) (holding that after-acquired evidence is simply irrelevant during all phases of the three-stage burden-shifting approach designed to establish liability.); *and see Horne v. Dist. Council 16 Internat. Union of Painters & Allied Trades*, 234 Cal. App. 4th

524, 540 (2015).

**3. Plaintiff Can Establish Substantial Evidence of Pretext.**

Even assuming that Menzies believed that Plaintiff asked employees to sign the petition, and if that further formed a good-faith belief that Plaintiff violated Menzies' Code of Conduct, Plaintiff can establish substantial evidence that Menzies' purported reason is pre-text to mask a discriminatory motive. [3]

First, Menzies assertions that Plaintiff admitted that he has no tangible evidence to support his termination is a gross misrepresentation. Plaintiff testified that he believes he was subjected to discrimination because Menzies took no action against Dodge, a White supervisor, but fired Plaintiff for reporting valid problems to management concerning Dodge's misconduct. See Navarro Deposition 91:14-25. Such comparator evidence is probative of pretext. Evidence that an employer treated "similarly situated employees outside the plaintiff's protected class more favorably is probative of the employer's discriminatory or retaliatory intent. *Guz*, supra, 24 Cal. 4th at 366, *internal quotations removed*; *McDonnell Douglas Corp.*, supra, 411 U.S. at 804 (holding that evidence that white employees who engaged in comparable conduct were retained or rehired while the plaintiff, who is black, was laid off); *and see Gupta v. Trustees of California State Univ*., 40 Cal. App. 5th 510, 519 (2019).

Menzies' does not dispute that it received information concerning Dodge's conduct and

---

[3] Even assuming that Menzies believed that Plaintiff improperly pressured employees to sign the petition was a factor in their decision to terminate his employment, Plaintiff can still prevail upon showing that discrimination was the ***substantial motivating factor.*** Under FEHA, Plaintiff is only required to show that discrimination was a ***substantial motivating factor*** behind the adverse action to affix employer liability, even if other factors would have led the employer to make the same decision at the same time. See *Harris v. City of Santa Monica,* 56 Cal.4th 203, 229 (2013). A complainant need not prove that discriminatory animus was the sole motivation behind a challenged action. *Mixon v. Fair Employment and Housing Com*., 92 Cal.App.3d, 1306, 1319 (1987). *Id.* In so doing, California courts recognize that discrimination need not be a "but for" cause in the employment decision to find liability. See *Harris, supra,* 56 Cal.4th at 232.

mismanagement that warranted corrective action. MSJ MPA 3:16-18. The petition itself reported Dodge for engaging in unprofessional behavior, the very reason that Aguilera testified was the basis for Plaintiff's termination. AOE Exh. 22; Aguilera Depo., 33:17-22. However, Menzies' claims it only counseled Dodge—a response that pales in comparison to the termination decision handed down to Plaintiff—demonstrating different treatment. Indeed, Menzies ignored and took no action in response to numerous reports through 2017 to 2018 of Dodge's violations of workplace policies, code of conduct and California labor laws. Vasquez Decl. ¶¶ 6, 8

Menzies attempt to cast Plaintiff's conduct in contrast to complaints concerning Dodge as an apples-to-oranges comparison is not well taken. MSJ MPA 12:9-26. Menzies admits that it terminated Plaintiff because they concluded that Plaintiff soliciting signatures and intimidating employees. AOE ¶ 26; MENZIES 000197. Vargas testified that "One person, just one person complaining about supervisor harassment is enough to take action." Exh. 41; Vargas Depo., 41:18-25, 42 35:1. While Menzies claims that it only received complaints regarding Dodge's harassment after Plaintiff was terminated, this assertion is contradicted by testimony of several Fuelers who report complaining to management on numerous occasions for over a year prior to Plaintiff's termination regarding Dodge's abusive and harassing conduct toward Fuelers. At the very least, a genuine, material dispute of fact exists as to whether Menzies' received complaints.

