*Exhibit 42*

000109

```
 1              IN THE UNITED STATES DISTRICT COURT
 2         IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3
 4
 5   RENALDO NAVARRO,
 6              Plaintiff,
 7   v.                                    No.  3:19-CV-8157
 8   MENZIES AVIATION, INC.,
     doing business as MENZIES
 9   and DOES 1 through 10,
     inclusive,
10
                Defendants.
11   _____/
12   Zoom Remote Deposition of
13        JOHN QUALLY
14    Monday, July 27, 2020
15          Volume I
16     (Pages 1 through 32)
17
         CERTIFIED COPY
18
19
20
21   REPORTED BY:  CINDY TUGAW, CSR #4805
22
23
              NOGARA REPORTING SERVICE
24         5 Third Street, Suite 415
         San Francisco, California 94103
25              (415) 398-1889
```

<< NOGARA REPORTING SERVICE >>                               1

000110

1  Q. Okay. All right. So let's see. So you
2  said -- when you started with ASIG -- and is that the
3  right way to call it, ASIG, by the way, A-S-I-G, ASIG?
4  Do you guys say that, ASIG?
5  A. Yes.
6  Q. When you started with ASIG, what was your
7  position with them?
8  A. Supervisor.
9  Q. Can you tell me what the duties of a
10 supervisor would be?
11 A. The duties are basically overseeing of the --
12 overseeing and assigning the flights to the fuelers and
13 making communication with the airlines on -- as we go
14 through the day.
15 Q. And by 2018, how many fuelers were assigned to
16 a supervisor? Do you remember?
17 A. It could -- I guess it varies by shift.
18 Q. I see. What would be the range, like would
19 you say between three and ten, or was there like a
20 range?
21 A. I guess it depends on the shift. Some shifts
22 had upwards of 12 to 15. Some shifts had anywhere from
23 three to four.
24 Q. Gotcha. And the interesting -- or the date
25 most interesting for us is August of 2018 because

1  supervisors with regards to how they work with fuelers,
2  right? You said earlier that you would -- one of the
3  duties would be to assign flights to the fuelers for
4  the shift, right?
5      A. Yes.
6      Q. That's one of the duties. What other duties
7  do supervisors have?
8      A. They -- besides assigning the flights, they
9  are obviously in communication with airlines as needed.
10 They're overseeing the safety of the operation, making
11 sure that, you know, everything is going safely.
12     Q. Okay. So is it the supervisor that's actually
13 on the headphone with the plane during the fueling
14 operation, or with the airline?
15     A. No.
16     Q. No? That could be any of the fuelers?
17     A. Well, the fuelers don't communicate with the
18 flight crew. They communicate with the airline
19 representative.
20     Q. Gotcha. Okay. And who is that? Is that the
21 fueler or is that the supervisor?
22     A. Sometimes both. But, in general, when you're
23 actually fueling, it would be more so the fueler than
24 the supervisor.
25     Q. Okay. Are supervisors sometimes -- like do

```
 1    they sometimes help with the fueling operation, like
 2    they go to the actual airplane and help with the
 3    fueling of the airplane?  Do they sometimes do that?
 4         A.   They sometimes, yes.
 5         Q.   And earlier you said they make sure -- they
 6    ensure the safety of the operation.  How are
 7    supervisors keyed to that?  How are supervisors
 8    important in the safety of the operation?
 9              Do you understand the question, Mr. Qually?
10         A.   Yeah.  No, they're just -- they're there to,
11    you know, ensure the fuelers are working safely.  If
12    there's any safety concerns, they do what they can to
13    resolve them, whether it be on the fueler's end or the
14    equipment end, you know.  They help do whatever needs
15    to be done to keep everything safe.
16         Q.   Gotcha.  And what kinds of situations
17    sometimes come up when it comes to the safety?  Can you
18    give us an example of safety concerns that sometimes
19    come up?
20         A.   Sometimes a fueler is not following proper
21    procedures on the fueler's end, equipment not working
22    right.  So they may have an issue with the equipment.
23         Q.   So is it safe to say then that the supervisors
24    are kind of overseeing each one of these fueling
25    operations with regards to the airplane?
```

1      A.  Yes.

2      Q.  Okay.  And then what other duties do

3  supervisors have with regards to the fuelers?

4      A.  Basically, you know, for operational purposes,

5  it's making sure that the flights are getting done, the

6  fuelers are getting to the flights when they're

7  supposed to, you know, addressing whatever issues may

8  come up.

9      Q.  What about giving breaks, for example, like

10  timing the breaks, when people can go for meal periods,

11  when people can go for their ten-minute breaks, is that

12  the supervisor's duties?

13      A.  Yes.

14      MR. WU:  Objection.  Relevance.

15      MR. URIARTE:  Q.  And then what about clocking in

16  and clocking out, do the supervisors have any duties

17  with regards to that?

