1  CHRISTOPHER WARD, CA Bar No. 238777
       cward@foley.com
2  **FOLEY & LARDNER LLP**
   555 SOUTH FLOWER STREET, SUITE 3500
3  LOS ANGELES, CA 90071-2411
   TELEPHONE: 213.972.4500
4  FACSIMILE:  213.486.0065

5  JASON WU, CA Bar No. 313368
       jwu@foley.com
6  **FOLEY & LARDNER LLP**
   555 CALIFORNIA STREET, SUITE 1700
7  SAN FRANCISCO, CA 94104-1520
   TELEPHONE: 415.434.4484
8  FACSIMILE:  415.434.4507

9
   Attorneys for Defendant MENZIES
10 AVIATION, INC.

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15  Renaldo Navarro,                          )  Case No. 3:19-cv-8157
                                              )
16                         Plaintiff,         )  **DEFENDANT MENZIES AVIATION,**
                                              )  **INC.'S NOTICE OF MOTION AND**
17            vs.                             )  **MOTION FOR SUMMARY JUDGMENT,**
                                              )  **OR IN THE ALTERNATIVE, PARTIAL**
18  Menzies Aviation, Inc., DOING BUSINESS AS )  **SUMMARY JUDGMENT**
    MENZIES; and DOES 1 through 10, inclusive, )
19                                            )  Filed concurrently with:
                           Defendants.        )      (i)   Appendix of Supporting Evidence, and
20                                            )      (ii)  Proposed Order
                                              )
21                                            )
                                              )  DATE:   November 19, 2020
22                                            )  TIME:    10:00 a.m.
                                              )  PLACE: Videoconference
23                                            )
                                              )  State Court Action Filed:  10/23/19
24                                            )
                                              )  Action Removed:  December 16, 2019
25  _____ )

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2020 at 10:00 a.m., or as soon thereafter as counsel may be heard via videoconference hearing hosted by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Menzies Aviation, Inc. ("Menzies") will and hereby does move this Court for an order granting summary judgment as to all causes of action alleged in Plaintiff Renaldo Navarro's Complaint, or in the alternative, partial summary judgment. This Motion is made upon the grounds that:

1.  Plaintiff's first cause of action alleging race and national origin discrimination fails because Plaintiff cannot state a *prima facie* claim of discrimination based on anything other than speculation, he cannot create a genuine issue of material fact with respect to Menzies' honest and good-faith belief that Plaintiff engaged in misconduct amounting to harassment of subordinate employees, and he cannot carry his burden to show by substantial evidence that Menzies' articulated reasons were pretext for unlawful discrimination;

2.  Plaintiff's second cause of action alleging retaliation fails because he cannot state a *prima facie* claim of retaliation where his alleged protected activity was in fact illegal activity under federal labor law, he cannot create a genuine issue of material fact with respect to Menzies' honest and good-faith belief that he engaged in misconduct, and he cannot carry his burden to show by substantial evidence that Menzies' articulated reasons were pretext for unlawful retaliation;

3.  Plaintiff's third cause of action alleging wrongful termination in violation of public policy fails because the claim is duplicative and derivative of his statutory discrimination and retaliation causes of action, such that the failure of the first two causes of action renders his wrongful termination in violation of public policy claim deficient as a matter of law; and

4.  Plaintiff's fourth cause of action alleging intentional infliction of emotional distress fails because he alleges nothing more than garden variety employment termination claims which fall within the preemptive sweep of California's Workers' Compensation Act.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, Menzies' Appendix of Supporting Evidence and the exhibits thereto, the records and pleadings on file herein, all of which the Court is requested to take judicial notice thereof, and upon such oral or

MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 15-CV-02392-WHO

documentary evidence as may be presented at the time of hearing thereon.

DATED: October 15, 2020

**FOLEY & LARDNER LLP**
Christopher Ward
Jason Wu


_____/s/ Christopher Ward_____
CHRISTOPHER WARD
Attorneys for Defendant MENZIES AVIATION, INC.

**ISSUES TO BE DECIDED PER CIVIL LOCAL RULE 7-4(a)(3)**

1.      Can Plaintiff Renaldo Navarro state a *prima facie* claim of race and/or national origin discrimination where he has admitted he has no tangible evidence that any unlawful motive attended the challenged actions of Menzies Aviation and he can only speculate that his race or national origin must have played some role in those actions?

2.      Can Plaintiff survive summary judgment on his national origin and discrimination claims when he cannot create a genuine issue of material fact as to whether Menzies received information supporting an honest and good-faith belief that he abused his authority as a supervisor and therefore harassed subordinate employees?

3.      Can Plaintiff survive summary judgment on his national origin and discrimination claims by carrying his burden to establish, through substantial evidence, pretext when he admits he has no tangible evidence that Menzies' stated reasons for its actions were pretext for a discriminatory motive and he cannot advance a similarly situated comparison of circumstances supporting a non-speculative assertion of pretext?

4.      Can Plaintiff satisfy his obligation to state a *prima facie* claim of retaliation where the activity he claims was protected was in fact a violation of federal labor law and therefore does not constitute protected activity?

5.      Can Plaintiff survive summary judgment on his retaliation claim when he cannot create a genuine issue of material fact as to whether Menzies received information supporting an honest and good-faith belief that he abused his authority as a supervisor and therefore harassed subordinate employees?

6.      Can Plaintiff survive summary judgment on his retaliation claim by carrying his burden to establish, through substantial evidence, pretext when he admits he has no tangible evidence that Menzies' stated reasons for its actions were pretext for a retaliatory motive and he cannot advance a similarly situated comparison of circumstances supporting a non-speculative assertion of pretext?

7.      Can Plaintiff maintain a valid claim of wrongful termination in violation of public policy where such claim is derivative and duplicative of his statutory discrimination and retaliation claims such that the failure of those statutory claims renders his wrongful termination claim legally deficient?

8. Can Plaintiff maintain a valid claim of intentional infliction of emotional distress when his allegations only amount to the type of garden variety termination-of-employment circumstances that fall within the preemptive sweep of the California Workers' Compensation Act?

