# EXHIBIT 13

```
 1                IN THE UNITED STATES DISTRICT COURT

 2          IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

 4

 5   RENALDO NAVARRO,

 6              Plaintiff,

 7   v.                                      No.  3:19-CV-8157

 8   MENZIES AVIATION, INC.,
     doing business as MENZIES
 9   and DOES 1 through 10,
     inclusive,
10
                Defendants.
11   _____/

12   Zoom Remote Deposition of

13       JOHN QUALLY

14    Monday, July 27, 2020

15        Volume I

16     (Pages 1 through 32)

17
        CERTIFIED COPY
18

19

20

21   REPORTED BY:  CINDY TUGAW, CSR #4805

22

23
              NOGARA REPORTING SERVICE
24           5 Third Street, Suite 415
           San Francisco, California 94103
25               (415) 398-1889
```

1                          I N D E X

2                                              Page Number

3   EXAMINATION BY MR. URIARTE                      4

4                        ---o0o---

5                      E X H I B I T S

6   Plaintiff's

7   Exhibit 1    Plaintiff Renaldo                  9
                 Navarro's Notice of
8                Deposition of John
                 Qually
9
    Exhibit 2    Missed Punch Form                 28
10

11                       ---o0o---

```
 1         BE IT REMEMBERED that, pursuant to Notice of

 2   Taking Deposition and on Monday, the 27th day of July,

 3   2020, commencing at the hour of 8:58 o'clock a.m.

 4   thereof, via Zoom videoconference, before me, CINDY

 5   TUGAW, a Certified Shorthand Reporter in the State of

 6   California, personally appeared,

 7                      JOHN QUALLY,

 8   Called as a witness by the Plaintiff, having been by me

 9   first duly sworn, was examined and testified as

10   hereinafter set forth.

11                        ---oOo---

12                   APPEARANCES OF COUNSEL

13   For the Plaintiff
           LIBERATION LAW GROUP, P.C.
14         2760 Mission Street
           San Francisco, California 94110
15         BY:  ARLO GARCIA URIARTE, Attorney at Law
           (415) 695-1000
16

17   For the Defendants
           FOLEY & LARDNER, LLP
18         555 California Street, Suite 1700
           San Francisco, California 94104
19         BY:  JASON Y. WU, Attorney at Law
           (415) 984-9848
20
     Also Present:  David Ho, Zoom Host.
21
                          ---oOo---
22

23

24

25
```

1    THE REPORTER: At this time, I will ask counsel to
2 stipulate on the record that there is no objection to
3 this deposition officer administering a binding oath to
4 the witness via Zoom, starting with the noticing
5 attorney.
6    MR. URIARTE: So stipulated.
7    THE REPORTER: Mr. Wu?
8    MR. WU: So stipulated on behalf of defendant,
9 Menzies Aviation.
10              EXAMINATION BY MR. URIARTE
11    MR. URIARTE: Q. Good morning, Mr. Qually. My
12 name is Arlo Uriarte. I am attorney for Renaldo
13 Navarro. Do you understand that?
14    A. Yes.
15    Q. And you are aware that Mr. Navarro has an
16 action against Menzies for his termination?
17    A. I heard, yes.
18    Q. And you know that you are here for your
19 deposition as a witness?
20    A. Yes.
21    MR. URIARTE: David, can we have Exhibit 1 brought
22 up, please.
23    ZOOM HOST: Give me one second. I'm bringing it
24 up right now. Hold on.
25    MR. URIARTE: Okay.

1    Q. Okay. All right. So let's see. So you
2 said -- when you started with ASIG -- and is that the
3 right way to call it, ASIG, by the way, A-S-I-G, ASIG?
4 Do you guys say that, ASIG?
5    A. Yes.
6    Q. When you started with ASIG, what was your
7 position with them?
8    A. Supervisor.
9    Q. Can you tell me what the duties of a
10 supervisor would be?
11   A. The duties are basically overseeing of the --
12 overseeing and assigning the flights to the fuelers and
13 making communication with the airlines on -- as we go
14 through the day.
15   Q. And by 2018, how many fuelers were assigned to
16 a supervisor? Do you remember?
17   A. It could -- I guess it varies by shift.
18   Q. I see. What would be the range, like would
19 you say between three and ten, or was there like a
20 range?
21   A. I guess it depends on the shift. Some shifts
22 had upwards of 12 to 15. Some shifts had anywhere from
23 three to four.
24   Q. Gotcha. And the interesting -- or the date
25 most interesting for us is August of 2018 because

1   A. Yeah.

2   Q. What was the next?

3   A. Ramp service.

4   Q. Lead ramp services. Okay. And how long were
5   you with United?

6   A. Eight and a half years.

7   Q. So when did you become a duty manager for ASIG
8   or Menzies?

9   A. It was back -- honestly, I don't remember the
10  exact date, but it's been -- I've been a duty manager
11  for roughly four years.

