CHRISTOPHER WARD, CA Bar No. 238777
   cward@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

JASON WU, CA Bar No. 313368
   jwu@foley.com
SARA ALEXIS LEVINE ABARBANEL, CA Bar No. 324045
   sabarbanel@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE:  415.434.4507

Attorneys for Defendant MENZIES AVIATION, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Renaldo Navarro, <br><br> Plaintiff, <br><br> vs. <br><br> Menzies Aviation, Inc., DOING BUSINESS AS MENZIES; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 3:19-cv-8157 <br><br> **DEFENDANT MENZIES AVIATION, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO COURT'S ORDER FOR SUPPLEMENTAL BRIEFING** <br><br> DATE: February 2, 2021 <br> TIME: 10:00 a.m. <br> PLACE: Videoconference <br><br> State Court Action Filed: 10/23/19 <br><br> Action Removed: December 16, 2019 |

**TABLE OF CONTENTS**

I. THE WEIGHT OF AUTHORITY REQUIRES EXCLUDING THE IMPROPER EVIDENCE AND RULING ON SUMMARY JUDGMENT ON THE FACTS AND EVIDENCE PROPERLY IN THE RECORD, NOT REOPENING DISCOVERY ................... 1

   A. Both The Ninth Circuit And Other Circuits Consistently Indicate That Courts Should Rule On Summary Judgment Without Reopening Discovery ............................ 1

   B. The Existence Of Formal Mechanisms To Reopen Discovery Counsel Against Reopening Discovery When A Plaintiff Does Not Seek Such Relief And Opposes Summary Judgment With New Materials ................................................................ 3

II. MENZIES WILL SUFFER SIGNIFICANT AND INCURABLE PREJDUICE IF THE COURT DENIES ITS MOTION AND REOPENS DISCOVERY ............................................ 5

   A. Menzies Will Suffer Significant Financial Prejudice And Impairment To Its Ability To Make Reasoned Business Decisions It Should Have Had The Opportunity To Consider Under Much Different Time And Financial Constraints ........ 5

   B. Reopening Discovery Will Severely Prejudice Menzies' Ability To Defend Against The New Allegations In Ways That Cannot Be Cured ...................................... 6

III. IT WOULD NOT BE APPROPRIATE TO REOPEN DISCOVERY CONDITIONED UPON PAYMENT OF MENZIES' COSTS AND FEES, BUT IF THE COURT WERE TO CONSIDER IT, IT HAS AUTHORITY TO DO SO ............................................................. 8

   A. Courts Have Authority Under Different Circumstances Than Those Present Here To Condition Doing So On Payment Of Legal Fees And Cost ...................................... 9

   B. If The Court Were To Conditionally Reopen Discovery, The Proper Award To Menzies Is $131,661.65 Plus Its Fees Incurred In Preparing This Brief ........................ 9

IV. IF THE COURT ORDERS PAYMENT OF MENZIES' FEES AND COSTS, COUNSEL CAN AND MUST BE RESPONSIBLE FOR THE FULL AMOUNT ................................... 10

V. MENZIES' TOTAL COSTS AND FEES INCURRED TO THIS POINT ARE $153,650.99 PLUS THE AMOUNTS INCURRED PREPARING THIS BRIEF .................... 11

4819-1221-0390.2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alford v. JP Morgan Chase Bank, N.A.*,
  No. 16-cv-04723-HSG, 2017 U.S. Dist. LEXIS 212129 (N.D. Cal. Dec. 27, 2017) ............................4

*Allergia, Inc. v. Bouboulis*,
  No. 14-CV-1566 JLS (RBB), 2017 U.S. Dist. LEXIS 90844 (S.D. Cal. June 13, 2017) .....................2

*Burrell v. Cty. of Santa Clara*,
  No. 11-CV-04569-LHK, 2013 U.S. Dist. LEXIS 70555 (N.D. Cal. May 17, 2013).............................3

*Busker v. Wabtec Corp.*,
  750 F. App'x 522 (9th Cir. 2018) ..................................................................................................2

*Colbert v. City of Chicago*,
  851 F.3d 649 (7th Cir. 2017)........................................................................................................3

