1  Arlo García Uriarte, SBN 231764
   LIBERATION LAW GROUP, P.C.
2  2760 Mission Street
   San Francisco, CA 94110
3  Telephone: (415) 695-1000
   Facsimile: (415) 695-1006
4

5  Attorneys for PLAINTIFF
   RENALDO NAVARRO
6

7                    **UNITED STATES DISTRICT COURT**

8                    **NORTHERN DISTRICT OF CALIFNORNIA**

9

10

11  Renaldo Navarro                          Case No.:  3:19-cv-08157 VC

12          Plaintiff,                       **PLAINTIFF'S SUPPLEMENTAL BRIEF IN
                                             SUPPORT OF HIS OPPOSITION TO
13      vs.                                  DEFENDANT MENZIES AVIATION INC.'S
                                             MOTION FOR SUMMARY JUDGMENT**
14
    Menzie's Aviation Inc., DOING            Date:    February 2, 2021
15  BUSINESS AS MENZIES; DOES 1              Time:    10:00 a.m.
    through 10                               Place:   Video Conference
16
            Defendants.                      Hon. Vince Chhabria
17                                           San Francisco Courthouse
                                             Courtroom 4 – 17th Floor
18
                                             Action Removed:  December 16, 2019
19                                           Action Filed:       October 23, 2019

20

21

22

23

24

25

26

27

28

1

## I.    PROCEDURAL BACKGROUND

2      The complaint in this matter was filed in the San Francisco County Superior Court on

3   October 23, 2019. Menzies removed the matter to the United States District Court on December

4   16, 2019. Menzies then declined consent to the case assignment to Magistrate Judge Kandis A.

5   Westmore.

6      The matter was reassigned to District Judge Vince Chhabria for all further proceedings.

7   The first Joint Case Management statement was filed on March 3, 2020. The first case

8   management conference was held via Zoom on March 11, 2020. After the conference, the

9   following scheduling order was issued:

10
   - Parties agree to participate in private ADR. The deadline to complete private ADR is
11     7/1/2020. Parties are ordered to file an ADR stipulation within 7 days of today's date.
   - Last day to amend pleadings due by 5/11/2020.
12   - Close of Fact Discovery due by 8/14/2020.
13   - Designation of Experts due by 10/8/2020.
   - Rebuttal Reports due by 10/15/2020.
14   - Close of Expert Discovery due by 10/30/2020.
15   - Last day to hear Dispositive Motion Hearing set for 10/1/2020 10:00 AM in San
       Francisco, Courtroom 04, 17th Floor before Judge Vince Chhabria.
16   - Final Pretrial Conference set for 11/30/2020 10:00 AM in San Francisco, Courtroom
       04, 17th Floor.
17   - Jury Trial set for 12/7/2020 08:30 AM in San Francisco, Courtroom 04, 17th Floor
18     before Judge Vince Chhabria.

19      On July 15, 2020, a second case management order was issued. It vacated the pretrial

20   conference scheduled for 11/30/2020 and the trial set for 12/7/2020 due to concerns brought

21   about by the COVID-19 pandemic.[1] The Court also extended the last day to hear dispositive

22   motions to 11/5/2020 and set a further Case Management Conference for 9/16/2020, 10:00 AM.

23      Later, by stipulation and Court order, the hearing for Summary Judgment (the "Motion")

24   was extended and scheduled for November 19, 2020. The Court rescheduled the Motion hearing,

25   and it was eventually held on December 17, 2020.

26   _____

27   [1] This matter is now one year old – yet the parties have had to engage in discovery during the
     pandemic.  Given that no trial date is currently set and it would be amiss to say that the pandemic
     has not had an effect in this litigation, it would be reasonable to adjust the pretrial order given this
28   new reality.

## II.    STATEMENT OF FACTS

### A.  Plaintiff's Complaint Includes Race and National Origin Discrimination Allegations

Plaintiff filed his state court Complaint on October 23, 2019 [dkt. 1, Ex. A]. It contains four causes of action: (1) Race and National Origin Discrimination; (2) Retaliation; (3) Wrongful Termination against Public Policy; and (4) Intentional Infliction of Emotional Distress. Therefore, race and national origin discrimination has been one of Plaintiff's claims from the outset.

