```
                IN THE UNITED STATES DISTRICT COURT

        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA




 RENALDO NAVARRO,

                Plaintiff,

 v.                                            No.  3:19-CV-8157

 MENZIES AVIATION, INC.,
 doing business as MENZIES
 and DOES 1 through 10,
 inclusive,

                Defendants.
 _____/

 Zoom Remote Deposition of

        TRACY AGUILERA

  Tuesday, August 25, 2020
```

**CERTIFIED COPY**

REPORTED BY:  CINDY TUGAW, CSR #4805

NOGARA REPORTING SERVICE
5 Third Street, Suite 415
San Francisco, California 94103
(415) 398-1889

<< NOGARA REPORTING SERVICE >>                              1

```
1                        I N D E X

2                                               Page Number

3    EXAMINATION BY MR. URIARTE                      5

4    EXAMINATION BY MR. WU                          48

5    FURTHER EXAMINATION BY MR. URIARTE             53

6                        ---o0o---

7                       E X H I B I T S

8    Plaintiff's

9    Exhibit 8      Petition to Menzies              26
                    Management from Menzies
10                  Fuelers

11   Exhibit 9      Termination notice for           48
                    Renaldo Navarro
12
     Exhibit 11     Employee Performance             35
13                  Development dated
                    8/29/2018
14
     Exhibit 12     Email chain culminating          31
15                  in an email from Raul
                    Vargas to Tracy Aguilera
16                  dated August 29, 2018

17   Exhibit 13     Menzies Aviation Code of         18
                    Conduct
18
     Exhibit 14     Menzies Aviation Employee        21
19                  Handbook California - 2017

20   Exhibit 15     Menzies Aviation Applicant       23
                    Declaration Form
21
     Exhibit 17     Employee Performance             43
22                  Development Steps to
                    Progressive Discipline
23
     Exhibit 18     Job Description, Fueling         54
24                  Supervisor (North America)

25
```

# I N D E X

(Continued)

| | Plaintiff's | | Page Number |
|---|---|---|---|
| | Exhibit 19 | Letter from Rafael Vasquez to whom it may concern dated 11/18/2018 with attached petition | 41 |
| | Exhibit 20 | Menzies Aviation Employee Handbook California - 2018 | 44 |

---o0o---

```
 1          BE IT REMEMBERED that, pursuant to Notice of
 2   Taking Deposition and on Tuesday, the 25th day of
 3   August, 2020, commencing at the hour of 1:04 o'clock
 4   p.m. thereof, via Zoom videoconference, before me,
 5   CINDY TUGAW, a Certified Shorthand Reporter in the
 6   State of California, personally appeared,
 7                      TRACY AGUILERA,
 8   called as a witness by the Plaintiff, having been by me
 9   first duly sworn, was examined and testified as
10   hereinafter set forth.
11                         ---o0o---
12                   APPEARANCES OF COUNSEL
13   For the Plaintiff
           LIBERATION LAW GROUP, P.C.
14         2760 Mission Street
           San Francisco, California 94110
15         BY:  ARLO GARCIA URIARTE, Attorney at Law
           (415) 695-1000
16
17   For the Defendants
           FOLEY & LARDNER, LLP
18         555 California Street, Suite 1700
           San Francisco, California 94104
19         BY:  JASON Y. WU, Attorney at Law
           (415) 984-9848
20
     Also Present:  David Ho, Zoom Host.
21
                           ---o0o---
22
23
24
25
```

1    Did you read this part of the petition?  And
2    pertaining to July, August of 2018, did you read this
3    part of the petition?
4        A.  I believe I did.
5        Q.  And as an HR or human resources professional,
6    when you read this part of the petition, does that put
7    you in any type of concern?
8        A.  Disciplinary action and -- disciplinary
9    action -- let me back up here.
10           This was given to Raul.  In HR I had no issues
11   regarding Andrew's performance.  This was given to Raul
12   and we had Kevin Blumberg investigate it.
13       Q.  Okay.  Does the part about "looks like they
14   are always covering his mistake," referring to Nicco,
15   John and Renil, does that raise any red flags of
16   concern for you as the HR manager?
17       A.  No.
18       Q.  You were around when Mr. Dodge was promoted to
19   supervisor, correct?
20       A.  I believe so.
21       Q.  Meaning that he was a fueler for about a year,
22   then he received a promotion as a supervisor, is that
23   correct?
24       A.  Yes.
25       Q.  And for that promotion, were there other

1    people vying for that promotion?

2        A.  I don't know.  I don't remember.

3        Q.  Given that Mr. Dodge had only one year of

4    experience, do you remember any of the old-timers,

5    old-timer fuelers, also wanting to be a supervisor?

6    Does that refresh your recollection at all?

7        A.  Can you repeat the question.

8        Q.  Sure.  Mr. Dodge received a promotion to

9    supervisor after only one year of being a fueler.  At

10   that point there were many fuelers who had worked there

11   as fuelers for many, many years who also wanted to be a

12   supervisor.  Do you remember any of those --

13       A.  No, we post the position, they would apply for

14   the position, they would be reviewed by the manager,

15   and the person best qualified for the position would be

16   granted the promotion.

17       Q.  And for fueling supervisor, who would be the

18   manager that decides that?

19       A.  It would have been the -- between the general

20   manager and the director.

