UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENALDO NAVARRO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MENZIES AVIATION, INC.,<br><br>　　　　　Defendant. | Case No. 19-cv-08157-VC<br><br>**ORDER GRANTING DEFANDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 28 |

Because Navarro has not properly introduced any evidence from which a reasonable jury could find that his firing violated California law, Menzies' motion for summary judgment is granted.

Newly Submitted Opposition Evidence

As a preliminary matter, it would not be proper for the Court to consider the factual allegations and evidence introduced for the first time in Navarro's opposition to summary judgment. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Prior to that brief, in all his filings and all his discovery conduct Navarro told a consistent story: that fuelers complained to Navarro, who is a supervisor, that another supervisor named Andrew Dodge had been sleeping on the job and failing to give them meal and rest breaks; that Navarro signed a petition seeking to have Dodge fired for that conduct; that Navarro was fired for signing the petition; and that this decision to fire Navarro (who is Filipino) for his conduct while allowing Dodge (who is white) to skate for the conduct complained of in the petition constituted race discrimination. In the opposition, Navarro told a new story: that he and the fuelers had repeatedly complained to Menzies management that Dodge was racially harassing the

Filipino fuelers, that Menzies had disregarded those complaints, and that the company had sided with the white harasser by firing the Filipino supervisor. In support of this new narrative, Navarro provided signed statements from himself and two other witnesses. But those allegations were not made in the complaint, nor were they referenced in Navarro's initial disclosures, the depositions taken by Navarro's lawyer, Navarro's own deposition, or any of the other filings made prior to the motion for summary judgment.

There are three possible explanations for the failure to disclose these noteworthy allegations earlier in the litigation. One is that Navarro's lawyers simply forgot. Another is that they intentionally concealed them with the intent of sandbagging Menzies. A third is that the allegations were themselves fabricated in an attempt to salvage the case in the face of a strong summary judgment motion. Regardless of which explanation is correct (and the Court has no way of telling), it would be unfair to allow Navarro to make such a sharp pivot so late in the litigation. Menzies was not on notice of the allegations until after the close of discovery, and thus had no opportunity to explore them in discovery or investigate them internally. And although it's not clear the Court has discretion to reopen discovery under circumstances like these, it would not choose to exercise any such discretion here. More than two years have passed since Navarro was fired in August 2018, many employees have moved on, and memories have likely faded. Our adversarial system is built on principles of fair notice and the opportunity to discover, present, and rebut relevant evidence. Those principles would be meaningless if Navarro and his lawyers were permitted to circumvent them here.

FEHA Discrimination

Absent the new allegations, Navarro cannot make out a prima facie case of race or national origin discrimination because he cannot show that Menzies treated a similarly situated non-Filipino employee differently. *Kodwavi v. Intercontinental Hotels Group Resources, Inc.*, 966 F.Supp.2d 971, 983 (N.D. Cal. 2013). Navarro points to the fact that Dodge was not fired, but he cannot show that Dodge was similarly situated. The only properly produced evidence, including the text of the petition itself, strongly suggests that the fuelers' complaints against

Dodge were related to discreet problems—scheduling issues and falling asleep—which are not comparable to the alleged abuses of power for which Navarro was fired. [1]  *Cf. Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1125–26 (9th Cir. 2009) (pilots lacking in communication skills and technical skills were similarly situated because both skills could be "retrained").

Even assuming Navarro did have a prima facie case, Menzies has met its burden of showing that it fired Navarro for legitimate business reasons. *Kodwavi*, 966 F.Supp.2d at 983–84. Emails between Menzies' human resources manager Tracy Aguilera and director of operations Raul Vargas show that the decision to terminate Navarro was based on concerns that he was harassing and intimidating employees as a member of management. Vargas and Aguilera both consistently testified that Menzies maintains a "zero tolerance" policy against harassment, distinguishing it from other kinds of problems for which a more graduated disciplinary approach is warranted. Written statements Menzies collected from fuelers before Navarro was fired show that he told some fuelers to sign the petition without explaining what it was. The weakest point in the record for Menzies is Navarro's termination notice, which simply states that he was fired for "code of conduct" violations. Nevertheless, although an unsatisfyingly vague description of Menzies' reasoning, even that is consistent with the idea that Navarro was fired for abusing his power as a supervisor, and it is not evidence of pretext. Because Navarro failed to properly introduce evidence that is the reasons given for his termination are pretextual, summary judgment is granted to Menzies on the discrimination claims.

<u>FEHA Retaliation and Wrongful Termination Against Public Policy</u>

Summary judgment is also granted to Menzies on Navarro's claims for retaliation under

---

[1] Navarro did produce a letter signed by Rafael Vasquez, the union shop steward, dated November 18, 2018 and apparently directed at Menzies' management. That letter states that Dodge was continuing to "abuse his authority and at times harass Fuelers under his charge." But the letter was written nearly three months after Navarro was fired, and there is no evidence that it was actually ever submitted to Menzies—Menzies reports that it had never seen the letter until it was produced in discovery. In other words, the letter does not support any inference that Menzies was aware of any alleged abuse of power or harassment of employees by Dodge but failed to fire him as they fired Navarro.

FEHA and wrongful termination against public policy. *Loggins v. Kaiser Permanente International*, 151 Cal.App.4th 1102, 1108–9 (2007) (California courts apply the *McDonnell Douglas* test to both types of claims). For these claims, Navarro readily makes out a prima facie case: he was fired immediately after putting his name on a petition that raised concerns about wage and hour violations. But Menzies' explanation that Navarro was fired for harassing fuelers about signing the petition, rather than for the content of the petition itself, is also well supported. In addition to the evidence laid out above, Menzies chose not to fire the other supervisor who signed the petition but was not alleged to have intimidated fuelers into signing it. That distinction strongly supports the inference that the abuse of power was the ultimate reason for Navarro's termination. Against the weight of this evidence, Navarro puts forth his own testimony that he was fired for signing the petition and a note he wrote just before he was fired promising not to involve himself in fueler's complaints about Dodge again. Even crediting those statements, no reasonable jury could find that the substance of the petition, rather than the evidence of harassment, was the real reason for his termination. At most, the jury might find that Menzies meant to punish Navarro in part for signing a petition in general, because joining an employee petition as a supervisor was inappropriate. But that is not the same as firing him because of the content of the petition, which would be protected as a complaint about wage and hour violations.

<u>Intentional Infliction of Emotional Distress</u>

Finally, summary judgment is also granted on Navarro's claim for intentional infliction of emotional distress. Even if this claim were not preempted by the California Worker's Compensation Act, Navarro has not shown that his termination was wrongful, much less that it shocks the conscience. *Cole v. Fair Oaks Fire Protection District*, 43 Cal.3d 148, 160 (1987); *cf. Vanderhule v. Amerisource Bergen Drug Corp.*, No. SACV 16-2104 JVS (JCGx), 2017 WL 168911, at *4 (C.D. Cal. Jan. 17, 2017) (intentional infliction of emotional distress claim not barred where employee was mocked, deceived, and threatened before termination).

4

**IT IS SO ORDERED.**

Dated: February 8, 2021

_____
VINCE CHHABRIA
United States District Judge