Plaintiff testified that he has observed discriminatory terminations of Asian coworkers, whereas White employees, including Dodge, faced no repercussions for violating company policies. Exhibit 37, Navarro Deposition, 91:14-25. Navarro Decl., ¶ 7. Other Fuelers also testified that Menzies perpetuated a harassing and discriminatory treatment toward Filipino employees by Dodge, Aguilera, and Menzies management. Vasquez Decl., ¶ 3; Canlas Decl., ¶ 5, 6; Navarro Decl., ¶ 6, 8-10, Ilagan Decl. ¶ 7.

Finally, Menzies' investigation into Plaintiff's conduct was conclusory and did not interview additional Fuelers or the Union Representative responsible for starting the petition. When an employer's investigation of an employee, used to justify the employee's termination, and the employer's failure to interview witnesses for potentially exculpatory information is

evidence that the termination was a pretext. *Reeves v. Safeway Stores*, 121 Cal. App.4th 95, 120–121; *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 280 (2009).[4]

**B. Plaintiff Establishes a *Prima Facie* Case of Retaliation Because He Engaged in Protected Activity By Lending Support and Repeatedly Notifying Management of Filipino Fuelers Complaints of Dodge's Harassment Leading Menzies To Silence Him By Terminating His Employment.**

To prove a prima facie case of retaliation under the Fair Employment and Housing Act, plaintiffs must show 1) they engaged in a "protected activity," 2) the employer subjected the employee to an adverse employment action, and 3) there was a causal link between the protected activity and the employer's action. See *Yanowitz v. L'Oreal USA, Inc.* 36Cal.4th 1028, 1042 (2005). Of course, an employee need not explicitly and directly inform his or her employer he or she believes the employer's conduct was discriminatory or otherwise forbidden by FEHA. *Id.* at p. 1046. "The relevant question . . . is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047 (2005) *quoting Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995).

**1. Plaintiff's Involvement With the Petition Is The Culmination of A Several Reports Made By Plaintiff And Other Filipino Fuelers Regarding Dodge's Unlawful Harassment And Constitutes Protected Activity.**

Menzies' attempts to skirt liability by claiming that the complaints they received regarding Dodge concerned only operational issues and did not contain reports of harassment or abuse. MSJ MPA 12:3-5. Menzies's narrow focus on the words of the petition itself, concerning Dodge's unprofessional behavior and denying Fuelers meal and rest breaks, conveniently ignores

[4] Menzies may have inadvertly forgotten to use the Errata sheet provided by Plaintiff and posted or included by the deposition officer as part of the certified transcript. The errata sheet was included on Sept. 2, 2020. A copy of the Errata sheet is found in Ex. 38. There are substantive changes to the cited testimony by Menzies.

the repeated reports by Plaintiff and the Union prior to the petition complaining of Dodge's misconduct and harassment of Filipino Fuelers to Menzies management. This claim is unsupported by the evidentiary record and constitutes a fact subject to genuine dispute. Indeed, the petition was the culmination of these efforts that went largely ignored by Menzies. Canlas Decl., ¶¶ 8-9. Such narrow focus of protected activity is not supported by California law. Rather, to prevail in establishing protected activity under FEHA, "an employee is not required to use legal terms or buzzwords when opposing discrimination. The court will find opposing activity if the employee's comments, ***when read in their totality***, oppose discrimination." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1047 (2005) *quoting Wirtz v. Kansas Farm Bureau Services, Inc*. (D.Kan.2003) 274 F.Supp.2d 1198, 1212, fn. Omitted. This enactment aids enforcement of the FEHA and promotes communication and informal dispute resolution in the workplace. *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 472 (2005) (quoting *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476–477 (1992)).