18      MR. WU:  Same objection.

19      THE WITNESS:  No.

20      MR. URIARTE:  Q.  Like if there are issues with

21  regards to they forgot to clock out or, oh, they forgot

22  to clock in, something like that, is that the

23  supervisor's duty or is that somebody else's?

24      MR. WU:  Same objection.

25      MR. URIARTE:  Q.  Mr. Qually?

1       A.   No.

2       Q.   So who's responsible for like fixing clock-ins

3  and clock-outs?

4       MR. WU:   Same objection.

5       THE WITNESS:   The fueler.

6       MR. URIARTE:   Q.   I'm sorry?

7       A.   The fueler.

8       Q.   The fueler?

9       A.   Whoever did not clock in or out.

10      Q.   And then who does the fueler have to talk to

11 with regards to that?

12      A.   They would usually come to us as the manager

13 or go straight to payroll.

14      Q.   Gotcha.

15      MR. WU:   And, Arlo, can we assume I'm asserting

16 the same objections for this line of questioning just

17 to keep things flowing?

18      MR. URIARTE:   Sure.

19      MR. WU:   Thank you.

20      ==MR. URIARTE:   Q.   How does the supervisor avoid==

21 ==causing delays in these fuelings -- delays to the==

22 ==airlines, right?   I hear that sometimes the fueling==

23 ==operation is what causes the delay, right?   Can that==

24 ==happen, Mr. Qually?==

25      ==A.   It can.==

1   Q.  And what happens?  Why are delays caused by
2   the fueling operation?  Why does that happen?
3   A.  Many different factors involved.  It could be
4   the way the flights were set up for the fueler.  It
5   could be an equipment issue.  It varies depending on
6   the situation.  I mean, there's no set reason for that.
7   Q.  Is that something that the supervisors try to
8   avoid as part of their duties, they try to avoid any
9   delays?
10  A.  Yes.
11  Q.  And I guess they try to avoid delays by having
12  like the proper number of fuelers working there, right?
13  I mean, you have to be properly staffed in order to
14  avoid delay, correct?
15  A.  That's one, yes.
16  Q.  And then you have to make sure that they have
17  the right equipment, that they're doing things
18  correctly?
19      It looks like we lost -- are you still there?
20  A.  Yeah, hold on just a moment.
21      What was your question again?
22  Q.  Yeah, I guess that goes into what we were
23  talking about earlier, that the supervisors have to
24  make sure that the fuelers are using the right
25  equipment, they're using the right procedures and all

1  of those kind of things, like assist in avoiding
2  delays.  Is that correct?
3           MR. WU:  Objection.  Compound.
4           MR. URIARTE:  Q.  Mr. Qually?
5       A.  Yes.
6       Q.  All right.
7           (Discussion off the record.)
8       MR. URIARTE:  Q.  So you had a working
9  relationship with plaintiff Renaldo Navarro, right?  Is
10 that correct, Mr. Qually?
11      A.  Yes.
12      Q.  Were you social with Mr. Navarro at all?  Did
13 you guys like go to baptisms or Christmases or
14 whatever?
15      A.  No.
16      Q.  Okay.  So you knew him from work only, is that
17 correct?
18      A.  Yes.
19      Q.  You didn't have some sort of social or
20 family-related kind of relationship, right?  Is that
21 correct?
22      A.  No.
23      Q.  And you supervised Mr. Navarro when you were
24 the duty manager and he was the supervisor, is that
25 correct?

<< NOGARA REPORTING SERVICE >>                    22

000117

1    A.   And it was brought up to the higher-ups.

2    Q.   And who were the higher-ups at that time?

3    A.   Let's see.  Who was it?  Renil was one of

4 them.

5    Q.   Who?

6    A.   Renil Lal.  Because he was the acting GM at

7 the time, so --

8    Q.   Okay.  Anybody else, do you remember?

9    A.   No.

10   Q.   Did anything happen because of the complaints

11 that Andrew Dodge was sleeping?  Do you know what

12 happened to Andrew Dodge?  Was he reprimanded?  Was he

13 written up?

14        Did anything happen because of that?

15   A.   Not that I know of.

16   Q.   Did Mr. Dodge explain to you what happened or

17 did he admit it or anything like that?

18   A.   He did.  He had sleep depravation -- or sleep

19 apnea, sorry.

20   Q.   So he had sleep apnea, and so --

21   A.   According to what I heard, what the

22 explanation was, at times it's easy for a person to

23 fall asleep.