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL SUMMARY ............................................................................................ 1

        A.      PLAINTIFF UNDERSTOOD THE IMPORTANCE OF SUPERVISORS
                FOLLOWING COMPANY POLICY AND SUPPORTING OTHER
                LEADERSHIP BY NOT UNDERMINING THEIR AUTHORITY .............................. 1

        B.      AFTER MENZIES ACQUIRED ASIG, PLAINTIFF BECAME SUBJECT TO
                MENZIES' CONDUCT POLICIES PROHIBITING HARASSMENT AND
                INTIMIDATION OF OTHERS ............................................................................ 2

        C.      AFTER PROMOTING ANDREW DODGE, MENZIES COACHED HIM ON
                OPERATIONAL IMPROVEMENTS IN RESPONSE TO COMPLAINTS BY
                PLAINTIFF ................................................................................................... 3

        D.      PLAINTIFF BUTTED HEADS WITH DODGE ABOUT OPERATIONAL
                ISSUES, RESULTING IN THE UNION COMPLAINING THAT SOMEONE
                WAS PRESSURING FUELERS TO SIGN A PETITION ........................................ 4

        E.      AFTER DODGE COMPLAINED ABOUT PLAINTIFF'S ACTIONS TOWARD
                HIM, MENZIES SUSPENDED PLAINTIFF TO ALLOW FOR AN
                INVESTIGATION INTO THE SITUATION ......................................................... 4

        F.      MENZIES' INVESTIGATION GENERATED MULTIPLE SOURCES OF
                INFORMATION SUPPORTING THE CONCLUSION THAT PLAINTIFF
                PRESSURED FUELERS TO SIGN THE PETITION .............................................. 5

        G.      MENZIES TERMINATED PLAINTIFF BASED ON THE INFORMATION
                PROVIDED FOR THE SOLE REASON THAT IT CANNOT ALLOW
                MANAGEMENT TO HARASS SUBORDINATE EMPLOYEES .............................. 6

        H.      FURTHER PETITIONS PARROTED PLAINTIFF'S PETITION ALREADY
                INVESTIGATED BY MENZIES, WITH FUELERS CONTINUING TO
                DISCLAIM MISTREATMENT BY DODGE ....................................................... 7

III.    BECAUSE PLAINTIFF CANNOT CREATE A DISPUTE OF MATERIAL FACT NOR
        SATISFY HIS EVIDENTIARY BURDENS, MENZIES IS ENTITLED TO SUMMARY
        JUDGMENT ON EACH OF PLAINTIFF'S CAUSES OF ACTIONS ................................. 8

A. PLAINTIFF'S FIRST CAUSE OF ACTION ALLEGING RACE AND NATIONAL ORIGIN DISCRIMINATION FAILS BECAUSE HE CANNOT STATE A *PRIMA FACIE* CASE NOR MEET HIS PRETEXT BURDEN ................... 9

    1. Plaintiff's Mere Belief Of Possible Discrimination Does Not Satisfy His *Prima Facie* Burden And Menzies Had Honest, Good-Faith Reasons For Its Actions ................................................ 10

    2. Plaintiff's Reliance On Mere Speculation Cannot And Does Not Create A Genuine Dispute That Survives Summary Judgment ...................... 11

B. PLAINTIFF CAN NEITHER STATE A *PRIMA FACIE* CLAIM OF RETALIATION BECAUSE HE ENGAGED IN NO PROTECTED ACTIVITY NOR MEET HIS PRETEXT BURDEN .............................................. 13

C. PLAINTIFF'S DERIVATIVE AND DUPLICATIVE WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CAUSE OF ACTION FAILS FOR THE SAME REASONS HIS STATUTORY CLAIMS FAIL ............... 14

D. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSE OF ACTION IS PREEMPTED AND BARRED BY THE WORKERS' COMPENSATION ACT ....................................................... 15

IV. CONCLUSION ............................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abiola v. ESA Mgmt., LLC,*
  No. 13-cv-03496-JCS, 2014 U.S. Dist. LEXIS 26918 (N.D. Cal. Mar. 3, 2014) ................................15

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..........................................................................................................................8

*Aragon v. Republic Silver State Disposal,*
  292 F.3d 654 (9th Cir. 2002) ........................................................................................................9, 11

*Bracke v. City of L.A.,*
  60 F. App'x 120 (9th Cir. 2003) ......................................................................................................15

*Castelli v. Douglas Aircraft Co.,*
  752 F.2d 1480 (9th Cir. 1985) ..........................................................................................................13

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ..........................................................................................................................8

*Clark v. Amtrust N. Am.,*
  No. 16-cv-05561-MEJ, 2018 U.S. Dist. LEXIS 23624 (N.D. Cal. Feb. 13, 2018) ...........................14

*Cole v. Fair Oaks Fire Prot. Dist.*
  43 Cal. 3d 148 (1987) .......................................................................................................................15

*Collier v. Windsor Fire Prot. Dist. Bd. of Dirs.,*
  No. C 08-2582 PJH, 2011 U.S. Dist. LEXIS 115649 (N.D. Cal. Oct. 6, 2011) ................................11

*Cucuzza v. City of Santa Clara,*
  104 Cal. App. 4th 1031 (2002) .........................................................................................................10

*Guz v. Bechtel Nat'l, Inc.,*
  24 Cal. 4th 317 (2000) ................................................................................................................9, 10

*Horn v. Cushman & Wakefield W., Inc.,*
  72 Cal. App. 4th 798 (1999) ..............................................................................................................9

*Incalza v. Fendi N. Am., Inc.,*
  479 F.3d 1005 (9th Cir. 2007) ...........................................................................................................9

*Kodwavi v. Intercontinental Hotels Grp. Res., Inc.,*
  966 F. Supp. 2d 971 (N.D. Cal. 2013) ..........................................................................................9, 11

*Mitri v. Walgreen Co.,*
  No. 1:10-cv-538 AWI SKO, 2011 U.S. Dist. LEXIS 59433 (E.D. Cal. June 3, 2011) ......................14

*Montoya v. Mgmt. Training Corp.*,
   No. 1:10-CV-00451-AWI-MJS, 2011 U.S. Dist. LEXIS 125520 (E.D. Cal. Oct. 27,
   2011) .................................................................................................................................. 14

*Morgan v. Regents of Univ. of Cal.*,
   88 Cal. App. 4th 52 (2001) ................................................................................................. 10

*Mueller v. City of L.A.*,
   176 Cal. App. 4th 809 (2009) .............................................................................................. 15

*Nealy v. City of Santa Monica*,
   234 Cal. App. 4th 359 (2015) ........................................................................................... 9, 10

*Nilsson v. City of Mesa*,
   503 F.3d 947 (9th Cir. 2007) ............................................................................................... 13

*Ramirez v. AvalonBay Cmtys., Inc.*,
   2015 U.S. Dist. LEXIS 130475, 2015 WL 5675866 (N.D. Cal. Sept. 26, 2015) ................ 14

*Shoemaker v. Myers*,
   52 Cal. 3d 1 (1990) ............................................................................................................. 16

*Stewart v. Leland Stanford Junior Univ.*,
   No. C 05-04131 JW, 2006 U.S. Dist. LEXIS 20137 (N.D. Cal. Apr. 5, 2006) ................... 13

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) .............................................................................................. 9

**Statutes**

29 U.S.C. § 159 ...................................................................................................................... 13

Cal. Lab. Code § 3601 ............................................................................................................ 15

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................................. 1, 8

Fed. R. Civ. P. 56(a) ............................................................................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In August 2018, Menzies Aviation received a complaint from the union representing a group of employees that someone was pressuring those unionized workers to sign a petition complaining about a supervisor's manner of running the operation.  Soon thereafter, this complaint grew into information coming from multiple sources that Plaintiff Renaldo Navarro – himself a supervisor and therefore a member of Menzies management – had pressured employees to sign the petition, a conclusion validated by testimony under oath given by Plaintiff's former subordinates.  Based on this information, Menzies reasonably and in good faith concluded Plaintiff had abused his authority and therefore harassed employees and decided to terminate his employment.  Because Plaintiff cannot genuinely dispute any of the *material* facts regarding the information provided to Menzies, none of his claims can survive.