12  Q. Four years now?

13  A. Yeah.

14  Q. Okay. So like 2016, around that time?

15  A. Around that time.

16  Q. Were you a duty manager by the time Menzies
17  came in?

18  A. Around that time, yes.

19  Q. Like close, yeah. I guess the key question is
20  when Menzies took over ASIG, were you already a duty
21  manager or you became a duty manager after Menzies came
22  in?

23  A. I was already.

24  Q. Okay. Gotcha. All right.
25     So we were talking about the role of

1    supervisors with regards to how they work with fuelers,
2    right?  You said earlier that you would -- one of the
3    duties would be to assign flights to the fuelers for
4    the shift, right?
5         A.  Yes.
6         Q.  That's one of the duties.  What other duties
7    do supervisors have?
8         A.  They -- besides assigning the flights, they
9    are obviously in communication with airlines as needed.
10   They're overseeing the safety of the operation, making
11   sure that, you know, everything is going safely.
12        Q.  Okay.  So is it the supervisor that's actually
13   on the headphone with the plane during the fueling
14   operation, or with the airline?
15        A.  No.
16        Q.  No?  That could be any of the fuelers?
17        A.  Well, the fuelers don't communicate with the
18   flight crew.  They communicate with the airline
19   representative.
20        Q.  Gotcha.  Okay.  And who is that?  Is that the
21   fueler or is that the supervisor?
22        A.  Sometimes both.  But, in general, when you're
23   actually fueling, it would be more so the fueler than
24   the supervisor.
25        Q.  Okay.  Are supervisors sometimes -- like do

1     A.  Yes.

2     Q.  Okay.  And then what other duties do

3  supervisors have with regards to the fuelers?

4     A.  Basically, you know, for operational purposes,

5  it's making sure that the flights are getting done, the

6  fuelers are getting to the flights when they're

7  supposed to, you know, addressing whatever issues may

8  come up.

9     Q.  What about giving breaks, for example, like

10  timing the breaks, when people can go for meal periods,

11  when people can go for their ten-minute breaks, is that

12  the supervisor's duties?

13     A.  Yes.

14     MR. WU:  Objection.  Relevance.

15     MR. URIARTE:  Q.  And then what about clocking in

16  and clocking out, do the supervisors have any duties

17  with regards to that?

18     MR. WU:  Same objection.

19     THE WITNESS:  No.

20     MR. URIARTE:  Q.  Like if there are issues with

21  regards to they forgot to clock out or, oh, they forgot

22  to clock in, something like that, is that the

23  supervisor's duty or is that somebody else's?

24     MR. WU:  Same objection.

25     MR. URIARTE:  Q.  Mr. Qually?

1  supervisor, is that correct?
2       A.  I had no -- that would be my guess.  I don't
3  know -- I don't have any knowledge on where he started,
4  but that's my understanding.
5       MR. WU:  I don't want you to guess.
6       MR. URIARTE:  Q.  Yeah, no guessing.
7            I guess what I was leading to was whether you
8  had any part in recommending or having Mr. Navarro be
9  promoted from fueler to supervisor.  Do you remember
10 anything like that?
11      A.  No.
12      Q.  So you weren't part of that process at all?
13      A.  No.
14      Q.  Did you and Mr. Navarro get along at all?  Was
15 your relationship cordial or was it combative?  How
16 would you characterize your relationship with Mr.
17 Navarro?
18      A.  Working relationship was okay.  No, you know,
19 just -- it was okay.
20      Q.  Did Mr. Navarro ever bring up any complaints
21 to you?
22      A.  From time to time, yes.
23      Q.  And what would be the nature of those
24 complaints?
25      A.  Varies.  Could be airline issue, staffing

```
1    issue.  It just depends on the day and what he felt to
2    complain about.
3         Q.  And before his termination, did he ever bring
4    up complaints against Andrew Dodge to you?
5         A.  Yes.
6         Q.  And what was the nature of those complaints?
7         A.  It wasn't many.  Let's see if I can remember,
8    because it's been a while.  But there was probably
9    one -- I can remember at least one where Andrew might
10   have been caught seen sleeping on the job.
11        Q.  And he brought that up to you?
12        A.  Yes.
13        Q.  So was Andrew also a graveyard shift
14   supervisor?
15        A.  Yes.  At that time.
16        Q.  Okay.  So you're coming in to work, and Mr.
17   Navarro is mentioning to you that maybe Andrew Dodge
18   was sleeping on the job.  And so what would you, as a
19   duty manager, do about that?
20        A.  Well, there were different shifts, so they
21   weren't working together.
22        Q.  Okay.
23        A.  So when the complaints came, I addressed the
24   complaints with Andrew.
25        Q.  Okay.
```

1    A.   And it was brought up to the higher-ups.

2    Q.   And who were the higher-ups at that time?

3    A.   Let's see.  Who was it?  Renil was one of

4 them.