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000).......................................................................................................2

*Dixon v. Cty. of Sonoma*,
  No. 18-cv-07137-EMC, 2020 U.S. Dist. LEXIS 191434 (N.D. Cal. July 1, 2020).............................2

*Emplrs. Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004).......................................................................................................4

*Hernandez v. Creative Concepts, Inc.*,
  295 F.R.D. 500 (D. Nev. 2013)......................................................................................................3

*Mass Probiotics, Inc. v. Aseptic Tech., LLC*,
  No. SA CV 16-1394-DOC, 2017 U.S. Dist. LEXIS 223447 (C.D. Cal. Dec. 21, 2017) ......................9

*Microsoft Corp. v. EEE Bus. Inc.*,
  No. C 07-01839 JSW, 2009 U.S. Dist. LEXIS 28885 (N.D. Cal. Apr. 6, 2009) ..................................9

*Mitchell v. Pilgrim's Pride Corp.*,
  817 F. App'x 701 (11th Cir. 2020) .................................................................................................3

*Party Animal Inc. v. Evanger's Dog & Cat Food Co.*,
  No. CV 17-3422 PSG, 2019 U.S. Dist. LEXIS 234197 (C.D. Cal. Mar. 5, 2019) ...............................9

*Patel v. City of Long Beach*,
  564 F. App'x 881 (9th Cir. 2014) ..................................................................................................2

*Pickern v. Pier 1 Imps. (U.S.), Inc.*,
  457 F.3d 963 (9th Cir. 2006)............................................................................................1, 2, 3, 4, 9

*Quiroz v. Horel*,
    85 F. Supp. 3d 1115 (N.D. Cal. 2015) ..................................................................................3

*Rashad v. Jetyd Corp.*,
    No. CV 11-08455 DMG, 2013 U.S. Dist. LEXIS 189990 (C.D. Cal. Sep. 6, 2013) ............................2

*Tribble v. Raytheon Co.*,
    No. CV 07-3058-JFW, 2009 U.S. Dist. LEXIS 142388 (C.D. Cal. Sep. 23, 2009) ...........................3

*Vesom v. Atchison Hosp. Ass'n*,
    279 F. App'x 624 (10th Cir. 2008) ......................................................................................3

*Ward v. Clark Cty.*,
    285 F. App'x 412 (9th Cir. 2008) .........................................................................................2

*Wasco Prods. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006)...............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................................................1, 10

Fed. R. Civ. P. 15 .............................................................................................................2, 4

Fed. R. Civ. P. 15(d) ..........................................................................................................3

Fed. R. Civ. P. 16(f) .......................................................................................................9, 10

Fed. R. Civ. P. 16(f)(2) ......................................................................................................9

Fed. R. Civ. P. 37(c)(1) .....................................................................................................9

Fed. R. Civ. P. 56(d) .......................................................................................................3, 4

Fed. R. Civ. P. 56(h) ......................................................................................................9, 10

In response to the Court's Order of January 7, 2021 in connection with Menzies Aviation's currently pending Motion for Summary Judgment (the "Motion"), Menzies submits the following supplemental brief addressing the questions posed by the Court.

## I. THE WEIGHT OF AUTHORITY REQUIRES EXCLUDING THE IMPROPER EVIDENCE AND RULING ON SUMMARY JUDGMENT ON THE FACTS AND EVIDENCE PROPERLY IN THE RECORD, NOT REOPENING DISCOVERY

Although Fed. R. Civ. P. 8 creates a liberal pleading standard at a case's outset, that liberal standard should and does contain important limits that respect a defendant's right to fair notice of the basis for theories of recovery and what it should understand as the scope of allegations against which it must defend. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). As a consequence, when a plaintiff opposes a motion for summary judgment that focuses on the theories he has advanced by arguing previously undisclosed allegations or claims, the authority in this Circuit strongly indicates that the remedy is not to reopen discovery – or that such a step is even an available option. Rather, the proper course of action is for the plaintiff to proceed only with the factual record of which he fairly allowed development and the court to rule on summary judgment based on that record. The fact that the Federal Rules of Civil Procedure provide multiple formal mechanisms to seek leave to reopen discovery *before* submitting substantive summary judgment opposition materials further indicates that the proper course here is for the Court to rule on the Motion on an "as is" basis.