Plaintiff alleges that Menzies displayed favoritism for Dodge over Filipino fueling supervisors. Complaint ¶ 28. The Complaint further states that Plaintiff complained several times about this to Defendant, but Menzies never instituted corrective action. *Id.* at ¶ 30. Plaintiff unequivocally states that he was suspended, retaliated against, and terminated by Menzies because of his Filipino race and Philippines national origin. *Id.* His Right to Sue Notice, attached to the Complaint, similarly states that Menzies took adverse action against Plaintiff and that the company discriminated and retaliated against him. Menzies' favoritism[2] based on race and national origin is also described in the Right to Sue Notice:

> Respondent displayed favoritism for supervisor as a Caucasian supervisor over the Filipino's supervisors like the complainant.
> Respondent suspended, retaliated and terminated complainant because of his Filipino race and Philippines national origin

### B.  Plaintiff's Initial Disclosures Identifies Vasquez and Canlas as Potential Witnesses and Contains Documents Related to Vasquez's Knowledge of Plaintiff's Race and National Origin Allegations

Initial Disclosures were exchanged by the Parties in March 2020. *See,* Exhibit 1. Therein, Plaintiff provided Menzies witness information, particularly the contact information for the witnesses who provided declarations in question here, Jezen Canlas and Rafael Vazquez. Clearly, the purpose of this was to alert Menzies that these witnesses had relevant information regarding

---

[2] The evidence submitted by Plaintiff and challenged by the Court with regard to discrimination suffered by Filipino fuelers is mainly for the purpose of showing favoritism by Menzies for the Caucasian Fueling Supervisor, Andrew Dodge.

1    Plaintiff's allegations. Menzies chose not to depose them.

2         Additionally, through the Initial Disclosures process, Plaintiff provided documents to

3    Menzies. One of these documents, Batestamp 0009, is a letter authored by Rafael Vazquez dated

4    November 18, 2018. *See*, Exhibit 2. This letter states that he spoke to Mr. Raul Vargas on three

5    separate occasions. Mr. Vargas is Menzies' Director of Aviation Fueling and the person who

6    ultimately decided to terminate Plaintiff. In the aforementioned letter, Mr. Vasquez writes: "I

7    have spoken to…Raul Vargas on three separate occasions regarding Mr. Andrew Dodge, who

8    continuous to abuse his authority and at times harass Fuelers under his charge." Also, Plaintiff's

9    Initial Disclosures document production included copies of text messages received by Mr.

10   Navarro from Mr. Vazquez mirroring the language of Mr. Vasquez's letter.

11   C.   **Discovery Conducted By the Parties:  One Deposition By Menzies; Two Special**

12        **Interrogatories on the Nature of the Discrimination Claim; Plaintiff consistently**

13        **inquired regarding discrimination of other Filipino Fuelers**

14   Menzies served ten (10) Special Interrogatory questions on July 7, 2020. Only two of the

15   questions concerned substantive allegations in the Complaint. Number one asks for a list of

16   witness related to the allegations in the complaint. Plaintiff provided names of eleven witnesses,

17   Jezen Canlas and Rafael Vazquez. The second interrogatory in question, along with the relevant

18   part of Plaintiff's, response is copied below:

19

20        **SPECIAL INTERROGATORY NO. 2**
          Please state with particularity the knowledge that each alleged witness to the COMPLAINT has that is in
          any way relevant to the allegations contained in the COMPLAINT.

21        **RESPONSE TO SPECIAL INTERROGATORY NO. 2**
          Responding Party objects to this request on the ground that this interrogatory is vague and ambiguous so as

22        to make a response impossible without speculation as to the meaning of the question. Responding Party
          further objects to the extent that this interrogatory seeks or encompasses information protected by the

23        attorney-client privilege and/or attorney work product doctrine. Without waiving these specific objections,
          Responding Party responds as follows:

24        1. Jezen Canlas – Existence of the petitions filed against Andrew Dodge, Defendant's discrimination
          committed against Plaintiff on the basis of his race and national origin for favoring Andrew Dodge, a

25        Caucasian, over Plaintiff, a Filipino, and Plaintiff's employment was suspended and terminated because
          Plaintiff signed the Petition against Andrew Dodge as an act of Retaliation.