21       Q.  So it would have been Renil and John Qually or

22   Renil and the operations manager?

23       A.  It would have been Renil.

24       Q.  It would have been Renil.

25       A.  Uh-huh.

1    MR. URIARTE: All right. Let's go to the last, I
2    guess -- if we can go to Menzies 200, which is on the
3    bottom, David, a little bit more, like two pages down.
4    All right. Go up a little bit, please. Let's see the
5    date stamp. There we go.
6        Q. So, Ms. Aguilera, this string of emails, did
7    you provide this to your attorney? Is this something
8    you printed out and provided to your attorney?
9        A. I sent this to my manager. I sent it to
10   Talin.
11       Q. Gotcha. All right. So you see here it says,
12   "On August 27, 2018, at 5:11 PM Tracy Aguilera wrote."
13   Do you see that?
14       A. Yes.
15       Q. And then it says "Talin," and then it has
16   different points. Do you see that?
17       A. Yes.
18       Q. Okay. And then if we go down a little bit --
19   a little bit down, please, David -- here's the question
20   I have. It says, "Now today, 10/27/2018 Raul Vargas
21   receives the same petition from Rafael Martinez, no
22   signature just wanting Andrew removed - I did not
23   attach it to this email."
24       Do you see that?
25       A. Yes, I do, and that's a typo with the date.

1   Q. That's a typo with the date?

2   A. Yeah, it shouldn't have been October.

3   Q. Okay. So it should have been October 27,

4   2018?

5   A. No, I believe --

6   Q. I mean -- yeah.

7   A. I believe it should have been August 27th.

8   Q. Okay. So you believe that to be a typo?

9   A. I believe so.

10   Q. All right. So are you saying that two days

11   before Mr. Navarro was terminated, Mr. Rafael Martinez

12   also gave Raul Vargas a petition asking Andrew to be

13   removed?

14   A. Yes.

15   Q. With regards to the suspension on August 20,

16   who recommended and approved the suspension?

17   A. Raul Vargas and Kevin Blumberg.

18   Q. Before the issue with the petition, did you

19   receive any complaints or did you hear about complaints

20   from fuelers against Andrew Dodge?

21   A. Only from Rey.

22   Q. Did you see the pictures that were circulating

23   of Mr. Andrew Dodge sleeping on the job? Was that

24   something that you saw?

25   A. Yes, I did see one.

1  Q. Wasn't there another picture where he was kind
2  of like in a Menzies vehicle as well?
3  A. That's the one I'm talking about. He was in
4  the Menzies truck sitting outside.
5  Q. And do you remember any kind of concern about
6  Andrew Dodge like causing delays to flights? Was that
7  something that was discussed?
8  A. No, it wasn't discussed with me.
9  Q. What about Andrew Dodge causing fuelers to
10 miss breaks?
11 A. No.
12 Q. Did Andrew Dodge ever get some sort of
13 reprimand as a result of the petition?
14 A. No.
15 Q. ==Sitting here today, do you remember if any==
16 ==kind of reprimand was ever issued -- has been issued to==
17 ==Andrew Dodge?==
18 ==A. No.==
19 MR. URIARTE: Can we have Exhibit 19, please,
20 David.
21     (Plaintiff's Exhibit 19 marked for
22     identification.)
23 MR. URIARTE: Q. So Exhibit 19 starts with a
24 statement by Mr. Rafael Vasquez. Do you see the
25 document, Ms. Aguilera?

1    A.   If I'm not mistaken, this is for the same
2 issue.
3    Q.   So no additional investigation was done?
4    A.   Not to my knowledge.
5    MR. URIARTE:  Now, let's go to Exhibit 17, please.
6         (Plaintiff's Exhibit 17 marked for
7         identification.)
8    MR. URIARTE:  Q.  Okay.  You see Exhibit 17, I
9 believe it's Employee Performance Development and Steps
10 to Progressive Discipline.
11        If you could go down a little bit, David, that
12 would be better.
13        This is a reverse pyramid here.  And you're
14 familiar with this, Ms. Aguilera?
15   A.   Yes, I am.
16   Q.   My question here really is how come
17 progressive discipline was not instituted?
18   A.   ==Harassment has zero tolerance.==
19   Q.   And was it discussed as an option?
20   A.   I'm sorry?
21   Q.   Was it discussed as an option?
22   A.   Progressive discipline for harassment?
23   Q.   Yes.
24   A.   No.
25   Q.   Is that written somewhere where harassment,

1  the type Mr. Navarro was accused of, has zero
2  tolerance?
3      A.  Any type of harassment.
4      Q.  If we go back to Exhibit 19, at the bottom
5  here it says, "I have spoken to Menzies Aviation
6  Fueling Director Raul Vargas on three separate
7  occasions regarding Andrew Dodge, who [continues] to
8  abuse his authority and at times harass Fuelers under
9  his charge."
10         Was that type of harassment investigated?
11     A.  I can't tell you -- I didn't see the
12 investigation, but this was turned over to Kevin
13 Blumberg.
14     MR. URIARTE:  Okay.  Aside from the employee
15 handbook, Jason, I have no further questions.
16     MR. WU:  Arlo, can we go off the record for a
17 second?
18     MR. URIARTE:  Sure.
19         (Brief recess.)
20         (Plaintiff's Exhibit 20 marked for
21         identification.)
22     MR. WU:  Can we go back on the record now?
23     THE REPORTER:  Yes.
24     MR. WU:  Earlier in the deposition, Mr. Uriarte
25 asked Ms. Aguilera about a document that was described