Plaintiff testified that he reported to Renil Lal and John Qually about the way Mr. Dodge treated Filipino fuelers. Navarro Decl., ¶ 13. Other Fuelers also testified that Plaintiff's involvement was one of many reports to management regarding Dodge's mistreatment of Filipino Fuelers. Further, Menzies' claim that the only complaint of harassment regarding Dodge was a letter received from Union Steward Rafeal Vasquez after Plaintiff's termination is contradicted by the content of Mr. Vasquez's letter itself. MSJ MPA 7:19-26; AOE Exh. 28.. The November 18, 2018 letter states that Mr. Vasquez reported Dodge's harassment and abuse to Raul Vargas ***on three prior occasions.*** This is echoed in the testimony of other Fuelers. Further, Union members testified that they attended regular meetings with management which they reported Dodge's harassing and abusive conduct toward Filipino Fuelers. Vargas Depo., ¶ 8; Canlas Decl., ¶ 15.

Here, the evidentiary record demonstrates a long history of complaints to management regarding Dodge, which Plaintiff was an integral part. Employees' belief that they are complaining about prohibited conduct "may be inferred from the ***nature and content of their repeated complaints.*** The issue of a plaintiff's subjective, good faith belief involves questions of

credibility and ordinarily cannot be resolved on summary judgment." *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1047 (2016) (quotations omitted).

**2. Plaintiff Is Protected Under FEHA Retaliation Because He Was a Prospective Witness to Dodge's Unlawful Harassment And Menzies' Failure to Take Corrective Action.**

California courts have found that FEHA prohibits "[e]mployer retaliation against employees who are believed to be ***prospective*** complainants or witnesses for complainants" because the absence of such protection would "undermine[] this legislative purpose just as effectively as retaliation after the filing of a complaint. *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1255 (2008). Menzies was aware that Plaintiff observed Dodge engaging in harassing conduct and abuse toward Filipino Fuelers – Plaintiff previously reported as much to Menzies and sought corrective action. Further, Plaintiff, as a supervisor, was in a central position both to (1) the number and variety of complaints raised against Dodge (2) Menzies's repeated failure to correct or prevent further incidents of harassment from occurring, and (3) Plaintiff also felt discriminated against in contrast to Menzies' favoritism toward Dodge. Against this backdrop, Plaintiff was a central player both in witnessing harassment and unsafe working conditions. As the court in *Steele* articulate, preemptive retaliation against a prospective witness to discrimination is unlawful and prohibited under FEHA. Menzies rush to terminate Plaintiff before investigating Dodge's conduct and refusal to interview Plaintiff with respect to his own observation about Dodge's conduct suggests a quick hack job aimed at silencing a central witness to a year-long period of unchecked harassment of Filipino Fuelers. Indeed, Plaintiff testified that after he was suspended, he was never allowed to explain his side of the story for signing the petition, nor his reason for siding with fuelers, demonstrating Menzies' intent to silence Plaintiff. Navarro Decl. ¶ 16, 17.

**3. Menzies Exaggerates, and Misreads the Law, In Concluding That The Act of Signing The Petition Is a Violation of Federal Law Under 29 USC § 159.**

Menzies claims that Plaintiff's retaliation claim fails because he did not engage in protected activity under FEHA, and attempts to characterize his conduct as illegal activity under federal labor law. 29 USC § 159 is not designed merely to protect particular election or

organizational campaign but is ***designed to protect employees*** in exercise of their organizational rights. *N.L.R.B. v. Raytheon Co*., 398 U.S. 25, on remand 445 F.2d 272. In lending support to Fuelers by signing the petition, Plaintiff does not interfere with the Union's right to petition but instead furthers that purpose. Plaintiff has asserted all along that he does nothing more. His position is supported by the actual Union members who did solicit signatures.