24   Q.   Aside from his -- aside from Mr. Navarro

25 mentioning that Mr. Dodge was sleeping, any other

```
 1   STATE OF CALIFORNIA     )
                             )
 2   COUNTY OF SAN FRANCISCO )

 3          I, CINDY TUGAW, a Certified Shorthand Reporter
 4   of the State of California, duly authorized to
 5   administer oaths pursuant to Section 8211 of the
 6   California Code of Civil Procedure, do hereby certify
 7   that
 8                      JOHN QUALLY,
 9   the witness in the foregoing deposition, was by me duly
10   sworn to testify the truth, the whole truth and nothing
11   but the truth in the within-entitled cause; that said
12   testimony of said witness was reported by me, a
13   disinterested person, and was thereafter transcribed
14   under my direction into typewriting and is a true and
15   correct transcription of said proceedings.
16          I further certify that I am not of counsel or
17   attorney for either or any of the parties in the
18   foregoing deposition and caption named, nor in any way
19   interested in the outcome of the cause named in said
20   caption.
21          Dated the 7th day of August, 2020.
22
23
24
                                CINDY TUGAW
25                              CSR No. 4805 (California)
```

<< NOGARA REPORTING SERVICE >>                    31

000119

```
                IN THE UNITED STATES DISTRICT COURT

         IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA



  RENALDO NAVARRO,

              Plaintiff,

  v.                                          No.  3:19-CV-8157

  MENZIES AVIATION, INC.,
  doing business as MENZIES
  and DOES 1 through 10,
  inclusive,

              Defendants.
  _____/

  Zoom Remote Deposition of

         JOHN QUALLY

   Tuesday, July 28, 2020

          Volume II

     (Pages 33 through 58)


     CERTIFIED COPY




  REPORTED BY:  CINDY TUGAW, CSR #4805


             NOGARA REPORTING SERVICE
          5 Third Street, Suite 415
        San Francisco, California 94103
               (415) 398-1889
```

1   no.

2       Q.  Did you -- like either part of the petition or
3   part of what was happening, or anything like that, did
4   you ever have a discussion with Mr. Dodge with regards
5   to his fuelers and his fuelers maybe not being able to
6   take breaks?  Did you ever engage in such a discussion
7   with him?

8       A.  It probably came up once or twice, yes.

9       Q.  And was this once or twice before the
10  termination of Mr. Navarro?

11      A.  Likely, yes.

12      Q.  And can you tell us what your memory is of
13  that, like, what was that discussion about?

14      A.  Basically fuelers not being able to take a
15  break just by the fact that they were shorthanded or
16  just lots of flights.  Nothing I can remember in
17  general, but those are usually the only things that
18  would prevent that.

19      Q.  Okay.  And what brought up the need to talk to
20  Mr. Andrew Dodge about the breaks and his fuelers?
21  What brought it up to you?  What kind of triggered
22  that?

23      MR. WU:  Objection.  Assumes facts not in
24  evidence.

25      THE WITNESS:  Sometimes a fueler would complain to

1  me, but that's it.

2       MR. URIARTE:  Q.  And did Mr. Dodge have any
3  opinion or did he kind of have his position as to why
4  these breaks were short -- I mean, the breaks weren't
5  happening, or the breaks were late, or anything like
6  that?

7       Did Andrew Dodge try to explain himself as to
8  why those things were happening?

9       MR. WU:  Objection.  Assumes facts not in
10 evidence.

11      THE WITNESS:  Yes.

12      MR. URIARTE:  Q.  And what would he say in those
13 discussions?

14      A.  He gave me the explanation of what happened
15 during the night and why some fuelers weren't able to
16 get a longer break than they did or any break at all.
17 And that's it, you know.

18      We -- there is a policy where, if they don't
19 get a break, they get a missed meal penalty.  So they
20 get paid for their lunch.

21      Q.  Did you ever have a discussion with a Rafael
22 Vasquez about Andrew Dodge?

23      A.  I might have at one point.  I don't recall.

24      Q.  And what do you remember as to that
25 discussion?

```
1   STATE OF CALIFORNIA    )
                           )
2   COUNTY OF SAN FRANCISCO )
```

3           I, CINDY TUGAW, a Certified Shorthand Reporter
4   of the State of California, duly authorized to
5   administer oaths pursuant to Section 8211 of the
6   California Code of Civil Procedure, do hereby certify
7   that
8                    JOHN QUALLY,
9   the witness in the foregoing deposition, was by me duly
10  sworn to testify the truth, the whole truth and nothing
11  but the truth in the within-entitled cause; that said
12  testimony of said witness was reported by me, a
13  disinterested person, and was thereafter transcribed
14  under my direction into typewriting and is a true and
15  correct transcription of said proceedings.
16          I further certify that I am not of counsel or
17  attorney for either or any of the parties in the
18  foregoing deposition and caption named, nor in any way
19  interested in the outcome of the cause named in said
20  caption.
21          Dated the 7th day of August, 2020.

                    [signature: Cindy Tugaw]

                    CINDY TUGAW
                    CSR No. 4805 (California)

000123