Plaintiff's denials of the misconduct attributed to him and reported to Menzies by multiple sources is of no import, because he cannot and does not dispute Menzies received such information.  Unable to dispute the bases for Menzies' good-faith conclusions, Plaintiff's opposition efforts will likely devolve into flailing efforts to compare how Menzies handled the complaints about him to information regarding purely operational concerns raised against another supervisor.  But those two circumstances are not remotely similar in character, and absent any valid, non-speculative evidence – which Plaintiff admits he does not have – he can neither sustain prima facie claims of discrimination, retaliation or wrongful termination nor can he show Menzies' stated reasons for its actions were pretext.  Plaintiff further offers nothing more than standard employment-related facts that do not fall outside the preemptive scope of the California Workers' Compensation Act allowing him to maintain a cause of action for intentional infliction of emotional distress.  Pursuant to Fed. R. Civ. P. 56 then, Menzies is entitled to and requests the Court enter summary judgment in its favor as to all causes of action.

### II.    FACTUAL SUMMARY

#### A.     Plaintiff Understood The Importance Of Supervisors Following Company Policy And Supporting Other Leadership By Not Undermining Their Authority

In September 2005, Plaintiff began working for Aircraft Service International, Inc. ("ASIG") as a

Fueler at San Francisco International Airport ("SFO"). [Exhibit 12, 23:15-25.[1]]  A local of the Service Employees International Union (the "Union") represents these SFO Fuelers, and therefore represented Plaintiff until he became a supervisor.  [Exhibit 1, ¶ 2.]  At the time, BBA Aviation owned ASIG, and during BBA's ownership, ASIG promoted Plaintiff to Fueling Supervisor, giving him additional responsibilities that included working effectively with Fuelers and managing their workload.  [Exhibit 1, ¶ 2; Exhibit 12, 25:17-26:10, 27:19-25.]  The Supervisor duties also included basic shift oversight of a part of the fueling operation, assigning Fuelers to service flights and when take their breaks, and "maintaining harmony among coworkers and resolving grievances."  [Exhibit 18; Exhibit 13, 12:9-14, 16:25-17:11, 19:9-13; Exhibit 17, 13:22-15:1, 17:16-19:22.]

As a supervisor, Plaintiff understood he held a leadership and management role.  [Exhibit 12, 28:1-6.]  He also affirms that as a supervisor, it was important to: (i) be honest in his communications; (ii) follow and reinforce company policies; (iii) set a positive example for non-supervisors; (iv) support other members of management before rank-and-file employees; (v) work effectively with other supervisors and not undermine their authority; (vi) avoid involving rank-and-file employees in his personal grievances or pressuring them to get involved in disputes; (vii) explain documents before asking employees to sign such materials; and (viii) take responsibility for his errors and mistakes.  [Exhibit 12, 28:23-33:1, 34:2-4.]

**B.**    **After Menzies Acquired ASIG, Plaintiff Became Subject To Menzies' Conduct Policies Prohibiting Harassment And Intimidation Of Others**

On February 1, 2017, Menzies acquired the ASIG business and all ASIG employees became part of the Menzies enterprise.  [Exhibit 1, ¶ 2; Exhibit 12, 23:15-25, 24:17-22, 25:17-19, Exhibit 15, 7:4-15.]  In connection with this change, ASIG employees – including Plaintiff – became subject to Menzies policies and conduct standards.  [Exhibit 1, ¶ 4; Exhibit 15, 11:18-12:20, 15:23-16:10.]  As stated in the Employee Handbook, these expectations included prohibitions against "the use of abusive, malicious, and/or threatening … conduct toward any coworker … that causes or tends to cause a threatening,

---

[1] All evidentiary citations herein refer to the materials in Menzies' Appendix of Supporting Evidence and, where appropriate, to the specific portion of the evidence supporting the fact.  In this citation as an example, it refers to Exhibit 12 of the Appendix of Supporting Evidence, which are the excerpts of the transcript from Plaintiff's deposition, page 23, lines 15 to 25 of that transcript.

hostile or intimidating work environment." [Exhibit 19.] In a separate Code of Conduct document, Menzies also explains that "We all have a right to work free from intimidation and harassment and in an environment where we feel safe and comfortable." [Exhibit 20.] It further states that "We expect all employees to treat each other with courtesy, dignity and respect." [*Id*.]

## C. After Promoting Andrew Dodge, Menzies Coached Him On Operational Improvements In Response To Complaints By Plaintiff

In February 2016, ASIG hired Andrew Dodge as a Fueler. [Exhibit 17, 12:19-13: 9.] Dodge describes himself as "a Class A Fueler" who earned a promotion to supervisor about a year later. [Exhibit 17, 13:2-12, 38:13-39:1.] However, after becoming supervisor, Dodge had growth opportunities that resulted in him fielding questions about when Fuelers would receive breaks. [Exhibit 17, 39:2-14.] And while some Fuelers had concerns with Dodge's operations-management abilities, the only complaints Menzies received about Dodge came either from Plaintiff, with pictures of Dodge purportedly asleep on the job, or merely relating to Fuelers missing meal and rest breaks. [Exhibit 8, ¶¶ 2-4; Exhibit 9, ¶¶ 2-4; Exhibit 13, 24:20-25:25; Exhibit 14, 42:17-43:2, 54:15-25, Exhibit 15, 38:18-39:9; Exhibit 16, 31:12-16, 73:16-74:14.]