5    Q.   Who?

6    A.   Renil Lal.  Because he was the acting GM at

7 the time, so --

8    Q.   Okay.  Anybody else, do you remember?

9    A.   No.

10   Q.   Did anything happen because of the complaints

11 that Andrew Dodge was sleeping?  Do you know what

12 happened to Andrew Dodge?  Was he reprimanded?  Was he

13 written up?

14        Did anything happen because of that?

15   A.   Not that I know of.

16   Q.   Did Mr. Dodge explain to you what happened or

17 did he admit it or anything like that?

18   A.   He did.  He had sleep depravation -- or sleep

19 apnea, sorry.

20   Q.   So he had sleep apnea, and so --

21   A.   According to what I heard, what the

22 explanation was, at times it's easy for a person to

23 fall asleep.

24   Q.   Aside from his -- aside from Mr. Navarro

25 mentioning that Mr. Dodge was sleeping, any other

```
 1                CERTIFICATE OF WITNESS
 2                      ---o0o---
 3
 4        I, JOHN QUALLY, hereby declare under
 5   penalty of perjury that I have read the foregoing
 6   deposition testimony; and that the same is a true
 7   and correct transcription of my said testimony
 8   except as corrected pursuant to my rights under
 9   Rule 30(e) of the Federal Rules of Civil
10   Procedure.
11
12                       _____
                                   Signature
13
14                       _____
                                     Date
15
16
17
18
19
20
21
22
23
24
25
```

```
1   STATE OF CALIFORNIA    )
                           )
2   COUNTY OF SAN FRANCISCO )
```

3        I, CINDY TUGAW, a Certified Shorthand Reporter
4   of the State of California, duly authorized to
5   administer oaths pursuant to Section 8211 of the
6   California Code of Civil Procedure, do hereby certify
7   that

8                        JOHN QUALLY,
9   the witness in the foregoing deposition, was by me duly
10  sworn to testify the truth, the whole truth and nothing
11  but the truth in the within-entitled cause; that said
12  testimony of said witness was reported by me, a
13  disinterested person, and was thereafter transcribed
14  under my direction into typewriting and is a true and
15  correct transcription of said proceedings.

16       I further certify that I am not of counsel or
17  attorney for either or any of the parties in the
18  foregoing deposition and caption named, nor in any way
19  interested in the outcome of the cause named in said
20  caption.

21       Dated the 7th day of August, 2020.

22
23                        _____
24
25                        CINDY TUGAW
                          CSR No. 4805 (California)

```
1   John Qually
    c/o Foley & Lardner
2   555 California Street, Suite 1700
    San Francisco, CA 94104
3   Attn: Jason Y. Wu, Esq.

4   Date: August 7th, 2020
    Re: Navarro vs. Menzies
5   Deposition Date: Monday, July 27, 2020

6   Dear Mr. Qually,

7           Please be advised the original transcript of
    your deposition is ready for your review.
8           Pursuant to FRCP Rule 30(e), you have
    30 days following the date of this notice to read,
9   correct if necessary, and sign your transcript unless
    the attending parties and the deponent agree on the
10  record or otherwise in writing to a longer or shorter
    time period.  The deponent may change the form or the
11  substance of the answer to a question, and may either
    approve the transcript of the deposition by signing it,
12  or refuse to approve the transcript by not signing it.
    You are not required by law to read and sign your
13  deposition transcript.  All parties will be informed of
    the corrections.  The original transcript will then be
14  sealed and sent to the examining attorney pursuant to
    the applicable law.
15          You may either come to our office to read and
    sign the original transcript, or you may contact your
16  attorney or the attorney who arranged for you to be
    present at your deposition.  If they have ordered a
17  copy of the transcript, you may review their copy and
    make corrections by submitting, signing and returning
18  the attached form.  If you choose to review your
    transcript at our office, please call first to make an
19  appointment.  Should you have any question regarding
    these instructions, please call.
20
    Sincerely,
21

22

    NOGARA REPORTING SERVICE
23  5 Third Street, Suite 415
    San Francisco, California 94103
24  (415) 398-1889

25  cc: All counsel, original deposition
```