### A.   Both The Ninth Circuit And Other Circuits Consistently Indicate That Courts Should Rule On Summary Judgment Without Reopening Discovery

*Pickern* illustrates why in the circumstances here, the Court should decline to consider the newly presented material (as it has already decided to do) and rule on the Motion based only on the scope of allegations properly at issue. In that case, the plaintiff alleged violations of the Americans with Disabilities Act's architectural barrier requirements, focusing the case prior to summary judgment on the defendant's alleged failure to provide a ramp in an otherwise inaccessible location. *Id.* at 968. In opposition to summary judgment, the plaintiff argued for the first time allegations of other architectural barriers beyond those previously at issue, including slope of ramps, cross-slope of sidewalks, emergency fire exits, and emergency landings. *Id.* at 966. Agreeing with the defendant's objections, both the

district judge and the Ninth Circuit agreed the proper sanction was to set aside the new allegations because plaintiff failed to include them in her complaint and neglected to timely move to amend her complaint as the procedural rules allowed. *Id.* at 968-69. Importantly, neither court contemplated reopening of discovery as a potential, let alone proper, remedy in such circumstances; rather, they instructed that a plaintiff's appropriate course of action is to seek leave to amend the complaint prior to summary judgment, and if the plaintiff has failed to do so, the court should disregard the new material and rule on summary judgment based on the proper scope of the case. *Id.* at 969.

The Ninth Circuit has consistently restated and reinforced this rationale. *See Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014) (refusing to consider new theories raised for the first time in opposition to summary judgment); *Ward v. Clark Cty.*, 285 F. App'x 412, 412 (9th Cir. 2008) (affirming summary judgment after plaintiff raised new allegations to oppose summary judgment, noting a party may not circumvent Rule 8's requirements by asserting a new allegation in response to a motion for summary judgment); *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (affirming summary judgment and ignoring novel allegations only raised in opposition to the motion) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (noting that allowing a plaintiff to proceed on a new theory would prejudice defendants because "[a] complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations"). The district courts of this Circuit have consistently followed this rationale and followed *Pickern*'s roadmap.[1] *See Dixon v. Cty. of Sonoma*, No. 18-cv-07137-EMC, 2020 U.S. Dist. LEXIS 191434, at *25 (N.D. Cal. July 1, 2020) (refusing to address new allegations raised for the first time in opposition to summary judgment); *Allergia, Inc. v. Bouboulis*, No. 14-CV-1566 JLS (RBB), 2017 U.S.

---

[1] Menzies' research did not identify a single Ninth Circuit appellate or district court case where, after the defendant moved for summary judgment following the close of discovery, the court permitted an amendment of the complaint under Fed. R. Civ. P. 15 or considered new material that did not fairly relate back to the allegations of the Complaint. *Cf. Busker v. Wabtec Corp.*, 750 F. App'x 522, 524 (9th Cir. 2018) (considering the new theory of liability because the operative complaint could fairly be read as containing the factual basis for such a theory); *Rashad v. Jetyd Corp.*, No. CV 11-08455 DMG (PJWx), 2013 U.S. Dist. LEXIS 189990, at *8-9 n.2 (C.D. Cal. Sep. 6, 2013) (considering new material because the plaintiff's claims and essential facts remained the same as that pled in the complaint). Here, given the Court's finding that Plaintiff sandbagged Menzies, it would seem the Court has already concluded Plaintiff's new information does not fairly relate back to or fall within the Complaint's scope of notice to Menzies, such that these decisions have no bearing on the issues now under consideration.