26        2. Rafael Vasquez – Existence of the petitions filed against Andrew Dodge, Rafael's initiative to author the
          second petition against Andrew Dodge, Defendant's discrimination committed against Plaintiff on the basis

27        of his race and national origin for favoring Andrew Dodge, a Caucasian, over Plaintiff, a Filipino, and
          Plaintiff's employment was suspended and terminated because Plaintiff signed the Petition against Andrew

28        Dodge as an act of Retaliation.

*Exhibit 3,* Plaintiff's Responses to Menzies Special Interrogatories.

Aside from these two questions, no further questions were posed with regard to Plaintiff's substantive claims of discrimination, favoritism, etc. In other words, Menzies never asked for Plaintiff to state all facts to support his claims. *See, Exhibit 3* for a copy of Plaintiff's Responses to Menzies Special Interrogatories.

Plaintiff served discovery requests on July 14, 2020. Request for Production of Documents requested documents regarding complaints by Plaintiff to Menzies (#14); complaints made by any of Menzies former or present employees regarding discrimination during Plaintiff's tenure (#15). Complaints by former and current employees against Dodge (#19); Investigations conducted following complaints by current and former employees against Dodge (#20); petitions against Dodge (#21); and, disciplinary actions, charges, and lawsuits of any kind against Dodge (#22). *See*, Exhibit 4.

Special Interrogatories were served as well, and among the questions included (##8-16) were complaints against Dodge, investigations of such complaints, including by any of Menzies present or former employees about Dodge. *See*, Exhibit 5.

**Deposition of Plaintiff**

Counsel for Menzies made the strategic decision never to use the word discrimination during the entire deposition of Plaintiff. Also, no use of the word favoritism. No questions of being treated differently, no questions on fuelers being treated differently. Counsel's questions on reason for his termination substantially begins in page 88 when Plaintiff is asked about the reason provided to him by Menzies regarding his termination. After that, the focus of the questions changes to whether race or national origin was mentioned to Plaintiff by Menzies as the reason for his suspension or termination. There were questions on whether Plaintiff saw papers that indicated that he was being terminated because of his race or national origin. Finally, on page 90, Plaintiff was asked if race played a role in his suspension. Plaintiff says yes. When asked as to what the belief stems from, Plaintiff indicates that maybe it is because he is Asian and Dodge was white. When asked for evidence, Plaintiff states that in addition to his race, in response to the

problems he and others brought up to management, no actions were taken, while it was he who was terminated. When asked as to who told him that race was a factor, Plaintiff illustrates different treatment with regard to flight delays caused by Dodge compared to flight delays caused by "us." Counsel for Menzies then cautions Plaintiff that it is not about what Plaintiff thinks or feels, or what he believes, but instead who told him. Plaintiff answers then, that he has a lot of Asian coworkers, when they commit mistakes, they are terminated. Plaintiff then relents and says this is what he feels. Counsel for Menzies does not follow up on the disparate treatment of Asian coworkers. In fact, Plaintiff was never asked whether he thought Dodge discriminated against Filipino fuelers. *See* Navarro Depo., Exh. 6, pp. 88-105.

**Deposition of Menzies' Witnesses**

Plaintiff's counsel deposed four witnesses listed by Menzies. Andrew Dodge on July 28, 2020; Ex. 7.  John Qually on July, 27, 2020 and July 28, 2029; Ex. 8. Tracy Aguilera on August 25, 2020; Ex. 9.  Raul Vargas on August 25, 2020; Ex. 10.

In Andrew Dodge's deposition, Plaintiff's counsel directly asks Mr. Dodge about Mr. Vazquez's allegations that Andrew Dodge harassed fuelers, pointing to the November 18, 2018, letter from Mr. Vasquez. Mr. Dodge denied that he ever harassed or abused his authority. Mr. Dodge was asked whether any fuelers complained about harassment against him. "No" was the answer.  Dodge Depo., Exh. 7, pp. 49-51.

During Mr. Qually's deposition, it seemed that either his memory of events from two years ago has been severely affected, or he meant to say "no" or "do not remember" to questions of past events – so that no further questioning could be instigated.  He denied any involvement in the termination, suspension and investigation related to Navarro, despite being his direct supervisor.  Qually Depo., Exh. 8,14:12-14; 39:14-17; 41:8-12; 16-17.  He denied any knowledge as to the reason for the termination nor the policies and procedures Navarro was accused of violating. *Id.*at 49:14-25; 50:23-25.  He denies hearing any complaints from fuelers.  *Id.* at 42:21-23.  He remembers a discussion with Mr. Vasquez about Dodge before Mr. Navarro's termination but not the subject matter at all.  He also denies complaints of harassment and abuse of authority

1    leveled against Mr. Dodge by other fuelers. *Id.* at pages 52-54.