Raul Vargas, in articulating his reason to terminate, mentions nothing of Union interference. Even if Menzies's claim that Plaintiff's conduct amounted to asking Fuelers to sign a petition, such conduct does not constitute interference with Union business or right to grieve. Rather, Plaintiff was actually assisting the Union. The content of the petition in no way sought to change members rights under the CBA, but seeks to address Dodge's mismanagement that lead to working conditions violations. Union member Jezen Canlas requested assistance from Mr. Navarro. The Fuelers, with the assistance of the Union, initiated the petition and asked Navarro to add his name and submit to management. That does not amount to unlawful labor practice. Further, of note, is that July Macapagal, another supervisor also lent his support, he was not investigated nor terminated. Menzies' was aware of this, and yet, If Menzies did believe that Plaintiff's involvement with the petition as a supervisor violated employees' bargaining rights, their uneven handling of this purported issues signals Menzies' retaliatory targeting of Plaintiff. While Raul Vargas requests that July Macapagal also be investigated as a supervisor who signed the petition, Macapagal testified that he was never questioned, nor investigated for lending his signature to the petition. Macapagal Decl., ¶ 6.

The cases that Menzies cites lend no support to their position. In *Castelli v. Douglas Aircraft Co., 752 F.2d 1480* (9th Cir. 1985) employee filed suit challenging his discharge and alleging that union breached its duty of fair representation. The Court granted summary judgment in favor of the employer and union. Employee appealed the grant of summary judgment in the union's favor. The Court of Appeals, Poole, Circuit Judge, held that: (3) the policy that the union is the exclusive representative of all employees in the bargaining unit for purposes of collective bargaining generally requires that the union, rather than privately retained counsel, deal with the

employer in the settlement of employee grievances.

Menzies then cites *Stewart v. Leland Stanford Junior Univ*., No. C 05-04131 JW, 2006 WL 889437 (N.D. Cal. Apr. 5, 2006). But there again the issue was the right of a union member to have their own legal representation. Honorable James Ware was clear in his pronouncement that "federal labor statutes disfavor the involvement of privately retained attorneys in grievance proceedings because such participation would undermine the policy of exclusive representation." *Stewart v. Leland* at *4 (citing *Castelli v. Douglas Aircraft*, at 1484).

Cases that have more similar factual scenarios under 29 USC § 159 point the other direction and is more illustrative of the rights contained within the subchapters. In *Lake City Foundry Co. v. N. L. R. B., C.A.7 (Ill.)* 1970, 432 F.2d 1162, the Court there illustrated that statements by company secretary to employee who was wearing union button that company did not want union, that it was no good and that employee would no longer get personal loans from company if union got in and that employee would lose all overtime and there would be layoffs because union would want strikes, and questioning of employee whether she knew "those union guys had been around here," constituted no more than expression of opinion and were permissible. While in *N.L.R.B. v. WKRG-TV, Inc.*, 470 F.2d 1302, 1316 (5th Cir. 1973), the Court there was clear in instructing that there must be a more substantial exhibition of pressure than a passing remark or a statement of pro-union conviction. So long as nothing in the words, deeds, or atmosphere of the alleged "solicitation" contain the seeds of potential reprisal, punishment, or intimidation, the involvement of the supervisors does not rise to the levels of supervisory "solicitation" that we condemned.

Therefore, cases that analyze what amounts to "solicitation" or "pressure" such that it rises to the level of interference, focus on an effect that indicate union members were forced to act against their will. Here, the petition was assisted by Mr. Navarro, not undermined.

**C. Plaintiff Established A Claim of Wrongful Termination in Violation of Public Policy Because Menzies Discharged Plaintiff For Challenging Unlawful Working Conditions.**

Plaintiff's wrongful discharge claim rests on his assistance and assertion of important state

rights. The right of employees for meal breaks. The right of employees to be free from discrimination and harassment. In assisting the efforts of the fuelers asserting such rights he was terminated. [W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions. *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170. "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.

"[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) <u>reporting an alleged violation of a statute of public importance.</u>" *Gantt v Sentry Insurance* (1992)1 Cal.4th1083, 1090–1091, internal citations and footnote omitted, overruled on other grounds in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6. "[T]ermination of an employee most clearly violates public policy when it contravenes the provision of a statute forbidding termination for a specified reason … ." [A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." *Green, supra, 19 Cal.4th at p. 87*, internal citation omitted. "FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for wrongful termination in violation of public policy." *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 660. "California's minimum wage law represents a fundamental policy for purposes of a claim for wrongful termination or constructive discharge in violation of public policy." *Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 831−832.