Menzies took action in response, which included Dodge managers' speaking to him about these concerns, performing quality assurance checks, and giving Dodge guidance and direction on how to improve his performance. [Exhibit 13, 25:23-25; Exhibit 14, 51:2-52:17; Exhibit 15, 40:11-25; Exhibit 16, 27:13-28:3, 37:17-38:9, 38:22-39:8; Exhibit 17, 21:11-19, 32:14-33:3, 48:3-20, 49:1-7.] As for Plaintiff's allegations about sleeping on the job, Dodge disclosed to Menzies that he suffers from sleep apnea and often napped after his shift before driving home. [Exhibit 13, 26:16-19; Exhibit 14, 43:23-44:2; Exhibit 17, 20:20-25, 21:11-19, 23:15-21.] Menzies also confirmed that the pictures of Dodge sleeping occurred during off-hours in non-working areas, such that there was no behavioral concern for the instances about which Plaintiff had complained.[2] [Exhibit 14, 44:22-45:23; Exhibit 15, 50:20-52:19; Exhibit 16, 28:24-29:11, 29:25-30:9; Exhibit 17, 26:20-27:15.] However, none of the complaints or other information Menzies received about Dodge included allegations of harassment or mistreatment by

---

[2] If anything, Menzies had an obligation to reasonably accommodate Dodge, and because there was no issue with his sleeping during off-hours, Menzies' handling of Plaintiff's complaints about Dodge's disability was completely appropriate.

1    Dodge of the Fuelers; rather, they all pertained to operational issues only.  [Exhibit 5, ¶ 8; Exhibit 8, ¶¶

2    2-4; Exhibit 9, ¶¶ 2-4; Exhibit 11, ¶¶ 3-6; Exhibit 14, 54:4-21; Exhibit 17, 50:25-51:17.]

3            **D.     Plaintiff Butted Heads With Dodge About Operational Issues, Resulting In The**

4                    **Union Complaining That Someone Was Pressuring Fuelers To Sign A Petition**

5            Dodge frequently worked the afternoon "swing" shift before handing off to Plaintiff, who

6    typically worked the graveyard shift.  [Exhibit 12, 43:4-13; Exhibit 17, 5:2-4, 13:22-15:1, 28:1-18.]

7    Dodge also sometimes worked the graveyard shift to cover days off or call offs.  [Exhibit 17, 28:1-18.]

8            For his part, Dodge described Plaintiff as "a great supervisor."  [Exhibit 17, 28: 19-23.]

9    However, Plaintiff felt Dodge was "doing bad things to him" and against other fuelers and complained

10   to Menzies, though such complaints occurred long before the relevant timeframe here.  [Exhibit 12,

11   46:16-47:11; 49:15-18; 51:9-17; 28:24-29:15, 30:8-19, 31:21-32:13.]  A supervisor colleague who

12   witnessed the friction between the two thought that while both Dodge and Plaintiff behaved childishly in

13   their conflicts, Plaintiff "had it out for Dodge and was regularly taking actions that undermined Dodge."

14   [Exhibit 4, ¶ 6.]  Plaintiff admits telling Dodge he was doing a poor job apportioning work, providing

15   Fuelers breaks, and was causing delays.  [Exhibit 12, 67:12-17, 68:7-69:4.]

16           Menzies first learned of a petition circulating about Dodge when the Union informed Human

17   Resources Manager Tracy Aguilera that Fuelers were complaining about being forced to sign a petition.

18   [Exhibit 15, 23:24-24:10, Exhibit 16, 11:19-12:3, 13:22-14:6, 15:12-22.]  Fuelers were also reporting

19   directly to Dodge that Plaintiff was pressuring them to sign a petition complaining about him.  [Exhibit

20   17, 39:15-40:5, 44:17-45:2, 46:12-47:6.]

21           **E.     After Dodge Complained About Plaintiff's Actions Toward Him, Menzies**

22                    **Suspended Plaintiff To Allow For An Investigation Into The Situation**

23           On August 16, 2018, Dodge reported to his managers what Fuelers were sharing regarding being

24   forced to sign a petition by Plaintiff.  [Exhibit 17, 41:14-20.]  To commence an investigation, his

25   managers asked Dodge to summarize his concerns in writing, which Dodge did in his own words

26   detailing how he felt Plaintiff was mistreating him.  [Exhibit 21; Exhibit 17, 42:18-23, 44:17-45:2,

27   45:10-21.]  Dodge included with his written submission a screen shot of a text message Plaintiff admits

28   authoring appearing to threaten Dodge with a petition.  [Exhibit 21; Exhibit 12, 56:22-25, 69:25-70:8.]

1    At the time Dodge made this complaint to Menzies, Plaintiff had not yet provided the actual petition to

2    Menzies but later did.  [Exhibit 12, 71:4-21.]  That petition complained about the way Dodge ran the

3    operation, contending "the people"' were not taking breaks because of the way Dodge sets up flights and

4    that Dodge blamed "the people" for flight delays.  [Exhibit 22.]  Plaintiff had signed that petition.

5    [Exhibit 22; Exhibit 12, 46:6-7, 52:23-25.]

6        Menzies commenced an investigation into the entire scenario surrounding the petition, including

7    what Dodge had reported about Fuelers being pressured by Plaintiff to sign it.  [Exhibit 15, 24:25-25:17,

8    28:7-10.]  In connection with that investigation, Duty Manager John Qually informed Plaintiff on

9    August 23, 2018 that Menzies was suspending him and attempted to deliver a document memorializing

10   the suspension, which Plaintiff refused to sign.  [Exhibit 23; Exhibit 14, 40:1-15, 47:19-48:10.]  Plaintiff

11   claims the only reason provided for his suspension was that it was inappropriate for him as a member of

12   management to sign a petition against another member of management.  [Exhibit 12, 77:1-8.]

13       Following that interaction, Qually submitted to Menzies a written statement reporting what he

14   described to have happened during that conversation.  [Exhibit 23; Exhibit 14, 46:17-48:10, 48:23-49:8.]

15   In that statement, Qually reported that Plaintiff had said that "As far as the petition he said that all the

16   guys that signed it are all adults and can read what it's all about before signing it and making it sound

17   like they did so of their own free will."  [Exhibit 23.]  Qually also reported that Plaintiff said he hoped

18   Menzies would terminate him "so he can go to his Lawyer and file a suit against the company for being

19   biased or harassment and get 2 years pay like he did with Swissport."[3]  [*Id.*]

20   **F.    Menzies' Investigation Generated Multiple Sources Of Information Supporting The**

21   **Conclusion That Plaintiff Pressured Fuelers To Sign The Petition**

22       After receiving Dodge's complaint and the petition from Plaintiff, Menzies' SFO Director of

23   Operations Raul Vargas directed Safety Supervisor Kevin Blumberg to investigate all the circumstances

24   surrounding the petition and Dodge's report.  [Exhibit 16, 14:9-15:11, 16:5-9, 17:12-18, 59:8-21.]  As

25   part of his investigation, Blumberg instructed Plaintiff to submit a statement explaining his side of the

26

27   _____

28   [3] Plaintiff made legal claims against a previous employer (and Menzies competitor) called Swissport.
     [Exhibit 12, 14:4-9, 15:5-12.]  From that experience, Plaintiff testified that he believes bringing legal
     claims against an employer following termination makes it likely that he will extract a settlement,
     including in this case with respect to Menzies.  [Exhibit 12, 16:14-19, 17:3-7.]