Dist. LEXIS 90844, *12 (S.D. Cal. June 13, 2017) (awarding summary judgment based only on properly noticed allegations and refusing plaintiff's untimely request to amend his complaint); *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1126 n.8 (N.D. Cal. 2015) (refusing to consider new theories raised in opposition and ruling on summary judgment); *Hernandez v. Creative Concepts, Inc.*, 295 F.R.D. 500, 505 (D. Nev. 2013) (citing *Pickern* to note that "A plaintiff is not permitted to raise a new or inadequately pled claim at the summary judgment stage"); *Burrell v. Cty. of Santa Clara*, No. 11-CV-04569-LHK, 2013 U.S. Dist. LEXIS 70555, at *32 (N.D. Cal. May 17, 2013) (refusing to consider plaintiff's numerous new facts and theories and proceeding to rule on summary judgment on proper record); *Tribble v. Raytheon Co.*, No. CV 07-3058-JFW (SHx), 2009 U.S. Dist. LEXIS 142388, at *14 (C.D. Cal. Sep. 23, 2009) (finding the plaintiff could not allege new bases for claims and awarding defendant summary judgment). *Pickern* and its progeny also find substantial support from the decisions of other circuits contemplating similar circumstances. *See, e.g.*, *Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 708 (11th Cir. 2020) (refusing to consider new allegations in opposition brief and affirming summary judgment for defendant, nothing this "principle applies here even though [the plaintiff] characterizes the allegations at issue as 'additional evidence' rather than 'additional claims'"); *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) (finding a party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 631-32 (10th Cir. 2008) (striking two affidavits submitted in opposition to summary judgment and ruling on the record before the Court because the plaintiff "chose to sandbag" rather than submit material explaining the delay).

**B.** **The Existence Of Formal Mechanisms To Reopen Discovery Counsel Against Reopening Discovery When A Plaintiff Does Not Seek Such Relief And Opposes Summary Judgment With New Materials**

Fed. R. Civ. P. 15(d) provides a mechanism by which Plaintiff could have attempted to change the scope of this case with the information first presented in opposition to the Motion, directing that "on motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading" alleging new material, potentially even potentially discovery has closed. Similarly, Fed. R. Civ. P. 56(d) creates an avenue to reopen discovery *prior to filing a substantive opposition* to a summary

judgment motion, stating that if the non-movant can show "by affidavit or declaration" specific inability to present facts "essential to justify its opposition," a district court may (but is not required) to allow time for additional discovery. Had Plaintiff made such a motion under Rule 15 or submitted a Rule 56(d) declaration explaining his inability to present the facts first raised in substantive opposition to summary judgment, Menzies would have had reasonable arguments to oppose such a request.[2] Aside from the merits of any potential opposition to either a Rule 15 motion or Rule 56(d) declaration, Plaintiff submitted neither prior to opposing the Motion, making the potential merit of any such requests moot.

More importantly to the question raised by this Court, the existence of these procedural steps (themselves governed by significant legal authority) to address circumstances where a plaintiff wishes to oppose summary judgment with information not previously raised in the litigation reinforces the conclusions reached by *Pickern*. Plaintiff was not without opportunity for potential recourse if he felt he had not properly put Menzies on notice of the allegations first raised in opposition to the Motion, and could have sought relief from the Court using those mechanisms. He chose not to, and in context with *Pickern*, the affirmative obligations and procedures Rules 15 and 56(d) create suggest that courts should not relieve litigants of their notice and discovery burdens when they do what Plaintiff has done here.

Together creating a holistic view of how courts should entertain new information at the late stage of summary judgment (at least after discovery has closed), *Pickern*, Rule 15 and Rule 56(d) strongly indicate that the following is the answer to the first question posed by the Court: <u>If a non-movant has neither made a proper request to amend the pleadings under Rule 15 nor shown a qualifying reason for additional time and discovery under Rule 56(d), and chooses instead to file a substantive opposition to summary judgment relying on new information, the Court should decline to consider the new information nor reopen discovery and rule on the motion based on the scope of the case the non-movant</u>

---

[2] *See, e.g.*, *Emplrs. Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir. 2004) (noting that a proper request for relief under Rule 56(d) requires non-movants to make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists") ("The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past"); *Alford v. JP Morgan Chase Bank, N.A.*, No. 16-cv-04723-HSG, 2017 U.S. Dist. LEXIS 212129, at *7-9 (N.D. Cal. Dec. 27, 2017) (denying plaintiff's request to reopen discovery to add additional allegations where plaintiff had "known about the facts and legal theories giving rise to his proposed amendment since the case was filed" and defendant had already filed its motion for summary judgment) (noting that even though the plaintiff did not seek to add a new cause of action, even the addition more facts in support of the same causes of action is improper at such late stage of litigation).

created. Menzies asks the Court to apply that standard here.