2        Tracy Aguilera (a Caucasian HR Professional) indicated that as for the quick promotion of

3    Andrew Dodge to supervisor, she did not remember if other people were vying for the promotion.

4    Aguilera Depo., Exh. 9, 29:25-30:1. She acknowledged that in August 27, 2018, Raul Vargas

5    received the Vasquez second petition from Vasquez himself.  *Id.* at 37:18-38:9. She does not

6    remember any reprimands handed to Dodge.  *Id.* at 41:15-18.  The Vasquez November 18, 2018,

7    letter was also discussed with Ms. Aguilera.  She does not remember if complaints of harassment

8    from Vazquez regarding harassment of other fuelers were investigated, nor if she otherwise

9    became aware of any investigation results, even though she intimates that Menzies has zero

10   tolerance for harassment. *Id.* at 43:18; 44:4-13.

11       Raul Vargas is the Director of Operations, and the highest decision maker that instructed

12   the termination of Navarro.  Mr. Vargas admits to interacting with Mr. Vazques.  Pp. 20:9-22.  He

13   denied receiving complaints against Mr. Dodge.  P. 31:12-16.  When pressed as to the allegations

14   in the petition itself, Mr. Vargas admits that he did not talk to any fuelers about the way Dodge

15   supervised.  P. 38:10-14.  Mr. Vargas was asked about the different treatment or "covering up"

16   language in the petition for the mistakes of Mr. Dodge, while he believes it was important to

17   investigate such, none was made.  41:2-16; 42:1-25.  Mr. Vargas does admit meeting with Mr.

18   Vazques but denies talking to him about Andrew Dodge, and admits to having him in the union

19   meetings.  Mr. Vargas was pressed about complaints against Dodge at the union meetings and

20   talking to Mr. Vazques about Dodge, but unfortunately, Mr. Vargas can't recall.  Pp. 45-48.  Mr.

21   Vargas does admit that no investigation was conducted with regard to the second petition.  P.

22   51:14-19.  Mr. Vargas admits he never tried to find out if Mr. Navarro's side of the story was

23   evaluated.  He did not try to find out.  P. 55:16-56:20.  Even Mr. Vargas' counsel asked him

24   whether he heard about any complaints of harassment against other employees.  P. 73:15-20.

25

26

27

28

---

1

2

3

### III.    ANALYSIS

**A.  Plaintiff Urges the Court to Reconsider its Decision to Exclude Evidence of Dodge's Alleged Race-Based Harassment of Filipino Fuelers Without Further Discovery**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Before addressing the Court's questions, Plaintiff must emphasize his position that Menzies was not sandbagged or blindsided by new or different claims[3] regarding Dodge's alleged race-based harassment of Filipino fuelers. This is true for two principal reasons. First, the Dodge allegations are consistent with Plaintiff's original claims because he has always complained of race/national origin discrimination and retaliation; and second, Defendant had ample opportunity to conduct discovery that could have revealed the allegations in question. Menzies had this ample opportunity because: (1) Plaintiff identified Vasquez and Canlas as relevant witnesses in his Initial Disclosures; (2) Plaintiff produced a letter authored by Vasquez stating in relevant part, "I have spoken to…Raul Vargas on three separate occasions regarding Mr. Andrew Dodge, who continuous to abuse his authority and at times harass Fuelers under his charge;" (3) Defendant failed to ask a general contention interrogatory, something akin to "state all facts supporting your claim of race/national origin discrimination;" and (4) when Defendant asked generally in a special interrogatory, "Please state with particularity the knowledge that each alleged witness to the COMPLAINT has that is in any way relevant to the allegations contained in the COMPLAINT," Plaintiff identified Vasquez and Canlas and stated they possessed knowledge regarding "Defendant's discrimination committed against Plaintiff on the basis of his race and national origin for favoring Andrew Dodge, a Caucasian, over Plaintiff, a Filipino." Menzies chose not to explore these avenues, so Plaintiff should not be prevented from doing so even if the evidence was presented in opposing summary judgment.