Here, for over a year Plaintiff was attempting to put into focus the illegal activities that Andrew Dodge engaged in. The straw that broke Menzies' back and therefore schemed to terminate him, was his support of the Fuelers in the efforts to enforce meal break rights and

"unprofessional behavior" by Mr. Dodge. When the petition put into focus the actions of Andrew Dodge towards the fuelers, which upon investigation included harassment, abuse of power and discrimination, instead of performing their duties under the law, Menzies schemed against Navarro to shield Dodge, push back the fuelers and therefore make the problem go away.

**D. Plaintiff's IIED Claim Is An Exception To Exclusive Remedy Rule Because Menzies Engaged in Conduct Outside Compensation Bargain – A Scheme To Protect Dodge, Terminate and Make an Example Out Of Plaintiff For Pursuing Fueler's Claims of Harassment, Intimidation, Abuse of Power And Discrimination.**

Workers' compensation is not the exclusive remedy when an employer's conduct is outside of the compensation bargain. *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 7; *City of Moorpark v. Superior Court of Ventura County (Dillon)* (1998) 18 Cal.4th 1143, 1157–60. Those situations exist when the employer steps out of its proper role or engages in conduct of questionable relationship to the employment. *Shoemaker at 503*. In those cases, an employee may pursue a civil claim against the employer.

In assessing whether an exception to the exclusive remedy rule exists for a cause of action, courts first determine whether the alleged acts are of the kind reasonably contemplated by the compensation bargain. The California Supreme Court has stated, "[T]he critical issue is whether the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer relationship or claims process. Where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity." *Charles J. Vacanti, M.D., Inc. v. SCIF* (2001) 14 P.3d 234, 244. One court stated, "Workers' compensation awards may fall short of making the tort victim 'whole' and provide no deterrent effect on an intentionally wrongdoing tortfeasor." *Young v. Libbey-Owens Ford Co.* (1985) 168 Cal. App. 3d 1037, 1044.

**1. Intentional Infliction of Emotional Distress Is Not Barred Because Menzies Engaged In A Campaign to Terminate Plaintiff and Retaliate – Misconduct That Exceeded The Normal Risks Of The Employment Relationship.**

In *Vanderhule v. Amerisource Bergen Drug Corp.* United States District Court, C.D. California (January 17, 2017) 2017 WL 168911, 82 Cal. Comp. Cases 128 (U.S. District Court held that claim for intentional infliction of emotional distress was not barred by exclusive remedy

rule based on harassment and discrimination); *Paleg v. Kmart Corp*. United States District Court, C.D. California (July 11, 2017) 2017 WL 2974923, 82 Cal. Comp. Cases 747 (U.S. District Court held plaintiff's intentional infliction of emotional distress claim not barred by exclusive remedy rule). Also, in one case, the Court of Appeal held that an employee may pursue a claim for intentional infliction of emotional distress in the employment context when the conduct at issue violates the FEHA. The plaintiff alleged that her supervisor engaged in sexual harassment, discrimination based on sex, sexual orientation, marital status and retaliation over her friendship with a co-worker the supervisor believed to be a lesbian. *Light v. Department of Parks and Recreation* (2017) 82 CCC 987. See also *De Peralta v. Fox Restaurant Concepts* (2018) 83 CCC 478.

Here, Navarro suffered severe emotional distress as a victim of a scheme to remove him in order to protect Mr. Dodge while pushing away the Filipino fuelers who complained of abusive working conditions. The actions of Menzies in ignoring the underlying claim and intentionally making up that Mr. Navarro was pressuring fuelers goes beyond normal work. Navarro alleges retaliation and discrimination for assisting the fuelers in bettering their working conditions. Such despicable conduct by Menzies if proven is simply beyond the compensation bargain contemplated by Workers Compensation.

Date: November 2, 2020

Liberation Law Group, PC

Arlo Uriarte
Elizabeth Lyons