4838-6278-0877.4

story, which Plaintiff did.  [Exhibit 24; Exhibit 12, 85:12-86:8, 97:20-22, 98:8-10.]  Nowhere in that statement did Plaintiff contend Dodge harassed other Fuelers; rather, it referred to the same pictures Menzies had determined did *not* show Dodge sleeping on the job.  [Exhibit 24.]  The statement provided by Plaintiff also said "I'm just wondering why you suspended me because of helping *the people*."[4]  [*Id*.]

During the investigation, three employees provided written statements to Menzies describing pressure to sign the petition, with one such petition specifically identifying Plaintiff as the perpetrator. [Exhibit 25; Exhibit 15, 25:18-23; Exhibit 16, 17:12-22, 21:8-22:10, 52:22-53:21.]  Another supervisor also reported that Plaintiff asked him to sign the petition and specifically told Menzies he felt pressured to do so.[5]  [Exhibit 4, ¶¶ 3-5, 7; Exhibit 16, 57:21-59:5.]  Plaintiff admits he has no factual basis to dispute whether any of this information was provided to Menzies.  [Exhibit 12, 65:17-24.]  In addition, multiple Fuelers confirm under oath that they felt either pressured or misled by Plaintiff to sign the petition, including two individuals who state that Plaintiff approached them multiple times after they refused to sign and they witnessed Plaintiff doing the same to other Fuelers.  [Exhibit 5, ¶¶ 3-5; Exhibit 7, ¶¶ 3-7; Exhibit 6, ¶¶ 3-6; Exhibit 10, ¶¶ 2-5; Exhibit 14, 25:18-23; Exhibit 16, 52:22-53:21.]  Still other Fuelers testify that Plaintiff gave them a signature page to execute without explaining its purpose, adding they would not have signed it had they known it related to a petition against Dodge.  [Exhibit 6, ¶¶ 3-5; Exhibit 10, ¶¶ 2-5; Exhibit 14, 25:18-23; Exhibit 16, 52:22-53:21.]

### G.    Menzies Terminated Plaintiff Based On The Information Provided For The Sole Reason That It Cannot Allow Management To Harass Subordinate Employees

As Menzies' investigation was developing this information, Aguilera initially recommended against termination of Plaintiff.  [Exhibit 16, 33:24-34:4, 56:6-16.]  However, in emails both Blumberg and Vargas challenged that recommendation, with Vargas feeling anything short of termination was not proper because of what he viewed as the severity of the conduct involved.  [Exhibit 15, 33:17-35:15; Exhibit 16, 52:1-8, 63:18-64:4.]  After they discussed the full scope of the situation and the investigation

---

[4] While Plaintiff denies authoring the petition, its repeated curious use of "the people" and Plaintiff's later statement admitting he believed he was helping "the people" could certainly support the inference that Plaintiff played some role in the petition's preparation.  [*Compare* Exhibit 22 and Exhibit 24.]

[5] That same supervisor never requested any other employees sign the petition because in his capacity as a supervisor, he believed it would be inappropriate to do so.  [Exhibit 4, ¶ 4.]

findings, Aguilera's opinion changed and she agreed termination was appropriate.  [Exhibit 15, 33:17-35:15; Exhibit 16, 52:1-8, 71:10-16, 71:24-73:4.]  Vargas, as the decision-maker, then instructed Aguilera to proceed with Plaintiff's termination.  [Exhibit 26.]

The sole reason for Vargas's decision was his belief that Plaintiff harassed Fuelers by pressuring at least some of them to sign the petition against Dodge.  [Exhibit 26, Exhibit 15, 17:13-18:2, Exhibit 16, 19:8-16, 22:20-23:3, 23:15-24:5.]  Though some signed voluntarily, Vargas felt even one situation of a supervisor pressuring rank-and-file employees to be inappropriate, necessitating termination as a corrective measure.  [Exhibit 16, 34:18-35:15, 52:22-53:19, 56:22-57:9, 60:23-61:14, 64:17-65:15.]  Vargas captured this reasoning clearly in writing, stating that because Menzies had concluded that Plaintiff "as a member of the management team, was soliciting signatures and intimidating Employees to sign a petition … We cannot allow our management team to harass our people in any way."  [Exhibit 26.]  Aguilera then informed Plaintiff of the decision.  [Exhibit 12, 87:2-88:4.]  Plaintiff claims the reason she provided is that as a member of management, he should not have signed a petition against another manager.  [Exhibit 12, 88:15-23.]  Plaintiff admits both that no other reason was given to him, and that he has no tangible evidence – only speculation – that either his race or national origin played any role in the suspension and termination decisions.  [Exhibit 12, 88:24-93:23, 94:7-95:7.]

H.     **Further Petitions Parroted Plaintiff's Petition Already Investigated By Menzies, With Fuelers Continuing To Disclaim Mistreatment By Dodge**

At some point after Plaintiff's termination, Menzies received a second petition regarding Dodge that repeated the claims of the previous petition investigated by Menzies and resulting in Plaintiff's termination.  [Exhibit 27.]  As with the first petition, the specific allegations focused on operational issues such as delays and missed breaks and contained no allegation of actual harassment by Dodge.[6]  [*Compare* Exhibit 22 and Exhibit 27.]  Thereafter, Union shop steward Rafael Vargas appears to have prepared a letter noting the previous submission of two petitions involving Dodge, although Menzies has no copy of that letter in any of its own files.  [Exhibit 1, ¶ 7; Exhibit 28.]  It was this letter – lacking any signatory support or indicia of personal knowledge – that first articulated "harassment" by Dodge, even

---

[6] As with the first petition and Plaintiff's statement following his suspension, the second petition repeatedly referred to "the people" as the purported victims of Dodge's shortcomings.  [Exhibit 24.]

MENZIES AVIATION, INC.'S MOTION FOR SUMMARY JUDGMENT

-7-

Case No. 3:19-cv-8157

as it focused on delays and missed breaks. [Exhibit 28.] Vasquez also worked on a different part of the operation from Dodge, raising questions about his personal knowledge. [Exhibit 17, 40:20-41:6.]