## II. MENZIES WILL SUFFER SIGNIFICANT AND INCURABLE PREJDUICE IF THE COURT DENIES ITS MOTION AND REOPENS DISCOVERY

If the Court were to defer ruling on or deny without prejudice the Motion and reopen discovery, Menzies will suffer significant incurable prejudice, in large part due to the amount of time that has already passed since the relevant underlying events and the consequences of the ongoing COVID-19 pandemic. While much of such prejudice may resemble – at a superficial level – the "typical" concerns raised by defendants who have litigated one set of allegations, then be faced with the specter of defending a different case, the specific circumstances of this matter make such types of prejudice significantly more severe to Menzies.

### A. Menzies Will Suffer Significant Financial Prejudice And Impairment To Its Ability To Make Reasoned Business Decisions It Should Have Had The Opportunity To Consider Under Much Different Time And Financial Constraints

As detailed more specifically *infra*, Menzies has already invested heavily in defense of this litigation, choosing to defend it aggressively rather than exploring costs-of-defense savings in the form of early dispute resolution, based on its view of this case as a strong candidate for summary judgment based on how Plaintiff defined this case and the evidence he offered in support. This has included preparing five witnesses for deposition, deposing the Plaintiff, and conducting extensive witness interviews – under the challenging circumstances created by the COVID pandemic – to confirm the material it already had. These investments informed and cemented Menzies' commitment to defending aggressively what it viewed as a weak case. Plaintiff's counsel presumably has also accrued significant legal fees and costs for which Menzies would be liable in the event of an adverse judgment. This combination of the work done and the professional fees liability, irrespective of any damages risks, has effectively made Menzies "pot-committed" to playing this case out based on a scope of allegations that Plaintiff attempted to redraw and which reopening discovery would severely upset.

Levying these costs and fees on Plaintiff and/or his counsel will not dramatically change this paradigm. For one thing, doing so does not in any way reduce Menzies' potential liability for all the legal fees Plaintiff's counsel has already incurred, plus the additional fees and costs counsel will incur if

discovery and pre-trial litigation of this case resumes. Additionally, if Menzies must conduct discovery on and defend new allegations, the costs and fees it has already incurred to investigate and prepare another dispositive motion should at least approximate – if not greatly exceed given the new limitations on its access to information, *see infra* – what it has already spent in this case, putting its legal fees and costs to get through discovery and dispositive motion practice north of $300,000 without even considering Plaintiff's legal fees. That is an extraordinary cost for pre-trial litigation of a single-plaintiff employment case with a relatively narrow universe of facts. The potential liabilities in such a scenario would create enormous pressures both to settle this case prior to trial and take it trial that are dissonant to the type of case, depriving Menzies of the benefit of the business decisions made at a time when such potential risks and pressures were more modest. Causing Menzies to reexamine such crucial business decisions against a financial landscape that would not exist had Plaintiff presented his allegations in a timely manner would be also be highly prejudicial. While a fee award against Plaintiff and/or his counsel would mitigate these concerns to some degree, no such award tethered to what Menzies has already incurred in this case can put it back in the same or similar financial and business-decision positions it would have been had Plaintiff presented his new allegations in a timely manner.