23

24

25

Defendant was effectively alerted that Vasquez and Canlas had or may have had the kind of information in question here and chose to take a minimalist approach. In other words, Menzies elected to not depose these witnesses, to not ask more targeted questions through written

26

27

28

---

[3] The distinction between "new or different claims" and "new but related allegations" is pivotal when assessing the applicability of the case law cited by Menzies when it objected to the evidence in question. Plaintiff's analysis of that case law is included below.

discovery, or to take any other conceivable, similar steps. Ostensibly, Menzies made a strategical choice to develop the factual record as little as possible so that Plaintiff would have less summary judgment opposition evidence. Menzies should now live with the ramifications of that strategy, which means the evidence in question should be considered not excluded. Thus, Plaintiff does not believe reopening discovery is necessary or appropriate considering the situation at hand.

Furthermore, the case law cited by Menzies when it objected to the evidence in question is distinguishable. Defendant relied on *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.* 397 F.3d 1217, 1225 (9th Cir. 2005) in attacking the information contained in the Vasquez and Canlas declarations. *Hambleton*, in relevant part, discusses the "sham" affidavit rule, which states "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Hambleton citing, Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991).

Unlike in *Hambleton*, Plaintiff's original allegations are not contradicted by the declaration evidence submitted in his opposition to the instant Motion. Plaintiff has complained of race and national origin discrimination from the outset. Vasquez and Canlas did not offer contradictions; they provided additional details about the toxic atmosphere at Menzies, particularly the actions of Andrew Dodge. While these witness elaborations are new, they are not different nor contradictory. Plus, Defendant had a fair opportunity to depose these witnesses or ask more targeted written discovery questions to uncover their testimony. Defendant elected not do so. All of this makes the instant case very different than *Hambleton* or *Kennedy*.

1. **Menzies' Reliance on Pickern is Misplaced As Subsequent Cases Illustrate Our Facts Are More Akin to Court Rulings That Have Not Precluded the Evidence**

In *Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963 (9th Cir. 2006)* ("Pickern") the Ninth Circuit held that a district court need not address allegations raised for the first time after the close of discovery and in response to a motion for summary judgment if the plaintiff's pleadings did not provide sufficient notice of those allegations. *Pickern* at 965. "Plaintiff's claim can be distinguished from the list of hypothetical possibilities rejected in *Pickern (citation omitted)*. Whereas the plaintiff's complaint in Pickern did not allege any specific conduct by the

1   defendant, plaintiff in this case alleges that defendant engaged in specific prohibited conduct."

2   *Threshold Enterprises Ltd. v. Functional Brands, LLC,* No. C07-1400 BZ, 2007 WL 1747122, at

3   *1 (N.D. Cal. June 18, 2007).  Navarro alleges discrimination based on race and national origin,

4   including favoritism towards a white supervisor.  *See Navarro Complaint and attached Right to*

5   *Sue Notice.*

6       In *Pesci v. McDonald*, No. 5:15-CV-00607-SVW-E, 2015 WL 12672094, at *11 (C.D.

7   Cal. Oct. 22, 2015) the district court held that the fact that post shift allegations were not in the

8   complaint did not preclude the evidence of violations in Plaintiff's summary judgment opposition.

9   While the Defendant there argued these were new allegations, the Court held that Defendant had

10  adequate notice and illustrated that "[a]lthough Defendant is correct that Pesci failed to allege

11  post-shift uncompensated working time in her complaint, in one interrogatory response, she stated

12  that there were times when she was not able to leave work until 4:30 p.m. (Pesci Depo. at 52:18-

13  24). Moreover, in her deposition, Pesci stated that she was routinely required to work 15 to 30

14  minutes after her shift on a daily basis and was not compensated for that time."

15  **B. <u>Question #1:  The Proper Legal Standard for Deciding Whether to Reopen Discovery</u>**

16      Discovery is typically reopened upon request of one of the litigants. The "[movant] bears

17  the burden of showing the necessity for more time and why the previously allotted time was

18  insufficient. We will only find that the district court abused its discretion if the movant diligently

19  pursued its previous discovery opportunities, and if the movant can show how allowing additional

20  discovery would have precluded summary judgment." *Maurey v. University of Southern*

21  *California* (9th Cir. 2001) 12 Fed.Appx. 529, 533, as amended on denial of reh'g (Aug. 23, 2001)

22  (internal citations omitted). *See also*, *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d

23  912, 920–921 *citing, Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir.1994)

24  ("The burden is on the party seeking additional discovery to proffer sufficient facts to show that

25  the evidence sought exists, *id.,* and that it would prevent summary judgment.")