While Plaintiff admits this second petition and Vasquez's letter occurred after his termination (such that one could question how he would have such material in his possession), he produced to Menzies these materials and copies of his text messages containing the language of Vasquez's letter, suggesting some continued involvement by Plaintiff in a campaign against Dodge.[7] [Exhibits 28 and 29; Exhibit 12, 102:20-103:6.] Additionally, both the second petition and Vasquez's letter pertain to the same complaints addressed in the first petition which Menzies had already investigated. [Exhibits 27 and 28; Exhibit 15, 42:13-43:2.] And as noted, multiple Fuelers — including those who wanted to sign the petition out of concern for operational problems — disclaim any contention that Dodge engaged in any of the type of harassing, intimidating or other similar behavior that prompted Vargas to terminate Plaintiff's employment. [Exhibit 5, ¶ 8; Exhibit 8, ¶¶ 2-4; Exhibit 9, ¶¶ 2-4; Exhibit 11, ¶¶ 3-6.]

## III. BECAUSE PLAINTIFF CANNOT CREATE A DISPUTE OF MATERIAL FACT NOR SATISFY HIS EVIDENTIARY BURDENS, MENZIES IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFF'S CAUSES OF ACTIONS

Fed. R. Civ. P. 56 authorizes courts to enter partial summary judgment as to whole causes of action or claims within a cause of action when doing so will isolate and dispose of invalid claims. Fed. R. Civ. P. 56(a). Rule 56 entitles a moving party to summary judgment when the undisputed material facts show that there is no legal merit to a plaintiff's claim or he cannot support a valid claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once a moving party shows it can meet this burden, the opposing party can only withstand summary judgment by going beyond its own pleadings and affidavits and identifying either specific legitimately disputed facts or legal bases creating a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiff's Complaint advances four causes of action alleging (i) race and national origin discrimination, (ii) retaliation, (iii) wrongful termination in violation of public policy, and (iv)

---

[7] Menzies only learned about these documents when it obtained copies from Plaintiff's production made with his Rule 26(a) Initial Disclosures. [Exhibit 1, ¶ 7; Exhibit 2, ¶ 7.] When asked how Plaintiff had possession of materials not in Menzies' file, Plaintiff responded that "the people" gave the documents to him. [Exhibit 12, 101:23-102:7.]

1    intentional infliction of emotional distress ("IIED").  As to the first three causes of action, all analyzed

2    under the *McDonnell-Douglas* burden shifting approach, the Court should enter summary judgment

3    because Plaintiff cannot set forth valid *prima facie* claims, and even if he could, his self-serving

4    speculation as to Menzies' motives for its actions do not qualify as substantial evidence of pretext

5    necessary to create a dispute of material fact.  And as for his IIED cause of action, Plaintiff has

6    advanced nothing more than a garden variety claim challenging the termination of his employment

7    which falls within the preemptive sweep of the California Workers' Compensation Act.  Menzies is

8    therefore entitled to summary judgment on each and every cause of action advanced by Plaintiff.

9         A.    **Plaintiff's First Cause Of Action Alleging Race And National Origin Discrimination**

10             **Fails Because He Cannot State A *Prima Facie* Case Nor Meet His Pretext Burden**

11        To assert a *prima facie* case of race or national origin discrimination, amongst other things

12   Plaintiff must offer some valid indication that he was performing his job satisfactorily and some other

13   circumstance suggests discriminatory motive.  *See Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*,

14   966 F. Supp. 2d 971, 983 (N.D. Cal. 2013); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 379 (2000);

15   *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 380 (2015).  Only if he can do so, Menzies then

16   has a minimal burden to articulate a legitimate, nondiscriminatory reason for the challenged adverse

17   employment action.  *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658 (9th Cir. 2002).

18   Meeting this burden does not require Menzies to prove Plaintiff engaged in misconduct, merely

19   demonstrate that it had a good-faith basis for reaching the conclusions and taking the actions it did.  *See*

20   *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) ("Under California law,

21   an employer has good cause to terminate an employee if it has 'fair and honest reasons, regulated

22   by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to

23   business needs or goals, or pretextual'") (*quoting Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93

24   (1998); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (noting that courts only

25   require an employer honestly believed its reasons for it actions, even if its reason is foolish or trivial).

26        Once Menzies articulates a legitimate reason for its actions, Plaintiff can only survive summary

27   judgment by coming forward with <u>substantial evidence</u> that its legitimate reasons were a pretext for

28   unlawful discrimination.  *Aragon*, 292 F.3d at 658-59; *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal.

App. 4th 798, 806-07 (1999). Mere speculation does not satisfy this burden, and if Plaintiff can only provide speculation, rather than substantial evidence of pretext, his claim must end in summary judgment. *Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1038 (2002) (a showing that only gives rise to speculation or unreasonable inferences about the employer's motivation does not create a triable issue); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 77 (2001) (speculative evidence "does not rise to the level of the substantial evidence of pretext required to avoid summary judgment").

Under this analytical approach, even if Plaintiff could meet his *prima facie* burdens – which he cannot – Menzies had an honest and good faith belief that Plaintiff engaged in significant misconduct which supported its decisions to suspend him for investigation and then terminate his employment. And having admitted he has no evidence of unlawful motive and can only speculate as to why Menzies took such actions, Plaintiff cannot satisfy his substantial evidence burden to show pretext. The Court should therefore enter summary judgment in favor of Menzies on Plaintiff's discrimination cause of action.

**1.** **Plaintiff's Mere Belief Of Possible Discrimination Does Not Satisfy His *Prima Facie* Burden And Menzies Had Honest, Good-Faith Reasons For Its Actions**

Plaintiff's discrimination cause of action blending race and national origin theories does not even get off the ground because he admits he has <u>no</u> evidence to support a theory that some circumstance suggests discriminatory motive. *See Guz*, 24 Cal. 4th at 379 (2000); *Nealy*, 234 Cal. App. 4th at 380. Rather, his testimony makes plain Plaintiff is simply speculating that his race and national origin played any factor in his suspension and subsequent termination. [Exhibit 12, 88:24-93:23, 94:7-95:7.] Plaintiff's self-serving beliefs are simply not "circumstances suggesting discriminatory motive."

However, even if Plaintiff's rank speculation excused him from satisfying his *prima facie* burden, Menzies had legitimate reasons for its decisions to suspend and then terminate Plaintiff. Menzies received information from multiple sources indicating Plaintiff's subordinates felt either pressured or misled by Plaintiff to sign a petition against Dodge. [Exhibit 21; Exhibit 25; Exhibit 12, 56:22-25, 69:25-70:8; Exhibit 15, 23:24-24:10, 25:18-23; Exhibit 16, 11:19-12:3, 13:22-14:6, 15:12-22, 17:12-22, 21:8-22:10, 52:22-53:21; Exhibit 17, 39:15-40:5, 41:14-20, 44:17-45:2, 46:12-47:6.] Multiple other Fuelers additionally testify under oath that Plaintiff engaged in such conduct *directly toward them* and/or that they witnessed him doing the same toward others. [Exhibit 5, ¶¶ 3-5; Exhibit 7, ¶¶ 3-7;