    **B.**  <u>**Reopening Discovery Will Severely Prejudice Menzies' Ability To Defend Against The New Allegations In Ways That Cannot Be Cured**</u>

  While ordering Plaintiff and/or his counsel to cover some or all of Menzies' legal fees and costs could theoretically alleviate some of aforementioned concerns, there is no remedy in the event of reopened discovery capable of curing the serious jeopardy to Menzies' basic ability to defend against Plaintiff's new allegations. Nearly two and a half years have already passed (and perhaps even longer, depending on the dates of the events from Plaintiff's new allegations[3]) since the factual events underlying this case and Plaintiff's new contentions occurred. During such passage of time in any case, employers progressively lose access to the information necessary to investigate claims and support their defenses. Not only do witness memories fade and blur, but objective evidence that might have existed becomes lost due to destruction protocols. For example, some of Plaintiff's new allegations purport to

---

[3] As noted in Menzies' reply in support of the Motion, Plaintiff's declarants were imprecise about when the events constituting Plaintiff's new allegations of harassment against Andrew Dodge occurred, dating them as far back as some unidentified point in 2017. [*See* Docket No. 34, p. 9, lines 3-9.]

occur in highly secure areas of San Francisco International Airport ("SFO"), where video surveillance exists. Had Menzies known of a need to investigate such allegations in a timely manner, it might have had access to video evidence of the events in question. Three or more years later, any such video records have almost surely been purged from any archives.

These "passage of time" prejudices are more pronounced in this matter compared to "ordinary" litigation for two key reasons, both of which are outside Menzies' control. Despite learning of his termination in August 2018, Plaintiff did not commence this action until October 23, 2019, thereby allowing substantial time to lapse before providing basic notice to Menzies of allegations of racial harassment.[4] Plaintiff thus effectively imposed an immediate 14-months-of-lost-time disadvantage from the outset of this case. His decision to wait 13 more months until after Menzies fully investigated and prepared its defense before opposing summary judgment with new allegations compounded an already substantial disadvantage to Menzies. In addition to these Plaintiff-created limitations, Menzies has had to investigate and prepare its defenses – and would have to do so again – in the midst of a once-in-a-century pandemic that has negatively impacted Menzies' basic access to information. In March 2020 – coinciding with when Plaintiff first moved beyond the notice provided by his basic pleadings – the onset of the COVID pandemic and immediate drop in passenger air travel forced massive business changes onto Menzies. In addition to financial losses, the reduction in business has forced Menzies to terminate or furlough thousands of employees across the United States, with an equivalent impact on its SFO workforce. These job eliminations have had a corresponding impact on Menzies' access to potential witnesses and the information they may have – a consequence Menzies has already had to navigate in this case. For example, three Menzies employees submitted contemporaneous statements to Menzies complaining of pressure by Plaintiff, and Menzies received similar information from the Union business representative. [*See* Docket No. 28-1, Exhibit 25.] All three employees lost their jobs or otherwise left their employment at Menzies, and the Union business representative at issue left that role and Menzies no longer has contact information for him. As another example, Kevin Blumberg – the individual who

---

[4] Following his termination, Plaintiff did bring an unfair labor practice charge against Menzies that the National Labor Relations Board ultimately dismissed for lack of jurisdiction. However, that charge focused only on the allegation that Menzies terminated Plaintiff for his involvement in the petition and did not raise any of the race/harassment allegations levied against Dodge found in this action.

investigated the complaints raised by and against Plaintiff – is also no longer at Menzies and has declined to respond to its efforts to contact him. Given that Plaintiff's new allegations include discussions about Dodge amongst Union members [*See* Docket No. 32, Exhibits 32-33], the loss of access to Union personnel and other witnesses potentially capable of advancing Menzies' investigation and defense efforts is critical and will only increase as time and the current pandemic persist. Had Plaintiff acted in a timely manner and/or the pandemic not so impacted Menzies' business, these prejudices would likely not be as significant as they now are.

Reopening discovery in January 2021 and forcing Menzies to either investigate and defend itself with its access to information more restricted than before will put Menzies in the unenviable position of either (i) knowing its ability to fully defend itself has been curtailed while still having to undertake extraordinary effort and expense to pursue its defense; or (ii) reconsidering its business decision to eschew cost savings in lieu of an aggressive defense strategy with the negotiations leverage now materially altered. There is no financial remedy – even if Menzies could feel reasonably sure it would recover its defense costs – that could cure either the "usual prejudices" or those compounded by Plaintiff's delays and the COVID pandemic.