26      However, regardless of litigant requests, the Court's "power to administer the court

27  calendar and to control the time and conduct of trial is broad. Scheduling of discovery, motions,

28

1  and trial must be left to the discretion of trial judges. A trial judge's discretion must be guided by

2  fairness and reason." *U.S. v. Doe* (9th Cir. 1980) 627 F.2d 181, 183–184. *See also*, *Miller v.*

3  *Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir.1985) ) ("The district court is given broad

4  discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive

5  effect of a pretrial order ...will not be disturbed unless they evidence a clear abuse of

6  discretion."); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607 (9th Cir.1992); *Zivkovic*

7  *v. Southern California Edison Co.* 302 F.3d 1080, 1087 (9th Cir. 2002).

8  **C. <u>Question #2:  Menzies Would Not Suffer Prejudice if the Court Decided to Reopen</u>**

9  **<u>Discovery or Permitting t to File a Renewed Motion for Summary Judgment</u>**

10  If the Court ordered the reopening of discovery in order to allow Menzies a renewed

11  opportunity to assess Dodge's alleged race-based harassment of Filipino fuelers, there would be

12  no prejudice to Menzies. Theoretically, there would be prejudice if Menzies was required to re-do

13  work already performed or if the delay would adversely impact its position in moving for

14  summary judgment. Neither are the case here.

15  Menzies would be given a second chance to perform new work, which it could have and

16  likely should have done in the first place. Namely, deposing additional witnesses (particularly

17  Vasquez and Canlas), and/or serving additional written discovery requests about the alleged race-

18  based harassment, and/or asking Plaintiff more specific deposition questions. All of this is

19  additional work, not the re-doing of old work.

20  After any new work is done, Menzies would be in a very similar position regarding the

21  instant Motion. The main difference is the Court's ruling would be delayed. The delay would not

22  curtail Menzies' ability to defend itself in this lawsuit (in fact, reopening discovery would only

23  enhance Menzies' ability to defend itself because it would have another chance to rebut relevant

24  evidence) nor would it unfairly "eschew cost savings in lieu of an aggressive defense strategy

25  with the negotiations leverage now materially altered." Menzies Supplemental Brief Response,

26  page 8:11-13. Menzies would still get the opportunity to move for summary judgment, which is

27  the main cost-savings decision it made in the first place. Menzies could also be directed to

28

1    address a limited or distinct set of issues for its supplemental Summary Judgment/Adjudication

2    motion.

3        Furthermore, Menzies would not be in a different negotiating position. Defendant has had

4    the opportunity to continue settlement negotiations since it moved for summary judgment (it has

5    elected not do) and will continue to have that opportunity up until the Court's ruling if it so

6    chooses. The prejudice highlighted by Defendant in its supplemental brief here is exaggerated.

7    **D. Plaintiff Should Not Have to Pay Menzies to Complete Discovery it Could Have but**

8    **Elected Not to Conduct; Conditioning of Fees Must be Limited to Actual Harm, f Any.**

9        As noted in Menzies brief, this Court is authorized under Fed. R. Civ. P. 56(h) to sanction a

10   party for submitting affidavits or declarations in bad faith. Plaintiff submits that its actions were

11   not in bad faith. Indeed, the cases cited by Menzies in support of its request for sanctions are for

12   egregious conduct not found here, such as willfully delaying expert report for over one-year and

13   producing it on the eve of trial (*Mass Probiotics, Inc. v. Aseptic Technology, LLC*, No. SA CV

14   16-1394-DOC (GJSx), 2017 U.S. Dist. WL 10621233) or a Plaintiff that conducted no discovery

15   and sought to reopen discovery and expert disclosures (*Party Animal Inc. v. Evangers's Dog and*

16   *Cat Food Co.*, No. CV 17-3422 PSG (FFMx), WL 10944854).

17       As discussed above, Plaintiff complaint allegations, initial disclosures and evidence

18   provided in discovery gave Menzies notice that additional evidence exits to support Plaintiff's

19   claims.  Plaintiff's Complaint, plead under state law and procedure filed in state court, was

20   sufficient to put Menzies on notice of broad race discrimination claims. Rather than seek a more

21   definite statement when it removed this case federal court, Menzies elected to conduct very

22   limited discovery. Plaintiff's initial disclosure specifically identified the very witnesses who

23   provided the declarations at issue as having knowledge to support the claims in his complaint.