Exhibit 6, ¶¶ 3-6; Exhibit 10, ¶¶ 2-5; Exhibit 14, 25:18-23; Exhibit 16, 52:22-53:21.]  It is of no moment – and therefore not a *material* dispute – that Plaintiff denies engaging in such conduct, because the critical question is whether the multiple sources of evidence provided (which Plaintiff *cannot* deny Menzies received) support an honest belief that Plaintiff abused his authority and therefore harassed others.  *Kodwavi*, 966 F. Supp. 2d at 984 ("Plaintiff's arguments focus on whether or not he actually threatened or assaulted LoGrasso, but the truth of that matter is not relevant to whether the Hotel had a legitimate, non-discriminatory basis for terminating him. Instead, the key inquiry is whether the Hotel had a good faith belief in the basis for the action it took'""); *Collier v. Windsor Fire Prot. Dist. Bd. of Dirs.,* No. C 08-2582 PJH, 2011 U.S. Dist. LEXIS 115649, at *33 (N.D. Cal. Oct. 6, 2011) ("[T]he court need not determine whether plaintiff actually committed the misconduct that led to his dismissal, but only whether the factual basis on which defendants concluded that a dischargeable act had been committed was reached honestly").  And unlike in many employment discrimination cases, Menzies' reason for Plaintiff's termination is clearly articulated in an objective writing in the form of Vargas's email stating "We cannot allow our management team to harass our people in any way." [Exhibit 26.]  In fact, even Plaintiff essentially concedes the information provided to Menzies supports a good-faith termination decision, having admitted that as a supervisor Menzies reasonably expected him to it support other members of management before rank-and-file employees, avoid undermining their authority, not involve employees in disputes with others, and explain to employees documents they were being asked to sign.  [Exhibit 12, 28:23-33:1, 34:2-4.]  Such facts, which Plaintiff cannot legitimately dispute, more than demonstrate Menzies' honest belief that Plaintiff had harassed Fuelers and abused his authority and good-faith reasons for the actions it took.

### 2. Plaintiff's Reliance On Mere Speculation Cannot And Does Not Create A Genuine Dispute That Survives Summary Judgment

With Menzies having articulated legitimate reasons for its actions, Plaintiff must now show such reasons were pretext for discrimination and go beyond mere speculation to do so.  *Aragon*, 292 F.3d at 658-59.  Having conceded he has no such tangible evidence and his entire claims of discrimination rest on his self-serving speculation [Exhibit 12, 88:24-93:23, 94:7-95:7], Plaintiff is already in a woeful position to carry this substantial evidence burden.  At best, Plaintiff is likely to argue pretext exists

because Menzies supposedly took disparate action with respect to purported complaints of harassment against Dodge compared to how Menzies addressed the various behaviors by Plaintiff reported to it. The problem with this argument is that Menzies had information clearly complaining about Plaintiff *pressuring* and *misleading* employees to sign a petition, amounting to a harassing abuse of authority, whereas the information supplied about Dodge related to operational concerns only. Indeed, to this day, Fuelers who wanted to and voluntarily signed the petition disclaim any harassing behavior by Dodge, and neither the first nor second petition complaining about his actions toward "the people" make any specific or even general allegations of harassment. [*Compare* Exhibit 22 and Exhibit 27.]

To say both circumstances involve complaints of harassment which Menzies handled disparately is a sleight-of-hand facile argument. In fact, the only place an allegation of harassment against Dodge even superficially occurs is the purported Rafael Vasquez November 18, 2018 letter – seemingly authored long after Plaintiff's termination – which Plaintiff produced and Menzies never received detailing the same operational issues from earlier petitions that Menzies had already investigated. [Exhibit 1, ¶ 7; Exhibit 2, ¶ 7 Exhibit 28.] Indeed, even Dodge acknowledges that Menzies looked into such complaints and gave him direction on how to improve, showing that Menzies took the concerns expressed about Fuelers and scheduling and did address them appropriately with Dodge. [Exhibit 13, 25:23-25; Exhibit 14, 51:2-52:17; Exhibit 15, 40:11-25; Exhibit 16, 27:13-28:3, 37:17-38:9, 38:22-39:8; Exhibit 17, 21:11-19, 32:14-33:3, 48:3-20, 49:1-7.] These same Fuelers explicitly deny both that Dodge engaged in any harassing conduct and that they were complaining about any such purported harassment instead of purely operational issues. [Exhibit 5, ¶ 8; Exhibit 8, ¶¶ 2-4; Exhibit 9, ¶¶ 2-4; Exhibit 11, ¶¶ 3-6.] For Plaintiff to thus argue his conduct and the purported complaints about Dodge support some kind of apples-to-apples, substantial evidence-based comparison calling into question the good-faith basis of Menzies' actions is just as speculative an exercise as Plaintiff's testimony that he has no evidence of discrimination, he merely thinks that must be what happened. [Exhibit 12, 88:24-93:23, 94:7-95:7.] Such self-serving arguments do not create genuine disputes of material fact as to the reasons for Menzies' action, and Menzies is therefore entitled to summary judgment.

///

///

4838-6278-0877.4

**B.** **Plaintiff Can Neither State A *Prima Facie* Claim Of Retaliation Because He Engaged In No Protected Activity Nor Meet His Pretext Burden**

Plaintiff's retaliation claim requires the same *McDonnell-Douglas* three-part burden shifting analysis employed to analyze his discrimination allegations. *Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007). Accordingly, to establish such a claim, Plaintiff must show: (1) he engaged in a protected activity; and (2) a causal link existed between the protected activity and the adverse employment action. *Id*. If he can do so, the same follow-up analysis applies in that after Menzies articulates a legitimate, non-retaliatory reason for its action, Plaintiff must overcome the legitimacy of such reasons with substantial, non-speculative evidence of pretext. *Id.* As with his discrimination theories, Plaintiff can neither show a *prima facie* claim nor satisfy his pretext burden.

Plaintiff asserts that his signing of the first petition against Dodge satisfies his *prima facie* burden to show he engaged in protected activity. But critical to this case is the fact that Fuelers at Menzies are represented by the Union and Plaintiff was a non-Union member of Menzies management. [Exhibit 1, ¶ 2.] Federal labor law makes it unlawful for managers and supervisors in unionized work environments to negotiate terms and conditions of employment or address employee grievances directly with represented employees outside the mechanisms established by collective bargaining. *See*, *e.g.*, 29 U.S.C. § 159; *see also Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1485 (9th Cir. 1985) (noting that absent authorization under a collective bargaining agreement, the federal policy of exclusive representation requires the union, rather than third parties, to deal directly with employees regarding grievances), *and Stewart v. Leland Stanford Junior Univ.*, No. C 05-04131 JW, 2006 U.S. Dist. LEXIS 20137, at *11 (N.D. Cal. Apr. 5, 2006) (noting that bypassing the collective bargaining representative puts an employer at risk of violating federal labor law). Indeed, that is why the Union complained to Aguilera about someone pressuring employees to sign a petition against Dodge – because doing so violated its exclusive representation established by the collective bargaining relationship between Menzies and the Union. [Exhibit 15, 23:24-24:10, Exhibit 16, 11:19-12:3, 13:22-14:6, 15:12-22.] In this circumstance then, Plaintiff's signing of a petition involving Dodge was an unlawful labor practice that put Menzies at risk of a valid grievance of direct dealing by Menzies' management. Far from engaging in protected activity, Plaintiff actually engaged in illegal activity, and as a consequence, he

1    cannot rely on such actions to carry his *prima facie* burden.