### III. IT WOULD NOT BE APPROPRIATE TO REOPEN DISCOVERY CONDITIONED UPON PAYMENT OF MENZIES' COSTS AND FEES, BUT IF THE COURT WERE TO CONSIDER IT, IT HAS AUTHORITY TO DO SO

The Court's third question asks whether it would be appropriate to condition the reopening of discovery on payment by Plaintiff of all or part of Menzies' costs and fees up to this point, and if so, what portion of those costs and fees should shift to Plaintiff. As to propriety of such a conditional remedy, Menzies contends that regardless of any fee shifting options, the legal standards outlined in Section I *supra* make such an action inappropriate. Menzies further avers that such a conditional reopening of discovery would be inappropriate because any amount of fee shifting – even 100% of what Menzies has incurred in this case – cannot and will not cure the prejudices Menzies will continue to face if the Court reopens discovery for all the reasons specified in Section II *supra*. That said, if the Court were to condition reopen discovery on a fees and costs award, from Menzies' perspective the Court has inherent and explicit authority to order such fee shifting as a sanction against Plaintiff.

A. **Courts Have Authority Under Different Circumstances Than Those Present Here To Condition Doing So On Payment Of Legal Fees And Cost**

Notwithstanding Menzies' position that applicable legal standards and fairness considerations do not permit reopening discovery, it acknowledges the Court's inherent authority to sanction Plaintiff at the summary judgment stage and/or for discovery missteps. Fed. R. Civ. P. 56(h) authorizes the Court to sanction a party for submitting affidavits or declarations in bad faith or solely for delay, with such sanctions including attorney's fees. *See Microsoft Corp. v. EEE Bus. Inc.*, No. C 07-01839 JSW, 2009 U.S. Dist. LEXIS 28885, at *5-6, 8 (N.D. Cal. Apr. 6, 2009) (finding defendant's late disclosure on damages after establishing liability prejudiced the plaintiff and ordering payment of resulting fees and costs). Fed. R. Civ. P. 37(c)(1) also addresses the failure to disclose or supplement information and authorizes the Court to impose sanctions in response.[5] *See Mass Probiotics, Inc. v. Aseptic Tech., LLC*, No. SA CV 16-1394-DOC (GJSx), 2017 U.S. Dist. LEXIS 223447, at *18 (C.D. Cal. Dec. 21, 2017) (considering reopening discovery with payment for the other party's reasonable expenses, including attorney's fees, caused by the disclosure failure). The Court could alternatively see reopened discovery as tantamount to a change to its scheduling order, and Fed. R. Civ. P. 16(f) permits sanctions for failure to obey a scheduling or other pretrial order, including imposing reasonable expenses and attorney's fees. Fed. R. Civ. P. 16(f)(2). *See Party Animal Inc. v. Evanger's Dog & Cat Food Co.*, No. CV 17-3422 PSG (FFMx), 2019 U.S. Dist. LEXIS 234197, at *21 (C.D. Cal. Mar. 5, 2019) (giving plaintiff the option to reopen discovery and pay defendant's associated costs and fees or to forego additional discovery).[6]

B. **If The Court Were To Conditionally Reopen Discovery, The Proper Award To Menzies Is $131,661.65 Plus Its Fees Incurred In Preparing This Brief**

Between the outset of this case and January 11, 2021 (when Menzies' counsel began preparing this brief and gathered the data on its total fees and costs), Menzies has incurred a total of $145,267.34 in legal fees and $8,383.65 in costs, for a total of $153,650.99. If Menzies confines those figures to a

---

[5] Rule 37(c) also instructs that if a party fails to provide information in a timely manner, "the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

[6] Both *Mass Probiotics* and *Party Animal* deal with significantly different circumstances than those at issue here. Menzies contends the *Pickern* line of authority is the far more applicable authority.

MENZIES AVIATION, INC.'S SUPPLEMENTAL BRIEF ON SUMMARY JUDGMENT
-9-
Case No. 3:19-cv-8157

4819-1221-0390.2

March 3, 2020-January 11, 2021 range, they reduce to $123,278.00/$8,383.65/$131,661.65. Menzies has also incurred fees preparing this brief which it does not have available at the time of filing, but will bring to the Court's attention at the February 2, 2021 Case Management Conference.