24   Menzies' election to forego those depositions in discovery should not now be a cost borne by

25   Plaintiff.

26       To the extent that Menzies was truly unaware of the evidence or potential for evidence

27   from the disclosed witnesses (Menzies initial disclosure provided similar general statements about

28

---

1   witness information), and if the Court does indeed find some bad faith on the part of Plaintiff, any

2   sanction should be limited to actual costs that Menzies would not have had to incur. In *Microsoft*

3   *Corp. v. EEE Bus. Inc.*, No. C-07-01839 JSW, 2009 U.S. Dist. WL 28885 at *3 (N.D. Cal. Apr. 6,

4   2009), the court ordered only payment of fees and costs directly associated with the Defendants'

5   conduct that required the re-opening of discovery for the second time in the case. In granting

6   sanctions, the court in *Microsoft* also ordered the Plaintiff to provide a declaration "setting out the

7   fees and costs incurred as a result of the twice-reopened discovery in this matter" and permitting

8   Defendant to respond as to its reasonableness. *Id.*

9        In its brief, without providing a supporting declaration as to costs incurred and for what

10   purpose, Menzies requests that Plaintiff pay nearly its entire litigation costs of $153,650.99. This

11   request, on its face, is unreasonable. The discovery that Menzies conducted to date, special

12   interrogatories, requests for production of documents and the single deposition of Plaintiff would

13   have been conducted even with more specific statements in disclosures. The witnesses identified

14   by Plaintiff has not changed and Menzies elected not to depose them during discovery. Plaintiff

15   should not be required to pay for Menzies lack of diligence in discovery.

16        To answer question number 3: If any sanction is to be paid by Plaintiff, it should be

17   limited to costs for a second deposition of Plaintiff so that Menzies can ask specific questions as

18   to the evidence presented in the subject declarations. The cost of deposing declarants, identified

19   as witnesses by Plaintiff, would have been borne by Menzies had it elected to take the depositions

20   during discovery. Allowing Menzies to take those depositions, if it choses to do so, is a cost that

21   it should bear. All of the costs incurred by Menzies to date would have been incurred even with

22   more specific disclosures, as a necessary part of its defense. It should not know be permitted to

23   shift the entire costs of its defense to Plaintiff.

24        Should the Court determine that Plaintiff should pay sanctions more than the cost of

25   completing Plaintiff's deposition, Plaintiff requests that Menzies submit evidence by way of

26   declarations specifying the fees and costs it believes are tied to any failure of Plaintiff, and the

27   opportunity to challenge it for reasonableness. *Microsoft, supra*, at *3. Furthermore, the parties

28

1    should brief more fully the issue of any alleged sanctionable action by Plaintiff or his counsel

2    before any conclusion is set.  While Plaintiff's counsel's actions are not agreeable to the Court, it

3    does not rise to the level that requires any sanction.

4        To answer question number 4:  Counsel for Navarro believes that while we do not agree

5    that monetary sanctions should be ordered, the Court has the power to order fees against only to

6    Counsel.

7        **E.    Question of Payment of Sanctions by Plaintiff and/or its Counsel**

8        Whether any sanctions are awarded against counsel or client is a determination to be made

9    by the Court without input by Plaintiff, as this question creates a conflict of interest. As discussed

10   above, the circumstances here do not warrant sanctions.  To answer the Court's question number

11   6:  Navarro and his Counsel wants the alleged "new allegations" and evidence about race-based

12   harassment by Dodge to be considered.  Given the amount of money that Menzies' requests, it is

13   very hard to agree to the payment of costs and fees as a condition.

14       Lastly, in 16 years of practice, counsel for Plaintiff has tried to practice as fairly and

15   respectfully with all Courts, all attorneys, litigants, employees and specially with clients.  It has

16   not been this attorney's practice to "sandbag" or hide the ball.  This Court's conclusion with

17   regard to "sandbagging" has hurt.

18

19   Date:  January 22, 2021            Respectfully Submitted,

20                          Liberation Law Group, PC

21

22                          _____

23                          Arlo Garcia Uriarte

24

25

26

27

28