2    Setting this fundamental flaw aside, all the same reasons why Menzies had a legitimate basis for

3    its actions and Plaintiff cannot show pretext by substantial evidence on his discrimination claims apply

4    here.  As Vargas asserted both in his contemporaneous email instruction to Aguilera and through his

5    deposition testimony, the sole reason he directed the termination of Plaintiff was that Menzies had valid

6    information indicating he had pressured subordinate employees to sign a petition.  Vargas reached that

7    conclusion on an honest, good-faith basis, and Plaintiff using his supervisory position to coerce other

8    employees is most certainly not protected activity.  Moreover, Plaintiff acknowledges the only reason

9    given him for his termination was his involvement in the petition, and he has no tangible evidence to

10   suggest otherwise, such that he cannot meet his burden to show pretext.  [Exhibit 12, 88:24-93:23, 94:7-

11   95:7.]  Much like his discrimination cause of action must end in summary judgment, Plaintiff's

12   retaliation cause of action similarly fails.

13   **C.    Plaintiff's Derivative And Duplicative Wrongful Termination In Violation Of Public**

14   **Policy Cause Of Action Fails For The Same Reasons His Statutory Claims Fail**

15   "The central assertion of a claim of wrongful termination in violation of public policy is that the

16   employer's motives for terminating the employee are so contrary to fundamental norms that the

17   termination inflicted an injury sounding in tort."  *Clark v. Amtrust N. Am.*, No. 16-cv-05561-MEJ, 2018

18   U.S. Dist. LEXIS 23624, at *61 (N.D. Cal. Feb. 13, 2018) (*quoting Roby v. McKesson Corp.*, 47 Cal.

19   4th 686, 702 (2009)).  To assess such claims, California courts apply the same *McDonnell-Douglas*

20   burden shifting analysis used for allegations of discrimination and retaliation.  *See Montoya v. Mgmt.*

21   *Training Corp.*, No. 1:10-CV-00451-AWI-MJS, 2011 U.S. Dist. LEXIS 125520, at *14-15 (E.D. Cal.

22   Oct. 27, 2011); *Mitri v. Walgreen Co.*, No. 1:10-cv-538 AWI SKO, 2011 U.S. Dist. LEXIS 59433, at

23   *35 (E.D. Cal. June 3, 2011) ("When a plaintiff alleges retaliatory employment termination as a claim

24   for wrongful termination in violation of public policy, California follows the burden-shifting analysis of

25   *McDonnell Douglas Corp*").  Additionally, when a wrongful termination in violation of public policy

26   claim effectively derives from and depends on the same essential facts as a statutory employment

27   discrimination claim, the failure of the statutory claims renders the wrongful termination claim invalid

28   as a matter of law.  *See Ramirez v. AvalonBay Cmtys., Inc.*, 2015 U.S. Dist. LEXIS 130475, 2015 WL

4838-6278-0877.4

5675866, at *11 (N.D. Cal. Sept. 26, 2015) ("Where no predicate violation of the law has occurred, a plaintiff cannot state a claim for wrongful termination in violation of the law").

Given that Plaintiff's wrongful termination case requires the same analytical approach as his failed discrimination and retaliation claims, and asserts the same allegedly wrongful behavior by Menzies, the same analysis detailed above applies with equal measure and requires the same conclusion. In short, Plaintiff engaged in no activity protected by public policy – if anything, he violated federal labor policy by involving himself directly in matters that are the exclusive province of the Union. And Menzies certainly had valid sources of information to reach the honest conclusion that Plaintiff abused his authority as a supervisor and therefore harassed Fuelers, facts Plaintiff cannot overcome with his purely speculative arguments. The Court should therefore award summary judgment to Menzies on Plaintiff's wrongful termination cause of action.

**D.** **Plaintiff's Intentional Infliction Of Emotional Distress Cause Of Action Is Preempted And Barred By The Workers' Compensation Act**

California's Worker's Compensation Act ("WCA") provides in pertinent part: "Liability for the compensation provided in this division, *in lieu of any other liability whatsoever* to any person … shall … exist against an employer for any injury sustained by his or her employees arising out of and in the course of employment." Cal. Lab. Code § 3601 (emphasis supplied). As the California Supreme Court further explained:

> [W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability.

*Cole v. Fair Oaks Fire Prot. Dist.* 43 Cal. 3d 148, 160, (1987); *see also Mueller v. City. of L.A.*, 176 Cal. App. 4th 809, 823 (2009) ("there is no independent recovery for intentional infliction of emotional distress in the employment arena because that injury comes under the exclusive remedy of workers' compensation law"). California courts have accordingly routinely recognized termination decisions and investigations related to the termination occur as part of the employment relationship and are therefore barred by the WCA. *See, e.g.*, *Bracke v. City. of L.A.*, 60 F. App'x 120, 122 (9th Cir. 2003); *Abiola v.*

*ESA Mgmt., LLC*, No. 13-cv-03496-JCS, 2014 U.S. Dist. LEXIS 26918, at *16 (N.D. Cal. Mar. 3, 2014); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990).

Plaintiff's IIED claim simply re-hashes the allegations of his other three causes of action, and certainly allege nothing so extreme or shocking-to-the-conscience that allow him to avoid workers' compensation exclusivity. Rather, his claims are the garden-variety types of termination claims courts treat as barred by the WCA. Without even having to delve into the substantive meritless nature of Plaintiff's IIED allegations then, the Court can easily and should conclude that Menzies is entitled to summary judgment of Plaintiff's Fourth Cause of Action.

## IV.  **CONCLUSION**

For all the foregoing reasons, Menzies requests the Court enter complete summary judgment in its favor on all causes of action in Plaintiff's Complaint, or in the alternative, partial summary judgment.

DATED: October 15, 2020

**FOLEY & LARDNER LLP**
Christopher Ward
Jason Wu

_____*/s/ Christopher Ward*_____
CHRISTOPHER WARD
Attorneys for Defendant MENZIES AVIATION, INC.

4838-6278-0877.4