Menzies submits that the amount from March 3, 2020 through January 11, 2021 ($131,661.65), plus its fees incurred in preparing this supplemental brief, are the amount the Court should order paid to Menzies if such an order is to focus on what Menzies has incurred to this point. Menzies uses March 3, 2020 as the relevant date because that is when the parties submitted their first Joint Case Management Conference statement which required Plaintiff to describe the nature of his claims, effectively moving beyond the Complaint and setting the parameters for what Menzies should understand it needed to defend. In fairness, Menzies acknowledges that fees incurred prior to March 3, 2020 relate to a time when Rule 8 governed the scope of Plaintiff's notice obligations and Menzies would likely have incurred effectively the same costs and fees between the filing of this case and March 2, 2020 regardless of the detail provided by the Complaint. From March 3rd onward however, Menzies designed its strategy and continued tailoring it based on what Plaintiff communicated in his Case Management Conference narrative and subsequent discovery that reinforced the narrow scope of allegations Menzies investigated. Had Plaintiff been more forthright, Menzies would have embarked on a different strategy, and it thus submits that any fee and cost award should relate to the date when Menzies can fairly say Plaintiff first failed to disclose the information raised in substantive opposition to the Motion.

## IV. IF THE COURT ORDERS PAYMENT OF MENZIES' FEES AND COSTS, COUNSEL CAN AND MUST BE RESPONSIBLE FOR THE FULL AMOUNT

With respect to the Court's fourth question, Menzies believes there is clear authority to impose the full amount against Plaintiff's counsel, either via an order applicable only to counsel or one that makes Plaintiff and counsel jointly and severally liable for the entire amount. Both Fed. R. Civ. P. 16(f) and various portions of Rule 37 expressly authorize courts to impose sanctions against "the party, its attorney, or both." And while Rule 56(h) does not explicitly authorize the Court to levy fees and costs against counsel – only against a "submitting party" – the Rule does authorize the Court to hold the attorney in contempt and subject counsel "to other appropriate sanctions," indicating an inherent authority to include counsel as "the submitting party" and impose a fees and costs award.

Additionally, and from Menzies' perspective, not only can the Court order Plaintiff's counsel to pay any amount of Menzies' fees and costs, but it *must* do so if Menzies is to have a reasonable belief that it will in fact receive the ordered remedy. As Menzies understands it, Plaintiff has limited economic means and also suffered economic struggles because of the pandemic, having lost work and benefits as a consequence of being furloughed from the job he found after leaving Menzies' employ. The probable reality is that Plaintiff does not now and will not in the future have the economic means to pay any meaningful amount of Menzies' fees and costs, such that it would be unjust to reopen discovery and allow Plaintiff to litigate a completely different case while giving Menzies a remedy of little practical value. Making Plaintiff's counsel liable in some fashion or another for 100% of any fees and costs award is the only way Menzies could have reasonable assurance that, if it must pivot to litigate a different case than the one it has defended aggressively to this point, it can at least reasonably believe it will receive the remedy intended to compensate it for such an exchange.

### V. MENZIES' TOTAL COSTS AND FEES INCURRED TO THIS POINT ARE $153,650.99 PLUS THE AMOUNTS INCURRED PREPARING THIS BRIEF

In response to the Court's fifth question, Menzies has incurred $145,267.34 in fees and $8,383.65 in costs, for a total of $153,650.99, through January 11, 2021.[7] It has incurred additional fees to prepare this brief, and will share these additional amounts at the February 2, 2021 hearing.

DATED: January 14, 2021

**FOLEY & LARDNER LLP**
Christopher Ward
Jason Wu
Sara Alexis Levine Abarbanel


    */s/ Christopher Ward*
CHRISTOPHER WARD
Attorneys for Defendant MENZIES AVIATION, INC.

---

[7] Menzies prefers not to file its privileged and confidential billing records demonstrating these fees and costs amounts. Should the Court require backup as part of any award, Menzies will be happy to do so and assumes something can be worked out to protect its privileged and confidential nature.